# EXHIBIT 1

JIM JORDAN, Ohio
CHAIRMAN

JERROLD NADLER, New York
RANKING MEMBER

ONE HUNDRED EIGHTEENTH CONGRESS

Congress of the United States
House of Representatives
COMMITTEE ON THE JUDICIARY
2138 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6216
(202) 225-6906
judiciary.house.gov

April 6, 2023

Mr. Mark F. Pomerantz
Former New York County Special Assistant District Attorney
Free & Fair Litigation Group
128 E. Broadway, Unit 793
New York, NY 10002

Dear Mr. Pomerantz:

      The Committee on the Judiciary is conducting oversight of the New York County District Attorney's unprecedented indictment of a former President of the United States and current declared candidate for that office. On March 22, 2023, we requested that you voluntarily cooperate with our oversight by providing relevant documents and testimony pertaining to your role as a special assistant district attorney leading the investigation into the former President's finances.[1] We received a reply letter dated March 27, 2023, stating that, at the instruction of the New York County District Attorney's Office, you would not cooperate with our oversight.[2] You enclosed a copy of a letter from the New York County District Attorney's Office directing you not to cooperate.[3]

      The Supreme Court has recognized that Congress has a "broad and indispensable" power to conduct oversight, which "encompasses inquiries into the administration of existing laws, studies of proposed laws, and surveys in our social, economic or political system for the purpose of enabling Congress to remedy them."[4] Rule X of the Rules of the House of Representatives authorizes the Committee on the Judiciary to conduct oversight of criminal justice matters to inform potential legislation.[5] Congress has a specific and manifestly important interest in preventing politically motivated prosecutions of current and former Presidents by elected state

---

[1] Letter from Rep. Jim Jordan, H. Comm. on the Judiciary, to Mr. Mark F. Pomerantz, Former N.Y. Co. Special Assistant District Att'y (Mar. 22, 2023).
[2] Letter from Mr. Mark F. Pomerantz, Former N.Y. Co. Special Assistant District Att'y, to Rep. Jim Jordan, H. Comm. on the Judiciary (Mar. 27, 2023).
[3] Letter from Leslie B. Dubeck, Gen. Counsel, N.Y. Co. District Att'y Off., to Mr. Mark F. Pomerantz, Former N.Y. Co. Special Assistant District Att'y (Mar. 25, 2023).
[4] *See, e.g.*, *Trump v. Mazars LLP*, No. 19-715 at 11 (U.S. slip op. July 9, 2020) (internal quotation marks and citations omitted).
[5] Rules of the U.S. House of Representatives, R. X(l)(5) (2023).

and local prosecutors, particularly in jurisdictions—like New York County—where the prosecutor is popularly elected and trial-level judges lack life tenure. Among other things, if state or local prosecutors are able to engage in politically motivated prosecutions of Presidents of the United States (current or former) for personal acts, this could have a profound impact on how Presidents choose to exercise their powers while in office. For example, a President could choose to avoid taking action he believes to be in the national interest because it would negatively impact New York City for fear that he would be subject to a retaliatory prosecution in New York City.

As a result, the New York County District Attorney's unprecedented prosecutorial conduct requires oversight to inform the consideration of potential legislative reforms that would, if enacted, insulate current and former Presidents from such politically motivated state and local prosecutions. These potential legislative reforms may include, among other things, broadening the existing statutory right of removal of certain criminal cases from state court to federal court. The local prosecution of a former President also raises the potential for conflict between the federal law-enforcement officials required by federal law to protect a former President and local law-enforcement officials required to enforce an indictment and exercise control of him throughout his presence in the local criminal justice system. The Committee may consider legislative reforms to address or remedy this potential conflict. In addition, the New York County District Attorney's Office has acknowledged that it used federal forfeiture funds in its investigations of President Trump, including during your tenure in that office and during the time when former President Trump was in office and a candidate for re-election.[6] The Committee may therefore consider legislation to enhance reporting requirements concerning the use of federal forfeiture funds or to prohibit the use of federal forfeiture funds to investigate a current or former President or presidential candidate.

Based on your unique role as a special assistant district attorney leading the investigation into President Trump's finances, you are uniquely situated to provide information that is relevant and necessary to inform the Committee's oversight and potential legislative reforms. Although the New York County District Attorney's Office has directed you not to cooperate with our oversight, you have already discussed many of the topics relevant to our oversight in a book you wrote and published in February 2023,[7] as well as in several public interviews to promote your book.[8] As a result, you have no basis to decline to testify about matters before the Committee that you have already discussed in your book and/or on a prime-time television program with an

---

[6] *See* Letter from Leslie B. Dubeck, Gen. Counsel, N.Y. Co. District Att'y Off., to Rep. Jim Jordan, H. Comm. on the Judiciary 4 (Mar. 31, 2023) ("[O]f the federal forfeiture money that the Office helped collect, approximately $5,000 was spent on expenses incurred relating to the investigation of Donald J. Trump or the Trump Organization. These expenses were incurred between October 2019 and August 2021.").

[7] MARK POMERANTZ, PEOPLE VS. DONALD TRUMP: AN INSIDE ACCOUNT (2023).

[8] *See, e.g.*, Rachel Maddow Show, *Trump case 'cried out for federal investigation': Pomerantz*, MSNBC (Feb. 7, 2023) ("As I mentioned in the book, this case cried out for federal investigation . . . . I don't know why there was never an intensive federal investigation of Trump's finances."); 60 Minutes, *Mark Pomerantz on investigating Donald Trump*, CBS NEWS (Feb. 5, 2023) ("[Bragg] did not say to slow down. He never said, 'I don't wanna be rushed. There's not enough time. I need more time to study the facts.' He said, 'Okay. You need a decision? You get a decision.' And the decision was no. 'You're not going forward.'").

audience in the millions, including on the basis of any purported duty of confidentiality or privilege interest.

Your book discloses various details about the New York County District Attorney's Office's investigation of President Trump, including internal deliberations about the investigation. Indeed, you discuss how members of the Office viewed the credibility of a key witness in the case, and you note their concerns about the case's dim prospects. For example, in your book, you recount a "mini-revolt" that occurred following an internal Office meeting on September 21, 2021, about the investigations into President Trump.[9] You offer details about a disagreement between you and the Office's Major Economic Crimes Bureau Chief, Julieta Lozano, about Michael Cohen's credibility as a witness in the investigation.[10] You also complain about concerns expressed by Chris Conroy, the Office's Investigative Division Chief, during a meeting on November 12, 2021.[11] According to you, Conroy "spoke about his misgivings" about the Trump investigation, which stemmed from a recent case involving financial and accounting fraud charges that mirrored the charges that the Office was considering pursuing against President Trump.[12] That case apparently ended poorly for the New York County District Attorney's Office.[13] Like Lozano, Conroy also expressed concerns about Cohen's viability as a witness.[14] You accuse other lawyers of being "relentlessly negative, dwelling on all the difficulties and issues with the case, and refusing to acknowledge the positives" during an internal meeting on December 10, 2021, referring to your former colleagues as "conscientious objectors" merely for opining that the case was "weak" and pointing to its "many fatal flaws."[15] You ultimately dismiss their concerns about the investigation by suggesting that they were either too lazy to do the work, did not know the evidence, or were somehow afraid of bringing charges against President Trump.[16]

Your book, described as a "300-page exercise in score-settling and scorn,"[17] also reveals the extent to which the New York County District Attorney's Office's investigation of President Trump appears to have been politically motivated. Specifically, you describe your eagerness to investigate President Trump, writing that you were "delighted" to join an unpaid group of lawyers advising on the Trump investigations, and joking that salary negotiations had gone "great" because you would have paid to join the investigation.[18] You frivolously compare President Trump to mob boss John Gotti,[19] and claim that the District Attorney's Office was "warranted in throwing the book" at President Trump because, in your view, he "had become a master of breaking the law in ways that were difficult to reach."[20] You explain that this "collective weight" of President Trump's conduct over the years "left no doubt in [your] mind

---

[9] POMERANTZ, *supra* note 7, at 159.

[10] *Id.*

[11] *Id.* at 171.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.* at 191–92, 194.

[16] *Id.* at 160, 171–72.

[17] Lloyd Green, *People vs Donald Trump review: Mark Pomerantz pummels Manhattan DA*, THE GUARDIAN (Feb. 11, 2023).

[18] POMERANTZ, *supra* note 7, at 6, 21–22.

[19] *Id.* at 108–09.

[20] *Id.* at 112.

that [President] Trump deserved to be prosecuted."[21] In other words, as a special assistant district attorney, you seem, for reasons unrelated to the facts of this particular investigation, to have been searching for any basis on which to bring criminal charges.[22]

Although you claim that you were "able to put aside [your] personal feelings about [President] Trump" during the investigation, the depth of your personal animosity towards him is apparent in your writing. You wrote of President Trump:

> I saw him as a malignant narcissist, and perhaps even a megalomaniac who posed a real danger to the country and the ideals that mattered to me. His behavior made me angry, sad, and even disgusted.[23]

You additionally "marveled at the thought" of being "at the center of what might become one of the most consequential criminal cases ever brought."[24] You reflect on your "only similar experience," which you indicated was the "indictment of Osama bin Laden and other members of al Qaeda for the bombing of the United States embassies in Kenya and Tanzania."[25] Drawing a parallel between these two vastly different matters speaks volumes about the mindset that you brought to the investigation of President Trump.

These perceptions appear to have colored your work as a special assistant district attorney, to the point that you even resigned because the investigation into President Trump was not proceeding fast enough for your liking.[26] In your resignation letter, you prejudged the results of the District Attorney's investigation, writing that "Donald Trump is guilty of numerous felony violations," and vowing not to be a "passive participant" to "a grave failure of justice."[27] Your public resignation reportedly left District Attorney Bragg "deeply stung," and caused him to issue an "unusual" public statement "emphasizing that the investigation into Trump and his business was far from over."[28] Your book also contributed to the "political pressure" on District Attorney Bragg to bring charges against former President Trump.[29]

---

[21] *Id.* at 112–13.
[22] *See also* Rachel Maddow Show, *Watch Rachel Maddow Highlights: Feb. 6*, YOUTUBE (Feb. 6, 2023) ("[W]e were trying to work quickly. Bringing a racketeering case, particularly one that includes [other crimes], it's such a big ball of wax that, ultimately, we decided, you know what, let's focus on a smaller, more contained set of charges. That's when we started to focus on the financial statements.").
[23] POMERANTZ, *supra* note 7, at 176.
[24] *Id.* at 194–95.
[25] *Id.*
[26] *Read the Full Text of Mark Pomerantz's Resignation Letter*, N.Y. TIMES (Mar. 23, 2022).
[27] *Id.*
[28] Mark Berman et al., *The prosecutor, the ex-president and the 'zombie' case that came back to life*, WASH. POST (Mar. 17, 2023).
[29] Luc Cohen, *Trump charges follow criticism of Manhattan prosecutor for not acting sooner*, REUTERS (Mar. 31, 2023).

      Accordingly, for these reasons, and in light of your disregard of our earlier voluntary request, please find attached a subpoena compelling your appearance for a deposition.

                                          Sincerely,

                                          Jim Jordan
                                          Chairman

cc:     The Honorable Jerrold Nadler, Ranking Member

Enclosure

# SUBPOENA

## BY AUTHORITY OF THE HOUSE OF REPRESENTATIVES OF THE CONGRESS OF THE UNITED STATES OF AMERICA

To  Mark F. Pomerantz

You are hereby commanded to be and appear before the

Committee on the Judiciary

of the House of Representatives of the United States at the place, date, and time specified below.

☐ **to produce the things identified on the attached schedule** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of production: _____

Date: _____   Time: _____

☑ **to testify at a deposition** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: 2237 Rayburn House Office Building

Date: April 20, 2023   Time: 10:00 a.m.

☐ **to testify at a hearing** touching matters of inquiry committed to said committee or subcommittee; and you are not to depart without leave of said committee or subcommittee.

Place of testimony: _____

Date: _____   Time: _____

To The U.S. Marshals Service, or any authorized Member or congressional staff _____ to serve and make return.

Witness my hand and the seal of the House of Representatives of the United States, at the city of Washington, D.C. this 6th day of April, 2023.

Attest: [signature] Clerk

[signature]
Chairman or Authorized Member

# PROOF OF SERVICE

Subpoena for
        Mark F. Pomerantz
_____

Address _____

_____

before the  Committee on the Judiciary
_____

_____

*U.S. House of Representatives*
*118th Congress*

---

Served by (print name) _____

Title _____

Manner of service _____

_____

Date _____

Signature of Server _____

Address _____

_____