# EXHIBIT 15

## *Republicans Vowed to Grill Bragg About Trump, but It's Not So Simple*

G.O.P. leaders have talked tough about investigating the New York prosecutor bringing charges against the former president, but behind the scenes, they are weighing how to move ahead.

 

**By Luke Broadwater and Jonathan Swan**

April 5, 2023

5 MIN READ

WASHINGTON — As Alvin L. Bragg, the Manhattan district attorney, prepared to bring criminal charges against former President Donald J. Trump, House Republicans rallied to Mr. Trump's side, vowing to use their power in Congress to haul in Mr. Bragg and force him to turn over documents and answer questions.

The reality, they have privately acknowledged, is much more complicated.

For weeks, top House Republicans and their lawyers have been grappling with how to move forward in their investigation of Mr. Bragg amid legal and institutional concerns about overreach and how to enforce a subpoena in court. The situation is a reminder for the new majority, which has promised aggressive inquiries into the Biden administration, that its gavels do not guarantee easy investigative breakthroughs.

Led by Representative Jim Jordan of Ohio, the Judiciary Committee chairman, G.O.P. lawmakers have yet to issue a subpoena for Mr. Bragg's testimony, opting instead for exchanging a series of strongly worded letters.

The Republicans are more likely to first consider issuing subpoenas to two former Manhattan prosecutors, Carey Dunne and Mark Pomerantz, according to people familiar with the internal discussions who described them on the condition of anonymity. Mr. Dunne and Mr. Pomerantz left the district attorney's office in February 2022 and were critical of Mr. Bragg's initial reluctance to move forward with charges against Mr. Trump.

Both Mr. Dunne and Mr. Pomerantz have declined to participate in the Judiciary Committee's investigation, citing instructions from Mr. Bragg's office. In a letter obtained by The New York Times, the district's attorney's office told the men "to not provide any information or materials relating to your work" to the Judiciary panel.



Speaker Kevin McCarthy is planning a call with the chairmen of the Oversight and Judiciary Committees this week to discuss their investigation of Mr. Bragg's prosecution.   Anna Rose Layden for The New York Times

Mr. Bragg has taken a slightly different stance. While chastising the Republicans for attempting to interfere in a local prosecution, his office has tacitly acknowledged that Congress has a legitimate oversight role to play in the matter.

Mr. Bragg's general counsel has offered to enter into discussions and provided documents detailing the federal funding the office has received. His office, for instance, informed the congressmen that it used about $5,000 in federal forfeiture money on expenses incurred relating to the investigation of Mr. Trump and the Trump Organization.

Speaker Kevin McCarthy, Mr. Jordan and Representative James R. Comer, Republican of Kentucky and the chairman of the Oversight Committee, are planning a call this week to discuss what steps to take next in their investigation of Mr. Bragg's prosecution, according to Mr. Comer.

"Everything is on the table," Mr. Jordan, who is also leading a panel to scrutinize what Republicans describe as the "weaponization of government," said Tuesday night on Fox News. "We do want Mr. Bragg to answer questions, and we're looking at how we are going to pursue that."

Mr. Comer pledged, "I fully expect to see Alvin Bragg answering questions in front of Congress as soon as we can make it happen," adding, "We're not going to back down."

The congressmen have demanded that Mr. Bragg provide them with communications, documents and testimony about his inquiry into Mr. Trump, but committee lawyers know that actually getting Mr. Bragg to testify about his inquiry into Mr. Trump, any such effort is likely to get bogged down in legal fights for longer than a two-year congressional term, said Christopher J. Armstrong, who was the chief oversight counsel for Republicans on the Senate Finance Committee.

"A subpoena is not a magic wand," Mr. Armstrong said. "It's the start of a process, and more often than not, the most powerful subpoena is the one that is threatened but never issued. More often than not, the legal process to enforce a subpoena takes longer than the political relevance of the issue that makes it worthwhile in the first place."

Most legal experts agree that Congress has wide-ranging investigatory powers and the Republicans are well within their rights to ask questions about the use of federal dollars. The 14th Amendment also gives Congress authority to investigate whether states are abusing the rights of their citizens.

But experts also say the lawmakers are limited by the need to prove a legitimate legislative function for any inquiry. The Republicans have attempted to do that by arguing that they are considering legislation to "insulate current and former presidents from such improper state and local prosecutions."

The Republicans are also researching precedent to strengthen the case for a subpoena of state-level officials, including how the House committee investigating the Jan. 6 attack on the Capitol scrutinized state officials and how the House Science Committee did so under Representative Lamar Smith, Republican of Texas.



"Everything is on the table," said Representative Jim Jordan, the Judiciary Committee chairman. "We do want Mr. Bragg to answer questions, and we're looking at how we are going to pursue that."  T.J. Kirkpatrick for The New York Times

Some top House aides have spent months attempting to educate members on how to use their investigative prerogatives. Machalagh Carr, Mr. McCarthy's general counsel; Steve Castor, the general counsel on the Judiciary Committee; and Mark Marin, the staff director on the Oversight Committee, have briefed lawmakers on the need to take multiple steps and attempt negotiations with a witness before resorting to a subpoena. Courts sometimes look less favorably on a subpoena issued without an attempt at negotiation, legal experts say.

Leading Republicans are also trying to avoid accusations of personal hypocrisy in their treatment of Mr. Bragg. When the House Jan. 6 committee sought their testimony, both Mr. McCarthy and Mr. Jordan refused but offered to enter into discussions, much as Mr. Bragg has done.

While providing some documents to Congress, Mr. Bragg's office has also attempted to shame the Republicans for their efforts to interfere with the investigation into the former president.

The office's general counsel, Leslie Dubeck, has noted that, before being indicted, Mr. Trump had used his social media platform to denigrate Mr. Bragg and had threatened "death and destruction" if he was charged.

"You could use the stature of your office to denounce these attacks and urge respect for the fairness of our justice system and for the work of the impartial grand jury," Ms. Dubeck wrote to Mr. Jordan, Mr. Comer and Representative Bryan Steil, Republican of Wisconsin and the chairman of the Administration Committee.

Ms. Dubeck also noted that many of the documents the men seek are protected by attorney-client privilege or the work product doctrine, or because they are part of an active criminal case.

"As you know, the office has determined your request to be constitutionally infirm on federalism and other grounds, and improperly intrusive into an ongoing criminal investigation," Mr. Dunne wrote to Mr. Jordan, referring to Ms. Dubeck's advice.

Stanley M. Brand, who served as House general counsel under Speaker Thomas P. O'Neill Jr., said there was almost no chance the Republicans would ever receive internal communications about the prosecution of Mr. Trump or force Mr. Bragg to testify about details of an active criminal case.

"My advice to them would be: Avoid the popgun effect of a subpoena that can't be enforced," Mr. Brand said. "There are no real options for quick enforcement."