# EXHIBIT 19



**DISTRICT ATTORNEY**
**COUNTY OF NEW YORK**
**ONE HOGAN PLACE**
New York, N. Y. 10013
(212) 335-9000

ALVIN L. BRAGG, JR.
DISTRICT ATTORNEY

March 31, 2023

By email

The Honorable Jim Jordan
Chairman, House Committee on the Judiciary

The Honorable Bryan Steil
Chairman, House Committee on House Administration

The Honorable James Comer
Chairman, House Committee on Oversight and Accountability

Dear Chairman Jordan, Chairman Steil, and Chairman Comer:

Yesterday, the District Attorney of New York County filed charges against Donald Trump for violations of New York law.[1] The charges filed yesterday were brought by citizens of New York, doing their civic duty as members of a grand jury, who found probable cause to accuse Mr. Trump of having committed crimes in New York.

Like any other defendant, Mr. Trump is entitled to challenge these charges in court and avail himself of all processes and protections that New York State's robust criminal procedure affords. What neither Mr. Trump nor Congress may do is interfere with the ordinary course of proceedings in New York State. Your first letter made an unprecedented request to the District Attorney for confidential information about the status of the state grand jury investigation—now indictment— of Mr. Trump. Your second letter asserts that, by failing to provide it, the District Attorney somehow failed to dispute your baseless and inflammatory allegations that our investigation is politically motivated. That conclusion is misleading and meritless. We did not engage in a point-by-point rebuttal of your letter because our Office is legally constrained in how it publicly discusses pending criminal proceedings, as prosecutorial offices are across the country and as you well know. That secrecy is critical to protecting the privacy of the target of any criminal investigation as well as the integrity of the independent grand jury's proceedings.[2]

---

[1] The charges contained in the indictment are merely allegations, and the defendant is presumed innocent unless and until proven guilty.

[2] *See, e.g.*, *McKeever v. Barr*, 920 F.3d 842, 844 (D.C. Cir. 2019) ("The Supreme Court has long maintained that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings. That secrecy safeguards vital interests in (1) preserving the willingness and candor of witnesses called before the grand jury; (2) not alerting the target

The Honorable Jim Jordan, et al.
March 31, 2023
Page 2 of 6

### The Committees Lack Jurisdiction to Oversee a State Criminal Prosecution

Your recent letter states that the purpose of your inquiry is to conduct "an examination of the facts" relating to the investigation of Mr. Trump.[3] But Congress has no warrant for interfering with individual criminal investigations—much less investigations conducted by a separate sovereign. *See United States v. Lopez*, 514 U.S. 549, 561 (1995) ("Under our federal system, the States possess primary authority for defining and enforcing the criminal law."); *Younger v. Harris*, 401 U.S. 37, 44 (1971) ("This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of 'comity,' that is, a proper respect for state functions."); *cf. Gamble v. United States*, 139 S. Ct. 1960 (2019) (recognizing state sovereign interests in the criminal justice context). The Committees' attempted interference with an ongoing state criminal investigation—and now prosecution—is an unprecedented and illegitimate incursion on New York's sovereign interests.

Moreover, your examination of the facts of a single criminal investigation, for the supposed purpose of determining whether any charges against Mr. Trump are warranted, is an improper and dangerous usurpation of the executive and judicial functions. *See Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2032 (2020) ("Congress may not issue a subpoena for the purposes of 'law enforcement' because "those powers are assigned under our Constitution to the Executive and the Judiciary."); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219, 224 (1995) ("The Framers of our Constitution lived among the ruins of a system of intermingled legislative and judicial powers" and accordingly created a system that separated "the legislative power to make general law from the judicial power to apply that law in particular cases."). Even worse, based on your reportedly close collaboration with Mr. Trump in attacking this Office and the grand jury process,[4] it appears you are acting more like criminal defense counsel trying to gather evidence for a client than a legislative body seeking to achieve a legitimate legislative objective.

### The Committees' Vague and Shifting Legislative Purpose is Insufficient

You suggest that your request has a valid legislative purpose because Congress may consider legislation to shield former presidents from state criminal investigations for "personal acts" that do not involve their conduct in office. You did not identify any such legislative purpose in your initial letter, suggesting that your proposal to "insulate current and former presidents"

---

of an investigation who might otherwise flee or interfere with the grand jury; and (3) preserving the rights of a suspect who might later be exonerated." (citations omitted; internal quotation marks omitted)); *People v. DiNapoli*, 27 N.Y.2d 229, 235 (1970) (identifying five policy reasons for maintaining the secrecy of grand jury proceedings).

[3] *See also* The Lead with Jake Tapper, CNN, Mar. 26, 2023 (https://www.cnn.com/videos/politics/2023/03/26/sotu-rep-comer-full.cnn) (Comer: "[Bragg] should come explain to us exactly what he's investigating").

[4] Annie Grayer et al., *Inside the backchannel communications keeping Donald Trump in the loop on Republican investigations*, CNN.com (March 28, 2023), https://tinyurl.com/mr3n675p.

The Honorable Jim Jordan, et al.
March 31, 2023
Page 3 of 6

from state criminal investigations is a baseless pretext to interfere with our Office's work.[5] Indeed, we doubt that Congress would have authority to place a single private citizen—including a former president or candidate for president—above the law or to grant him unique protections, such as removal to federal court, that are unavailable to every other criminal defendant. "[E]very President takes office knowing that he will be subject to the same laws as all other citizens upon leaving office. This is a feature of our democratic republic, not a bug." *Comm. on Ways and Means v. U.S. Dep't of Treasury*, 45 F.4th 324, 338 (D.C. Cir. 2022).

Even if you were seriously considering such legislation and had the constitutional authority to enact it (which you do not), your request for information from the District Attorney and his former attorneys concerning an ongoing criminal probe is unnecessary and unjustified. Congress has many sources from which it could seek information on the wisdom of this legislation, including from former federal or state prosecutors not involved in this pending matter. The "unique constitutional position" our Constitution affords the states with respect to the criminal law "means that Congress may not look" to active state investigations "as a 'case study' for general legislation." *Trump*, 140 S. Ct. at 2035-36 (2020).  Likewise, it is unclear what pertinence the requested documents have to Congress's evaluation of whether to grant a former president or presidential candidate with immunity from prosecution for state crimes. The documents and information relating to the pending criminal case would be relevant only if Congress is intending to specifically prevent this prosecution—an intent that you purport to disclaim.[6]

### The DA's Office Uses Limited Federal Funds to Effectively Fight Crime & Help Victims

The Committees' initial rationale for its inquiry related to this Office's use of federal funds. Over the last decade and a half, this Office has *contributed* to the federal fisc. Indeed, the DA's Office has helped the Federal Government secure more than one billion dollars in asset forfeiture funds in the past 15 years. The DA's Office receives only a small fraction of those forfeited funds.

---

[5] This concern is heightened given that some committee members have explicitly stated an intent to interfere with the state proceeding. For example, responding to Trump's statement that he would be arrested, Representative Marjorie Taylor Greene stated that "Republicans in Congress MUST subpoena these communists and END this! We have the power to do it and we also have the power to DEFUND their salaries and departments!", Rep. Marjorie Taylor Greene (@ RepMTG), Twitter (Mar. 18, 2023, 8:59 AM), https://twitter.com/RepMTG/status/1637076244708614144, and that Republicans who "do nothing to stop" the prosecution "will be exposed to the people and will be remembered, scorned, and punished by the base", Rep. Marjorie Tylor Greene (@mtgreenee), Twitter (Mar. 18, 2023, 7:57 AM) https://twitter.com/mtgreenee/status/1637060574314917888. *See also* Rep. Anna Paulina Luna (@realannapaulina), Twitter (Mar. 18, 2023, 3:42 PM), https://twitter.com/realannapaulina/status/1637177616225501191 ("Pay attention to who is being silent on what is currently happening to Trump.").

[6] Letter from Rep. Jim Jordan, H. Comm. on the Judiciary, et al. to Hon. Alvin L. Bragg, Jr., District Attorney, New York County (March 23, 2023) at 7 (asserting that "the Committees' oversight will in no way 'stop [the] prosecution or set limits on the management of a particular case'").

The Honorable Jim Jordan, et al.
March 31, 2023
Page 4 of 6

Our review of the Office's records reflect that, of the federal forfeiture money that the Office helped collect, approximately $5,000 was spent on expenses incurred relating to the investigation of Donald J. Trump or the Trump Organization. These expenses were incurred between October 2019 and August 2021. Most of those costs are attributed to the Supreme Court case, *Trump v. Vance*—subpoena-related litigation in which the DA's Office prevailed and which led to the indictment and conviction of Trump Organization CFO Allen Weisselberg and two Trump organizations. No expenses incurred relating to this matter have been paid from funds that the Office receives through federal grant programs.

Federal Grant Programs

Currently, the DA's Office participates in three federal grant programs relating to our casework.[7] Award letters relating to these programs are attached. The Office can provide additional documentation regarding these grants on a rolling basis to be agreed upon in the previously requested meet and confer.

*Stop Violence Against Women Act Program.* The DA's Office receives $50,000 in federal grant money yearly via New York State's Division of Criminal Justice Services during our current award period, which runs from January 1, 2021, to December 31, 2025, for work to hold accountable those who commit acts of violence against women. These funds are used to help pay a portion of the salaries for senior positions in the Special Victims Division of the Office, including those who prosecute the most serious acts of violence and who directly interface and help victims of crime through the process. We note that, according to the National Coalition Against Domestic Violence, New York has the third lowest rate of domestic violence victimization for women of all 50 states.[8]

*Victims of Crime Act, Victim and Witness Assistance Grant Program.* The DA's Office receives $583,111.04 in federal grant money yearly during our current award period, which runs from October 1, 2022, to September 30, 2025, from the Victims of Crime Act Victim and Witness Assistance Grant Program, which is sub-granted from the federal government through the New York State Office of Victim Services to our Office. All these funds are used by our Witness Aid Services Unit (WASU). WASU provides a variety of court-related services, social services, and counseling services designed to meet the needs of crime victims, witnesses, and their families. The Unit also provides information related to the prosecution of the case, assists victims in understanding the criminal justice system, and provides information regarding crime victims' rights. WASU ensures that crime victims, witnesses, and their families can access the

---

[7] In addition, to support the Federal Government's High Intensity Drug Trafficking Areas (HIDTA) program, the DA's Office receives funds and acts as the financial fiduciary recipient for grant funding for the New York/New Jersey HIDTA. Expenditure of these funds is directed by an executive board of law enforcement partners; the DA's Office does not control decision-making on the use of these funds.

[8] National Coalition Against Domestic Violence, State-By-State Statistics, available at: https://ncadv.org/state-by-state.

The Honorable Jim Jordan, et al.
March 31, 2023
Page 5 of 6

services they need to address their trauma and rebuild their lives, while also helping them navigate New York's complex court system. All these efforts help make our city safer; by ensuring victims participate in court processes, they help hold those who commit crimes accountable for their actions, and by addressing trauma they help prevent future criminality. Our Office's focus on public safety in every aspect of our work, including WASU, is one thing that helps explain why an expert analysis of the overall impact of the cost of crime per resident, taking into account the cost of both violent and property crime, found New York City the fifth safest large city in America.[9]

*Department of Justice, Justice Assistance Grant.* The DA's Office receives $204,730 in federal grant money during our current award period, which runs from October 1, 2020, to September 30, 2024, from the Department of Justice's Justice Assistance Grant program which is sub-granted from the City of New York. These funds go towards addressing violent and other felony crimes in our jurisdiction. With the help of these funds, New York City has the fifth lowest rate of homicides of the top 50 most populated cities in the United States.[10]

\* \* \*

Finally, as you are no doubt aware, former President Trump has directed harsh invective against District Attorney Bragg and threatened on social media that his arrest or indictment in New York may unleash "death & destruction." As Committee Chairmen, you could use the stature of your office to denounce these attacks and urge respect for the fairness of our justice system and for the work of the impartial grand jury. Instead, you and many of your colleagues have chosen to collaborate with Mr. Trump's efforts to vilify and denigrate the integrity of elected state prosecutors and trial judges and made unfounded allegations that the Office's investigation, conducted via an independent grand jury of average citizens serving New York State, is politically motivated. *See, e.g.*, Annie Grayer et al., *Inside the backchannel communications keeping Donald Trump in the loop on Republican investigations*, CNN.com (March 28, 2023), https://tinyurl.com/mr3n675p ("House GOP Conference Chair Elise Stefanik . . . and Trump spoke several times last week alone, where she walked him through the GOP's plans for an aggressive response to Bragg."). We urge you to refrain from these inflammatory accusations, withdraw your demand for information, and let the criminal justice process proceed without unlawful political interference.

---

[9] Deb Gordon, Safest Cities In America 2023: Violent Crime Rate Increases Drive Per Capita Cost of Crime, available at https://www.moneygeek.com/living/safest-cities/, analyzing 263 cities with populations of over 100,000 using FBI data and relying on academic measurement of the cost of crime to society.

[10] Bloomberg News analysis of murder rates in the top 50 most populated cities in America, using data from the Major Cities Chiefs Association, Federal Bureau of Investigation, local police departments, media reports, and the US Census Bureau, available at: https://www.bloomberg.com/opinion/articles/2023-03-03/pandemic-murder-wave-has-crested-here-s-the-postmortem.

The Honorable Jim Jordan, et al.
March 31, 2023
Page 6 of 6

If you will not withdraw your request, we reiterate our willingness to meet and confer with you or your staff about how we can accommodate your request without violating our obligations as prosecutors to protect the integrity of an ongoing criminal prosecution. We respectfully request that you provide us with a list of questions you wish to ask District Attorney Bragg and to describe the type of documents you think we could produce that would be relevant to your inquiry without violating New York grand jury secrecy rules or interfering with the criminal case now before a court. We trust you will make a good-faith effort to reach a negotiated resolution before taking the unprecedented and unconstitutional step of serving a subpoena on a district attorney for information related to an ongoing state criminal prosecution.

                                            Respectfully Submitted,

                                            Leslie B. Dubeck
                                            General Counsel

cc:    Honorable Jerrold Nadler, Ranking Member, Committee on the Judiciary

        Honorable Joseph Morelle, Ranking Member, Committee on House Administration

        Honorable Jamie Raskin, Ranking Member, Committee on Oversight and Accountability

        Majority Staff, Committee on the Judiciary

        Minority Staff, Committee on the Judiciary