# EXHIBIT 21

# Department of Justice

STATEMENT OF

CARLOS FELIPE URIARTE
ASSISTANT ATTORNEY GENERAL
OFFICE OF LEGISLATIVE AFFAIRS

BEFORE THE

SUBCOMMITTEE ON RESPONSIVENESS AND ACCOUNTABILITY TO OVERSIGHT
COMMITTEE ON THE JUDICIARY
U.S. HOUSE OF REPRESENTATIVES

AT A HEARING ENTITLED

"COMPLIANCE WITH COMMITTEE OVERSIGHT"

PRESENTED

MARCH 9, 2023

STATEMENT OF
CARLOS FELIPE URIARTE
ASSISTANT ATTORNEY GENERAL
OFFICE OF LEGISLATIVE AFFAIRS

BEFORE THE
SUBCOMMITTEE ON RESPONSIVENESS AND ACCOUNTABILITY TO OVERSIGHT
COMMITTEE ON THE JUDICIARY
U.S. HOUSE OF REPRESENTATIVES

AT A HEARING ENTITLED
"COMPLIANCE WITH COMMITTEE OVERSIGHT"

PRESENTED
MARCH 9, 2023

Good afternoon, Chairman Cline, Ranking Member Swalwell, and distinguished Members of the Committee. I appreciate the opportunity to appear before you today to discuss the efforts of the Department of Justice (Department) and its components to respond to information requests from the Committee on the Judiciary (Committee) since the beginning of the 118th Congress.

We share your belief that congressional oversight is vital to a well-functioning democracy. We are committed to cooperating with the Committee's legitimate efforts to seek information in aid of its legislative needs, consistent with our obligation to protect Executive Branch confidentiality and other institutional interests. The Department appreciates that oversight is a critical aspect of the legislative process. Congressional committees, such as this one, may need to gather information about how statutes are applied and funds are spent so that they can assess whether additional legislation is necessary, either to rectify practical problems in current law or to address problems not covered by current law. As a former congressional staffer and alumnus of the House Committee on Oversight, I can particularly appreciate that Congress's oversight authority is essential to the performance of its constitutional functions and "information that committees gather in this oversight capacity is . . . important for the Executive Branch in the future implementation of the law and its participation in the legislative process."[1] Oversight can shed valuable light on the Department's operations and thereby assist the Department in addressing problems that might not otherwise have been clear.

**Supporting Congress's Information Needs**

Every day, the Department devotes significant time and resources to supporting Congress's needs for information. And while the Office of Legislative Affairs (OLA) coordinates and oversees this work, components throughout the Department share our responsibility of working with

---

[1] Letter to Rep. John Linder, Chairman, Subcommittee on Rules and Organization of the House Committee on Rules, from Robert Raben, Assistant Attorney General, Office of Legislative Affairs, at 1 (Jan. 27, 2000) ("Linder Letter").

Congress.  We do that in many ways.  These efforts are worth highlighting because they are core to how we meet our responsibility to work with Congress even though they often do not receive much attention from the media or the public.

Department officials and subject matter experts communicate with Members and staff nearly every week, if not every day, to provide detailed briefings about our programs and operations.  For example, in recent weeks, the Department has met with Members and staff at the Drug Enforcement Administration field offices to discuss our efforts to combat the fentanyl epidemic, offered tours of Bureau of Prisons facilities to discuss reforms, provided on-site briefings for congressional staff of the Bureau of Alcohol, Tobacco, Firearms and Explosives National Tracing Center, and demonstrated to Members and staff how the Federal Bureau of Investigation's (FBI) Criminal Justice Information Services Division executes firearms background checks.  The Department is eager to share our work and collaborate with Congress to improve and enhance our service to the American people.

As discussed in our January 20, 2023, letter to the Committee explaining ways the Department can assist your work, we regularly provide technical assistance on draft or introduced legislation.  This helps ensure the drafters are aware of how it may impact civil litigation, criminal investigations and prosecutions, grant making, and other matters within the Department's purview, and to ensure its constitutionality.  In providing such assistance, the Department brings considerable experience enforcing and defending the law and other legal expertise.

And OLA is also responsible for communications between Congress and the Department and we respond to several hundred letters received each year.

I am fortunate to lead a small office of attorneys and support staff at OLA, all of whom are dedicated public servants.  They are available to work in good faith with your staff to address the Committee's oversight and other requests.  Providing information to Congress is core to our mission and a regular part of what we do each day.  The Department is proud of our steadfast efforts to fulfill these responsibilities to Congress and the public, even if this work happens outside the spotlight.

**The Accommodation Process**

Congress often needs information from the Executive Branch to legislate effectively, yet that need must be balanced with the Department's obligation to protect confidential information and other interests essential to performing the Executive Branch's constitutional and statutory functions in executing and enforcing the law.

To navigate this balance responsibly and minimize conflict between the Executive Branch and Congress, the Constitution requires both Branches to negotiate in good faith.  As the D.C. Circuit explained in *United States v. AT&T*, the Constitution "contemplates" that process "on the expectation that where conflicts in scope of authority arose between the coordinate branches, a spirit of dynamic compromise would promote resolution of the dispute in the manner most likely to

result in efficient and effective functioning of our governmental system."[2]  This process is referred to as the "accommodation process," which in the vast majority of cases results in an acceptable outcome in which each Branch refrains from demanding strict adherence to the constitutional prerogatives it understands itself to possess and accepts instead a compromise as the most effective and efficient resolution.

The Executive Branch's approach to the accommodation process is set out in a 1982 memorandum from President Reagan.  It notes that the process of negotiation and compromise is the "primary means of resolving conflicts between the Branches."[3]  And in that spirit, it directs agencies to make good-faith attempts to accommodate Congress's requests for information, just as Congress is obliged to make good-faith attempts to accommodate the Executive Branch's confidentiality and other interests when requesting that information.  In recent decades, there have been a handful of instances in which the Executive Branch and Congress have reached impasse, sometimes resulting in an assertion of executive privilege.  By contrast, successful compromises, generally achieved without fanfare, though not necessarily to the complete satisfaction of either side, often are made possible when both Branches hew to the accommodation process: it "is not simply an exchange of concessions or a test of political strength.  It is an obligation of each branch to make a principled effort to acknowledge, and if possible to meet, the legitimate needs of the other branch."[4]

Disputes over information requests have been resolved using this "tradition of negotiation and compromise" for more than 200 years.[5]  Yet the accommodation process can only operate properly when both Branches of government are approaching it in the same spirit of good faith.  As former Attorney General Edward Levi explained nearly fifty years ago, "[i]nevitably, in a system of divided powers, there are points where responsibility conflicts, where legitimate interests and demands appear on either side.  In such instances, accommodation and compromise reflecting the exigencies of the matter at hand have been not only possible but a felt necessity.  The essence of compromise is that principle or power is surrendered by neither side, but that there is a respect for the responsibility of others and recognition of the need for flexibility and reconciliation of competing interests."[6]

**Department Efforts to Respond to the Committee's Requests**

To help both the Committee and the Department successfully engage in the accommodation process, we would refer you to our January 20, 2023, letter to the Committee.  As that letter notes, we share your belief that congressional oversight is vital to a well-functioning democracy and we

---

[2] *United States v. Am. Tel. & Tel. Co.*, 567 F.2d 121, 127 (D.C. Cir. 1977) (footnote omitted).

[3] Reagan Memorandum at 1.

[4] *Assertion of Executive Privilege in Response to a Congressional Subpoena*, 5 Op. O.L.C. 27, 31 (1981).

[5] *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2029-31 (2020).

[6] Edward Levi, *Some Aspects of Separations of Powers* (1976), *available at* https://chicagounbound.uchicago.edu/cgi/viewcontent.cgi?article=6059&context=journal_articles.

are committed to cooperating with the Committee's legitimate efforts to seek information, consistent with our obligation to protect Executive Branch confidentiality interests. The January 20, 2023, letter therefore provides additional guidance on the Department's longstanding approach to the accommodation process and the steps the Committee can take to help the Department provide what you need.

Since the beginning of the 118th Congress, the Committee has sent 11 letters to the Department and its components identifying 183 informational requests. The first letter was dated January 13, 2023, and the most recent was dated March 6, 2023. Your oversight requests contain at least 155 requests to search for and produce documents and 28 requests for transcribed interviews. They implicate the records of potentially thousands of Department employees. In addition, you have issued two subpoenas, one to the Department dated February 2, 2023, and one to FBI also dated February 2, 2023.

It is unclear why the Committee deviated from longstanding practice by issuing these subpoenas at this early stage.[7] The Department is complying with the Committee's requests voluntarily and in good faith consistent with the accommodation process. So that we may continue making progress toward satisfying your informational needs promptly and efficiently, we have treated the subpoena as reflecting the Committee's prioritization among your many different requests. We remain eager to meet with the Committee to discuss ways to prioritize the Committee's many additional requests in light of our available resources and the Committee's interests.

We have actively sought to work with the Committee in the accommodation process, and we will continue to be responsive to Congress while respecting the integrity of the Department's work and other Executive Branch interests.[8] Not only is dialogue and negotiation the most effective way for the Department to provide the information you need without violating confidentiality interests or excessively burdening resources, the Constitution requires it of us both.[9] Such standard staff-level discussions are a meaningful part of the accommodation process because they have a long history of helping the Executive Branch and Congress reach agreement and avoid

---

[7] The Department responded to your January 17, 2023, letter on January 20, 2023, explaining ways the Department can assist your work and we offered to meet with your staff to discuss which of the more than 80 requests in your letter reflected the Committee's current priorities. The Committee did not respond to that offer before serving the Department with a subpoena on February 3, 2023, after which we offered again to meet and confer on the Committee's priorities. Likewise, in a meeting with FBI staff on January 17, 2023, the Committee declined to provide prioritization guidance. The FBI subsequently provided two document submissions and authorized the transcribed interview of former Executive Assistant Director Jill Sanborn. Your subpoena to the FBI includes requests for materials that were not referenced in your January 17, 2023, letter to the FBI, but the FBI nevertheless is working in good faith to respond to those requests as well. Our voluntary engagement makes compulsory process unnecessary and premature. *See* Letter from Assistant Attorney General Carlos F. Uriarte to Chairman Jim Jordan (Jan. 20, 2023); letter from Assistant Attorney General Carlos F. Uriarte to Chairman Jim Jordan (Feb. 8, 2023) (reiterating offer to meet and confer).

[8] These interests are described in the 2000 letter we sent to then-Chairman John Linder. *See generally* Linder Letter, *supra*.

[9] *See United States v. AT&T*, 567 F.2d 121, 127 (D.C. Cir. 1977) ("[E]ach branch should take cognizance of an implicit constitutional mandate to seek optimal accommodation through a realistic evaluation of the needs of the conflicting branches in the particular fact situation. This aspect of our constitutional scheme avoids the mischief of polarization of disputes.").

conflict. That should be our shared goal.

In conclusion, I emphasize again that the Department recognizes that congressional oversight is an important part of our system of government. We remain optimistic that, by working together cooperatively, we will be able to satisfy the Committee's legislative needs while also safeguarding the independence, integrity, and effectiveness of the Department's vital law enforcement efforts and prosecutorial responsibilities. The Department stands ready to continue this effort to accommodate your information needs.

Thank you again for the opportunity to testify. I would be happy to answer your questions.