# EXHIBIT 27

# AFFIRMING CONGRESS' CONSTITUTIONAL OVERSIGHT RESPONSIBILITIES: SUBPOENA AUTHORITY AND RECOURSE FOR FAILURE TO COMPLY WITH LAWFULLY ISSUED SUBPOENAS

## HEARING

BEFORE THE

## COMMITTEE ON SCIENCE, SPACE, AND TECHNOLOGY
## HOUSE OF REPRESENTATIVES

ONE HUNDRED FOURTEENTH CONGRESS

SECOND SESSION

September 14, 2016

**Serial No. 114–92**

Printed for the use of the Committee on Science, Space, and Technology



in the last 2,000 years, there's been virtually no change in the sea level on the Italian coast, and he has an explanation of how he discovered this. During that period, we had a medieval warm period and a mini ice age, a little ice age, and yet we're—it doesn't go up and down. It's been about the same for at least 2,000 years. He'd like to know what's going to happen in the future, and he says that we are concerned, he says, that this will raise political controversy. He's shown by his mathematical models that if Greenland's ice sheet melted entirely, sea level would fall 20 to 50 meters off the adjacent coast of Greenland with sea levels dropping as far as 2,000 kilometers away. This would help Holland and the Netherlands rather than hurt it. But he says he's concerned that there would be political repercussions.

So we've gotten into a world in which scientists say you know, I better either come up with the right answer or go to a different answer because I'm going to be subject to a lot of subpoenas. There's the threat of criminal investigation and indictments, and that means we're not getting the science for the money. You give out these grants and you're not getting objective science.

Chairman SMITH. That is exactly what we're concerned about.

Professor Foley, I appreciate your testimony. Let me get your opinion on something. Why do you think the Attorney General refusing to comply with our subpoenas, do you think that their objection is grounded in law or do you think it's more political?

Ms. FOLEY. Well, I don't actually see a valid legal objection to the subpoena itself. As Professor Turley suggested, if they have privileges that they want to assert, which is common in the Congressional subpoena context, those are generally resolved by negotiation by the committee. The Committee, for example, does not have to honor, if it doesn't want to, any state law-based privilege including the attorney-client privilege and the work product privilege, which are the two that are being raised by the state Attorneys General here, and the only one that Congress does have to honor are constitutional-based privileges such as the Fifth Amendment privilege against self-incrimination.

So considering the fact that there has not yet been that negotiation regarding those privileges and that there is no valid federalism objection here, it seems to me that the only explanation reasonably is politics.

Chairman SMITH. Okay. Thank you, Professor Foley.

That concludes my questions, and the gentlewoman from Texas, Ms. Johnson, is recognized for hers.

Ms. JOHNSON. Thank you very much, Mr. Chairman.

Let me start with Professor Tiefer. I've been serving on this Committee over 23 years. It'll be 24 at the end of this term. In that time, I've seen a lot of Congressional investigations come and go but I've never seen a committee attempt to subpoena a state attorney general.

You mention in your testimony just how unprecedented the Chairman's actions are in this regard. Could you please comment on just how unusual this is and also what that implies about the validity of the Chair's subpoenas?

Mr. TIEFER. Thank you, Ms. Johnson.

I do not—there hasn't been a subpoena enforcement against a state attorney general in 200 years, and I may note because you might think well, new things happen, this is—there was—you go back to the beginning of Congress, there were Congressional investigating committees and there were state Attorneys General and they were very often, very often of opposite political parties so if the Congressional committees thought that they could subpoena Attorneys General, then during those 200 years they would have. They're not doing it, and there's an excellent reason. State Attorneys General have their own state sovereign authority. They are frequently elected. They have their own base, their own electoral base, their own mission, and their mission is to pursue things that Congress can't.

So in a word, it's unprecedented to enforce against state AGs.

Ms. JOHNSON. Thank you. I have also never seen a committee attack with compulsory processes a group of non-governmental organizations the way this Committee has attacked the nine environmental NGOs the Chairman has subpoenaed. In my own mind, I have to go back to the Red Scares of the fifties to recall a similar effort.

Could you comment on how unusual it is for us to subpoena these type of NGOs for no other apparent reason than they disagree with the Chair's position on climate change?

Mr. TIEFER. As House Counsel investigating committees would come to us and talk with us about what they should do, and if they ever had said we want to do broad subpoenas against such groups, I would have pointed out that the Supreme Court precedent, Florida versus—excuse me—Gibson versus Florida Legislative Investigating Committee, made quite clear that you'd be violating these groups' freedom of association by trying to subpoena like that. That's what I would have told them.

Ms. JOHNSON. Thank you.

Now, let me ask you, in Professor Foley's testimony, she writes that the Science Committee may issue subpoenas, and I quote, "when authorized by the majority vote of the Committee or Subcommittee as this case may be, a majority of the Committee or Subcommittee being present."

As I believe you know, that has not been true for some time on this Committee. The Chairman of the Science Committee was granted unilateral subpoena power this Congress. We have not had a vote or a meeting of any more than—for any of the 20 or more subpoenas that the Chairman has issued.

Now, you spent 11 years working in the House Counsel's Office and three years in the Senate Counsel's Office. You dealt with reviewing subpoenas often. Based on your experience, do you think that the unilateral subpoena power the Science Committee currently has is a positive thing for Congressional oversight authority?

Mr. TIEFER. Absolutely not. It's one thing to issue a friendly subpoena to a group that just says please, we need a piece of paper, but—and have a chairman alone do that, but when you're going to issue controversial subpoenas like these, very controversial, and start talking about contempt, we would all—we always said get a vote of the full committee before you try to do something controversial like that.