# EXHIBIT 28

JIM JORDAN, Ohio
CHAIRMAN

JERROLD NADLER, New York
RANKING MEMBER

ONE HUNDRED EIGHTEENTH CONGRESS

# Congress of the United States

## House of Representatives

COMMITTEE ON THE JUDICIARY

2138 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6216

(202) 225–6906
judiciary.house.gov

April 7, 2023

Mr. Matthew B. Colangelo
Senior Counsel
New York County District Attorney's Office
One Hogan Place
New York, NY 10013

Dear Mr. Colangelo:

The Committee on the Judiciary is conducting oversight of the New York County District Attorney's unprecedented indictment of a former President of the United States and current declared candidate for that office.[1] According to news reports, District Attorney Alvin Bragg hired you in December 2022 to "jump-start" his office's investigation of President Trump, reportedly due to your "history of taking on Donald J. Trump and his family business."[2] You had previously served in senior positions in the U.S. Department of Justice and the New York Attorney General's Office, both of which had competing investigations related to President Trump.[3] Given your history of working for law-enforcement entities that are pursuing President Trump and the public reporting surrounding your decision to work for the New York County District Attorney's Office, we request your cooperation with our oversight in your personal capacity.

The Supreme Court has recognized that Congress has a "broad and indispensable" power to conduct oversight, which "encompasses inquiries into the administration of existing laws, studies of proposed laws, and surveys in our social, economic or political system for the purpose of enabling Congress to remedy them."[4] Rule X of the Rules of the House of Representatives authorizes the Committee on the Judiciary to conduct oversight of criminal justice matters to inform potential legislation.[5] Congress has a specific and manifestly important interest in preventing politically motivated prosecutions of current and former Presidents by elected state

---

[1] *See, e.g.*, Letter from Rep. Jim Jordan, H. Comm. on the Judiciary, et al., to Mr. Alvin L. Bragg, Jr., N.Y. Co. District Att'y (Mar. 25, 2023).
[2] Jonah E. Bronwich, *Manhattan D.A. hires ex-Justice official to help lead Trump inquiry*, N.Y. TIMES (Dec. 5, 2022).
[3] *Id.*
[4] *See, e.g.*, *Trump v. Mazars LLP*, No. 19-715 at 11 (U.S. slip op. July 9, 2020) (internal quotation marks and citations omitted).
[5] Rules of the U.S. House of Representatives, R. X(l)(5) (2023).

and local prosecutors, particularly in jurisdictions—like New York County—where the prosecutor is popularly elected and trial-level judges lack life tenure. Among other things, if state or local prosecutors are able to engage in politically motivated prosecutions of Presidents of the United States (current or former) for personal acts, this could have a profound impact on how Presidents choose to exercise their powers while in office. For example, a President could choose to avoid taking action he believes to be in the national interest because it would negatively impact New York City for fear that he would be subject to a retaliatory prosecution in New York City.

As a result, the New York County District Attorney's unprecedented prosecutorial conduct—occurring after federal authorities declined to pursue similar criminal charges—requires oversight to inform the consideration of potential legislative reforms. These potential legislative reforms may include, among other things, the following topics:

- The New York County District Attorney's prosecutorial conduct raises the prospect of a need to insulate current and former presidents from politically motivated state and local prosecutions. For example, the Committee may consider legislation to broaden the existing statutory right of removal of certain criminal cases from state court to federal court.

- Local prosecution of a former President also raises the potential for conflict between the federal law-enforcement officials required by federal law to protect a former President and local law-enforcement officials required to enforce an indictment and exercise control of him throughout his presence in the local criminal justice system. The Committee may consider legislative reforms to address or remedy this potential conflict.

- District Attorney Bragg has stated that his prosecution of President Trump relies, at least in part, if not entirely, on a federal campaign finance violation to upgrade the charges to a felony.[6] In light of this fact, to bring uniformity to the law and prevent future attempts by state or local prosecutors to pursue politically motivated prosecutions related to campaign finance regulations applicable to federal elections, Congress may consider the need for legislation that clarifies and/or broadens the preemption provision in the Federal Election Campaign Act. This reform could have the effect of more clearly delineating the prosecutorial authorities of federal and local officials in this area and thus blocking attempts by state and local prosecutors to selectively enforce campaign finance restrictions pertaining to federal elections in a politicized manner.

- The New York County District Attorney's Office has acknowledged that it used federal forfeiture funds in its investigations of President Trump, including during the

[6] Jack Morphet & Olivia Land, *DA Alvin Bragg justifies Trump charges: 'Everyone stands equal before the law*,' N.Y. POST (Apr. 4, 2023).

time when President Trump was in office and a candidate for re-election.[7] The Committee may therefore consider legislation to enhance reporting requirements concerning the use of federal forfeiture funds and/or to prohibit the use of federal forfeiture funds to investigate a current or former President or presidential candidate.

You are uniquely situated to provide information that is relevant and necessary to inform the Committee's oversight and potential legislative reforms. Your recent employment has largely been focused on investigations surrounding President Trump.[8] At the New York Attorney General's Office, you ran investigations into President Trump,[9] leading "a wave of state litigation against Trump administration policies."[10] You then moved to a high-level position in the Biden Department of Justice, serving for a time as the Acting Associate Attorney General, before District Attorney Bragg "beefed up [his] office" by hiring you to fill the void left by the departure of disgruntled attorneys Mark Pomerantz and Carey Dunne.[11] Pomerantz left the Office—very publicly—because its investigation into President Trump was not proceeding fast enough for his liking.[12] His public resignation reportedly left District Attorney Bragg "deeply stung," and caused him to issue an "unusual" public statement "emphasizing that the investigation into Trump and his business was far from over."[13] The circumstances and chain of events that led to your hiring by the New York County District Attorney's Office could therefore shed substantial light on the underlying motives for that Office's investigation into and indictment of President Trump.

Accordingly, to advance our oversight, please produce the following documents and information in your personal possession for the period June 22, 2021, to December 5, 2022:

1. All documents and communications between or among you and anyone affiliated, in any way, with the New York County District Attorney's Office referring or relating to your potential or future employment with that Office, including, but not limited to,

    a. The substance or type of work that you would potentially do for that Office;

    b. That Office's motivation for or interest in hiring you; or

---

[7] *See* Letter from Leslie B. Dubeck, Gen. Counsel, N.Y. Co. District Att'y Off., to Rep. Jim Jordan, H. Comm. on the Judiciary 4 (Mar. 31, 2023) ("[O]f the federal forfeiture money that the Office helped collect, approximately $5,000 was spent on expenses incurred relating to the investigation of Donald J. Trump or the Trump Organization. These expenses were incurred between October 2019 and August 2021.").

[8] *See, e.g.*, Jacob Shamsian, *Manhattan DA's office hires attorney with extensive experience investigating Trump, suing his administration*, BUSINESS INSIDER (Dec. 5, 2022); Patricia Hurtado, *Ex-DOJ Lawyer With Trump Experience Joins Manhattan DA's Team*, BLOOMBERG (Dec. 5, 2022).

[9] Shamsian, *supra* note 8.

[10] *Who's who in the Manhattan DA's Donald Trump indictment*, THE ASSOCIATED PRESS (Mar. 31, 2023).

[11] Shamsian, *supra* note 8; *see* Erica Orden, *Liberal Manhattan DA takes on Trump in perilous legal fight*, POLITICO (Dec. 5, 2022); Ben Protess et al., *How the Manhattan DA's investigation into President Donald Trump unraveled*, N.Y. TIMES (March 5, 2022).

[12] *Read the Full Text of Mark Pomerantz's Resignation Letter*, N.Y. TIMES (Mar. 23, 2022).

[13] Mark Berman et al., *The prosecutor, the ex-president and the 'zombie' case that came back to life*, WASH. POST (Mar. 17, 2023).

c. Your personal motivation for or interest in working for that Office.

2. All documents and communications between or among you and anyone affiliated, in any way, with the New York County District Attorney's Office referring or relating to President Donald J. Trump; the Trump Organization; or any other entity owned, controlled by, or associated with President Donald J. Trump.

3. All documents and communications between or among you and anyone not affiliated with the New York County District Attorney's Office referring or relating to both your potential or future employment with that Office and

   a. President Donald J. Trump;

   b. The Trump Organization; or

   c. Any other entity owned, controlled by, or associated with President Donald J. Trump.

4. Any other documents or communications referring or relating to both your potential or future employment with the New York County District Attorney's Office and

   a. President Donald J. Trump;

   b. The Trump Organization; or

   c. Any other entity owned, controlled by, or associated with President Donald J. Trump.

In addition, your testimony is necessary to advance our oversight and to inform potential legislative reforms. We therefore ask that you testify in a transcribed interview about these matters as soon as possible. Please provide this information and contact Committee staff to schedule your transcribed interview as soon as possible but not later than 10:00 a.m. on April 21, 2023.

Further, this letter serves as a formal request to preserve all existing and future records and materials relating to the topics addressed in this letter. You should construe this preservation notice as an instruction to take all reasonable steps to prevent the destruction or alteration, whether intentionally or negligently, of all documents, communications, and other information, including electronic information and metadata, that are or may be responsive to this congressional inquiry. This instruction includes all electronic messages sent using your official and personal accounts or devices, including records created using text messages, phone-based message applications, or encryption software.

If you have any questions about this request, please contact Committee staff at (202) 225-6906. Thank you for your prompt attention to this matter.

Sincerely,

Jim Jordan
Chairman

cc: The Honorable Jerrold Nadler, Ranking Member