# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALVIN L. BRAGG, JR., in his official capacity as District Attorney for New York County,<br><br>                    Plaintiff,<br><br>v.<br><br>JIM JORDAN, in his official capacity as Chairman of the Committee on the Judiciary, COMMITTEE ON THE JUDICIARY OF THE UNITED STATES HOUSE OF REPRESENTATIVES, and MARK F. POMERANTZ,<br><br>                    Defendants. | 1:23-CV-03032-MKV<br><br>**DEFENDANT MARK F. POMERANTZ'S RESPONSE TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Defendant Mark F. Pomerantz joins the District Attorney's prayer for interim relief, and writes separately to stress a potential constitutional injury unique to Mr. Pomerantz.

Although Mr. Pomerantz is nominally designated a defendant in this action, he agrees with the District Attorney that the subpoena at issue seeks to impede and interfere with the pending prosecution of Donald Trump, and impermissibly intrudes on New York State's sovereign law enforcement authority, federalism, and the doctrine of separation of powers. These are matters for the District Attorney of New York County to argue. As the only person who has been summoned to testify, however, Mr. Pomerantz has individual standing to object to the subpoena, and his own arguments to make. He does object to the subpoena, and he therefore asks this Court to grant the District Attorney's motion.

The facts pertinent to this submission are set forth in the accompanying declaration. Mr. Pomerantz was sworn in as a special assistant district attorney in New York County on February 2, 2021. Pomerantz Decl. ¶ 3. He resigned from that position on February

23, 2022. *Id*. Mr. Pomerantz' resignation had nothing to do with the charges now pending against Donald Trump.

The current indictment, which relates to false business records used to conceal the reimbursement of Michael Cohen after Mr. Cohen made a payment of so-called "hush money" on Mr. Trump's behalf, was not returned until March 30, 2023, more than a year after Mr. Pomerantz's departure. Following his resignation in February 2022, Mr. Pomerantz played no role whatsoever in the decision to seek Mr. Trump's indictment, and he did not discuss the decision to prosecute Mr. Trump with the District Attorney or any member of the prosecution team. *Id*. ¶ 4. Mr. Pomerantz is not a witness to the District Attorney's motives in seeking the indictment, and he does not have any personal knowledge about how the decision to seek the indictment—a decision reportedly made many months after his resignation—was reached. Mr. Pomerantz also has no personal knowledge about the use of federal forfeiture funds in connection with the Trump investigation or prosecution. *Id*.

These facts—that Mr. Pomerantz was not involved in the District Attorney's decision to seek the indictment now pending against Donald Trump—are of great import because the pending indictment is what prompted the Committee's subpoena, and animates the purported "legislative purpose" underlying it. In a letter to Mr. Pomerantz accompanying the subpoena, Rep. Jordan, as Chair of the House Judiciary Committee, says that the Committee is "conducting oversight" of the indictment of Mr. Trump. *Id*. ¶ 2, Ex. 1 at 1–2. The letter also speaks of Congress's purported interest in "preventing politically motivated prosecutions of current and former presidents." *Id*. Finally, the letter also

discusses Congress's interest in regulating the District Attorney's Office's use of federal forfeiture funds.  *Id.*

Mr. Pomerantz cannot provide any meaningful information that advances the legislative purposes referenced in Rep. Jordan's letter. More troubling, the Committee apparently wishes to question Mr. Pomerantz about matters plainly outside the scope of Congress's authority under Section 1 of the United States Constitution.  Rep. Jordan's letter indicates that the Committee intends to question Mr. Pomerantz about his political views, "the depth of [his] personal animosity" toward Donald Trump, his motives for writing his book (entitled *People vs. Donald Trump*), and his opinions on matters addressed in that book.  *Id.*, Ex. 1 at 4.  None of these topics cited in the letter are pertinent to the propriety of Mr. Trump's indictment, which is what the Committee supposedly seeks to "oversee." The subpoena is therefore constitutionally defective.

*Watkins v. United States*, 354 U.S 178 (1957), is directly on point.  In *Watkins*, the U.S. Supreme Court wrote that "[t]here is no general authority to expose the private affairs of individuals without justification in terms of the functions of the Congress." *Id.* at 187. The Court held that Congress is not "a law enforcement or trial agency," and ruled that "[i]investigations conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible."  *Id.*  The Court cautioned that the "mere semblance of legislative purpose" will not justify an intrusion on a person's First Amendment rights and held that a court "cannot simply assume" that "every congressional investigation is justified by a public need that overbalances any private rights affected." *Id.* at 198.  To do so, the Court reasoned, "would be to abdicate the responsibility placed by the Constitution upon the judiciary to insure that the Congress does not unjustifiably

encroach upon an individual's right to privacy nor abridge his liberty of speech, press, religion, or assembly." *Id.* at 198–99.

The *Watkins* Court held that, as a matter of due process, a witness under Congressional subpoena can be questioned only if the questioning is "pertinent" to a legitimate legislative purpose. *Id.* at 208–09. Here, there is no connection between the questions raised in Rep. Jordan's letter about Mr. Pomerantz's personal views, motives, and opinions and the stated "legislative purpose" of probing an indictment that Mr. Pomerantz had no role in seeking.

The result is to place Mr. Pomerantz in a legally untenable position. The District Attorney has instructed Mr. Pomerantz, in writing, to provide no information to the Judiciary Committee in response to the subpoena. Pomerantz Decl. ¶ 5, Ex. 2. If Mr. Pomerantz does not follow the District Attorney's instructions, he faces potential legal or ethical consequences, including criminal exposure under New York's grand jury secrecy laws. *Id.* ¶ 5. Additionally, the District Attorney has asserted various claims of privilege. Pl.'s Mem. of Law 20–22, ECF No. 8. He asserts that Mr. Pomerantz cannot waive privileges that belong to the District Attorney, and that Mr. Pomerantz' prior public statements do not constitute a privilege waiver by Mr. Bragg or his Office. While Mr. Pomerantz agrees with this position, the Committee appears not to recognize the validity of the District Attorney's privilege claims, and Rep. Jordan's letter claims that Mr. Pomerantz must answer questions even about matters as to which the District Attorney claims privilege. As we understand the rules governing Mr. Pomerantz' appearance, he will not be allowed to assert the privileges that the District Attorney has instructed him to assert, and he risks being held in contempt if he tries to do so. *Id.* at 23. In short, Mr.

Pomerantz may be faced with potential criminal and disciplinary exposure if he answers the Committee's questions and possible criminal and disciplinary exposure if he does not. Placing Mr. Pomerantz in this dilemma is particularly unfair—and particularly unnecessary—because he cannot provide any pertinent testimony relevant to the return of the indictment filed against Mr. Trump, which is what the Judiciary Committee seeks to "oversee."

Under the Supreme Court's decision in *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019 (2020), a subpoena that directly implicates the constitutional separation of powers requires special scrutiny and a careful balancing of the competing interests at stake. 140 S. Ct. at 2035–36. We defer to the papers filed by the District Attorney on this motion to articulate why the subpoena threatens New York's sovereign power to bring criminal prosecutions and the historic deference to a state's exercise of police powers. We agree with the District Attorney that, in these circumstances, the *Mazars* balancing approach is required. In that regard, the subpoena to Mr. Pomerantz plainly does not pass muster, for several reasons:

First, as we have indicated, Mr. Pomerantz has little if anything to say that will advance the purported legislative purpose that justifies the subpoena. He was not involved in the decision to bring the pending indictment against Mr. Trump. Pomerantz Decl. ¶¶ 3–4.

Second, under *Mazars*, a reviewing court can, indeed must, examine the evidence regarding Congress's purported legislative purpose. *Id.* at 2036. Here, Mr. Pomerantz's lack of involvement in the decision to bring the existing indictment, which is what the Committee purportedly wishes to "oversee," suggests that its stated purposes are

pretextual.  The close coordination between the Committee's Chairman and the former President, together with the other circumstances referenced in the District Attorney's moving papers, indicate that the Committee's real purpose is to obstruct the pending prosecution, assist Mr. Trump in his defense, impede any continuing investigation, and punish Mr. Pomerantz for writing a book that Mr. Trump and many of his supporters dislike.

Third, whether or not the Committee's stated purpose is pretextual, the potential for the misuse and abuse of the Committee's subpoena power is obvious.  The Committee will likely use the opportunity to question Mr. Pomerantz for improper purposes.  Rep. Jordan's letter indicates that the Committee wishes to gather information about how various prosecutors viewed the credibility of Michael Cohen, and to flesh out any discussions of the evidence that will be introduced at Mr. Trump's trial.  Pomerantz Decl., Ex. 1 at 3.  The Committee also plans to probe the political views of Mr. Pomerantz and, presumably, other prosecutors, notwithstanding the complete lack of evidence to suggest that those views tainted any actions that the District Attorney's Office took during Mr. Pomerantz' tenure or thereafter.  *Id.* at 4.  Issues surrounding the District Attorney's Office's motivation in filing its charges against Mr. Trump will almost certainly be litigated in his criminal case. We believe that the goal of the subpoena is to try to gather information that might be helpful to Mr. Trump in litigating the charges against him, either in the courtroom or in the court of public opinion.  The potential for mischief is apparent, and we urge the Court to be particularly sensitive to avoid any interference with the pending criminal case.

Finally, in connection with the careful balancing of interests that *Mazars* requires, the legal jeopardy that the subpoena creates for Mr. Pomerantz is entitled to substantial

weight.  It is simply unfair to place him in a circumstance where he faces legal and disciplinary peril in trying to navigate the conflicting demands of the Judiciary Committee's subpoena, the District Attorney's Office's directive, and applicable New York laws.

Accordingly, Mr. Pomerantz joins in the District Attorney's motion for interim relief.

Dated:  New York, New York
        April 17, 2023

                                    **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

                                    By: /s/ Theodore V. Wells Jr.

                                        Theodore V. Wells Jr.
                                        Roberto Finzi
                                        1285 Avenue of the Americas
                                        New York, NY 10019-6064
                                        (212) 373-3000
                                        twells@paulweiss.com
                                        rfinzi@paulweiss.com

                                    *Counsel for Defendant Mark F. Pomerantz*