# Exhibit P

Thanks for trying out Immersive Reader. Share your feedback with us. 👍 👎 ✕

# Manhattan Prosecutors Move to Jump-Start Criminal Inquiry Into Trump

The district attorney's office is investigating Donald J. Trump's role in a hush-money payment to a porn star, an approach that previously failed to bear fruit.



Former President Donald J. Trump recently announced that he will run again in 2024.Credit...Maddie McGarvey for The New York Times

The Manhattan district attorney's office has moved to jump-start its criminal investigation into Donald J. Trump, according to people with knowledge of the matter, seeking to breathe new life into an inquiry that once seemed to have reached a dead end.

Under the new district attorney, Alvin L. Bragg, the prosecutors have returned to the long-running investigation's original focus: a hush-money payment to a porn star who said she had an affair with Mr. Trump.

The district attorney's office first examined the payment to the actress, Stormy Daniels, years ago before changing direction to scrutinize Mr. Trump's broader business practices. But Mr. Bragg and some of his deputies have recently indicated to associates, supporters and at least one lawyer involved in the matter that they are newly optimistic about building a case against Mr. Trump, the people said.

The renewed scrutiny of the hush money in recent months comes amid an intensifying swirl of legal and political drama around Mr. Trump. On Friday, Merrick B. Garland, the U.S. attorney general, appointed a

special prosecutor who vowed to proceed quickly with two federal investigations into the former president. It is unclear whether Mr. Bragg or the special counsel will ultimately seek charges against Mr. Trump, who just announced a third presidential run.

Story continues below advertisement
Continue reading the main story

For Mr. Bragg, the hush-money developments suggest the first signs of progress since he took office at the beginning of the year, when he balked at indicting Mr. Trump in connection with his business practices.

But in bringing the inquiry full circle to the hush-money payment, Mr. Bragg is focusing on an aspect of the investigation that previously failed to bear fruit.

The idea of building a case around the hush money had resurfaced with such regularity in recent years that prosecutors came to refer to it as the "zombie theory," an idea that just wouldn't die, one of the people said.

Under Mr. Bragg's predecessor, the district attorney's office rejected the idea of focusing a case solely on the hush money, concluding, with the help of outside legal experts, that it would hinge on a largely untested and therefore risky legal theory. And if Mr. Bragg were to charge Mr. Trump without uncovering any new evidence or relying on a more conventional theory, he would risk having a judge or appellate court throw out the case.

To help build the hush-money case, prosecutors are revisiting another strategy that has yet to work: pressuring a top Trump lieutenant, Allen H. Weisselberg, to cooperate.

Story continues below advertisement
Continue reading the main story

While Mr. Weisselberg has already pleaded guilty to unrelated tax charges and testified last week against Mr. Trump's company at its trial for the same tax crimes, he has not turned on Mr. Trump. To ramp up the pressure, the prosecutors are considering a new round of charges against Mr. Weisselberg in hopes of securing his cooperation against the former president, the people said. Those potential charges concern insurance fraud and are unrelated to the hush money.

Mr. Weisselberg, who has direct knowledge of the hush-money payment, has long resisted the prosecutorial pressure campaign, repeatedly stymieing the investigation into Mr. Trump. There is little indication that the loyal executive, the former president's financial gatekeeper for decades, will suddenly give in to Mr. Bragg.

Image



*Prosecutors have long hoped to persuade Allen H. Weisselberg, center, to testify against his longtime boss. Credit...Stephanie Keith/Getty Images*

The district attorney also may face some time pressure. Several other investigations into Mr. Trump appear to be heating up, including those overseen by the new special counsel.

Mr. Bragg's prosecutors, however, are in the midst of the tax fraud trial and have not presented evidence to a grand jury about the hush money, suggesting that, if they decide to seek charges, it won't happen this year, the people with knowledge of the matter said.

Story continues below advertisement
Continue reading the main story

And so, even as Mr. Bragg may secure a conviction of the former president's family business in the tax trial, which would mark a major milestone for his office**,** the district attorney still faces a daunting path to charging Mr. Trump himself.

A spokeswoman for Mr. Bragg declined to comment, as did Mr. Weisselberg's lawyer, Nicholas A. Gravante Jr.

Mr. Trump has denied all wrongdoing and said he never had an affair with Ms. Daniels, whose real name is Stephanie Clifford. Michael van der Veen, a lawyer for Mr. Trump's company, said: "I really don't believe that they're going back and conducting these investigations, and if there's any truth to it, it would show poor judgment," adding, "The millions of taxpayer dollars they've spent on countless investigations, it's a big waste of time and money."

The investigation into Mr. Trump has touched on a wide range of his business practices over the last four years, but it all began with the $130,000 in hush money.

Michael D. Cohen, who served as Mr. Trump's personal lawyer and fixer, paid the money during the final days of the 2016 campaign to buy the silence of Ms. Daniels. Federal prosecutors, concluding that the

payment amounted to an illegal campaign contribution, extracted a guilty plea from Mr. Cohen, who said that he was following orders from Mr. Trump.

Story continues below advertisement
Continue reading the main story

Mr. Trump and his company reimbursed Mr. Cohen for the $130,000, further raising questions about their involvement in the hush-money deal.

Although it came in federal court, Mr. Cohen's plea provided the impetus for the district attorney's office to investigate whether Mr. Trump ran afoul of state laws with the hush-money payment. In particular, they examined whether the company falsely accounted for the reimbursements to Mr. Cohen as a legal expense — in violation of a New York law that prohibits the falsifying of business records.

The investigation gained steam when the district attorney at the time, Cyrus R. Vance Jr., subpoenaed Mr. Trump's accounting firm for his tax returns and other financial records, spurring a long legal battle that resulted in a United States Supreme Court ruling in Mr. Vance's favor. But by the time Mr. Vance obtained Mr. Trump's tax returns in early 2021, he had developed concerns about indicting Mr. Trump on charges of falsifying Trump Organization records related to the hush money.

Falsifying business records can be charged as a misdemeanor in New York. To make it a felony, prosecutors would need to show that Mr. Trump falsified the hush-money records to help commit or conceal a second crime.

Mr. Vance's office examined several secondary crimes Mr. Trump might have been seeking to conceal, people with knowledge of their discussions said, and concluded that the most promising option for an underlying crime was the federal campaign finance violation to which Mr. Cohen had pleaded guilty.

Story continues below advertisement
Continue reading the main story

But with help from the outside legal experts, the prosecutors ultimately concluded that approach was too risky — a judge might find that falsifying business records could only be a felony if it aided or concealed a New York state crime, not a federal one.

It is possible, legal experts said, that Mr. Bragg is pursuing a violation of a New York State election law to underpin a potential case. Under Mr. Vance, the prosecutors briefly mulled using a state election law violation, but rejected it: Since the presidential race during which the hush-money payment occurred was a federal election, they concluded it was outside the bounds of state law.

It is unclear how Mr. Bragg might resolve that issue. For Mr. Vance, the challenge of the hush-money case provided a reason to shift gears.

His prosecutors began to build a broader case aimed at Mr. Trump's net worth, drilling down on whether he falsely inflated the value of his hotels, golf clubs and other assets to obtain better loan terms and other benefits. The values, which appeared on annual financial statements that Mr. Trump's company provided to his lenders, were also at the center of a long-running civil investigation by the New York State attorney general, Letitia James.

Before leaving office, Mr. Vance instructed his prosecutors to begin presenting evidence about Mr. Trump to a special grand jury, putting them on the path to indicting the former president.

Story continues below advertisement
Continue reading the main story

But within weeks of Mr. Bragg's taking over in January, he became uncomfortable with the office's ability to show that Mr. Trump intended to break the law, a necessary element to proving the case.

Image



*Not long after he took office in January, Alvin L. Bragg, the Manhattan district attorney, balked at seeking to indict Mr. Trump over his business practices.Credit...John Minchillo/Associated Press*

Mr. Bragg eventually ended the grand jury presentation, prompting two senior prosecutors to resign in February. His decision left the investigation's fate in doubt and many of his liberal supporters furious.

While prosecutors had long hoped to secure Mr. Weisselberg's cooperation, he has insisted that Mr. Trump did nothing wrong. And when Mr. Weisselberg initially refused to cooperate last year, the district attorney's office indicted him and the Trump Organization on the tax charges.

The case centers on the company doling out luxury perks under the table to various executives, including Mr. Weisselberg, who received a rent-free apartment, leased Mercedes-Benzes and private school tuition for his grandchildren, all without paying any taxes on those perks.

Story continues below advertisement
Continue reading the main story

Mr. Trump has not been personally accused of any wrongdoing in that case.

Mr. Weisselberg's plea deal on the tax charges required him to testify truthfully against Mr. Trump's company and possibly serve a few months at the notorious Rikers Island jail complex.

Any new charges could extend Mr. Weisselberg's time behind bars, strengthening the hand of prosecutors as they pressure him to implicate Mr. Trump.

To escalate their pressure campaign on Mr. Weisselberg, prosecutors might threaten him with the insurance fraud charges, according to the people with knowledge of the matter.

The possible basis for such a charge was first revealed in a January court filing in the attorney general's civil investigation and laid out in more detail in the lawsuit her office brought in September. In the lawsuit, she accused Mr. Trump and his company of committing "staggering" fraud by overvaluing its assets by billions of dollars on his financial statements.

Both documents accused Mr. Weisselberg of lying to an insurance underwriter when he claimed that the value of the Trump Organization's real estate holdings had been assessed by an independent appraiser, when in fact they had not. Because the insurer, Zurich North America, relied on Mr. Weisselberg's assurances about the valuations to renew its coverage, his misrepresentations could be used as evidence in an insurance fraud case, according to legal experts.

Story continues below advertisement

Continue reading the main story

The district attorney's office has subpoenaed Zurich and questioned the appraiser, according to people with knowledge of the previously unreported developments, who added that there is no suggestion of any wrongdoing by either the insurer or the appraiser. A spokesman for Zurich declined to comment.

In recent months, at the direction of Mr. Bragg, the prosecutors also sought documents from New York City that the Trump Organization submitted for its skating rink in Central Park and golf course in the Bronx, city facilities that it has operated, according to people with knowledge of the matter. They had initially subpoenaed other related records this year. While is it unclear why they sought the records, it is a felony to lie on the documents, some of which were filed with the city's contracting agency under Mr. Weisselberg's name.

Dana Rubinstein contributed reporting.