# Exhibit S

Thanks for trying out Immersive Reader. Share your feedback with us.

# Many Top NYC Attorneys Loathe Trump — But Don't Like Bragg's Chances



*Manhattan District Attorney Alvin Bragg arrives to the courtroom during the Trump Organization tax-fraud trial at the New York Supreme Court on Dec. 6, 2022, in New York City. Michael M. Santiago/Getty Images*

As Manhattan District Attorney Alvin Bragg moved toward an indictment of Donald Trump, two predictable camps have formed: His critics are hungry for justice for a lawless operator, and his supporters are furious at what they see as rank political persecution. But there's a third faction: people who hate everything Trump stands for — but fear that Bragg's case is far from the strongest option when it comes to holding the former president accountable.

That camp includes some high-powered attorneys in New York City's vaunted legal community, including litigators who fear Bragg has a weak case built on shaky grounds — and that his indictment could undermine more promising proceedings related to Trump's attempts to overturn the 2020 election or his hoarding of classified documents at Mar-a-Lago.

A grand jury on Thursday night voted to indict Trump, but even before the vote, top lawyers were weighing in skeptically about Bragg's chances.

"This case is a joke, frankly, and I've litigated against that office for 33 years," said longtime New York criminal-defense attorney Jeffrey Lichtman, who has counted Mexican drug lord El Chapo among his many high-profile clients. "I don't think that case is winnable."

Detractors have questioned the viability of building the case around a hush-money payment to porn star Stormy Daniels, which appears to be at the crux of Bragg's case. Did Trump's cash-for-silence deal actually break any laws — or is it just business as usual for a powerful man who doesn't want an affair getting out? And if it did break the law in some way, is it even a winnable case?

Manhattan prosecutors are reportedly trying to convince a grand jury that Trump's handling of an October 2016 hush-money payment to Daniels, through his then-consigliere Michael Cohen, constituted an illegal business practice. They are reportedly alleging that Trump falsely recorded $130,000 in repayments to Cohen as legal fees, constituting falsification of business records.

Falsification of business records is typically treated as a misdemeanor, but prosecutors could pursue this charge as a felony if they believe it was done in service of committing another crime. While there have been plenty of leaks about grand-jury proceedings in this case, it's unclear what exactly they think that other alleged crime might be.

Speculation surrounding prosecutors' legal theory is that the other alleged crime could be campaign-finance related, given that the payoff happened right before the election. This is where things get especially thorny: If prosecutors do go the campaign finance violation route, it's not clear whether they're going to claim Trump wanted to violate state or federal election law. And if it turns out there isn't an applicable state campaign-finance statute (which there might not be) then the question arises: Could state prosecutors invoke federal law in this type of situation, even though it's not their jurisdiction?

*Rolling Stone* reported Wednesday that some members of Trump's own team are telling the president he'll lose, claiming — somewhat speciously — that he can't get a fair trial in Manhattan. Some of Trump's team have told him that despite a likely loss at trial, he'll win on appeal.

But skepticism of the case — and whether it could ultimately hold up — isn't limited to Trump's legal cronies: Some lawyers with no love for Trump still think the case is shaky. Among strong skeptics of the case is Randy Zelin, an adjunct professor at Cornell Law School who has practiced criminal defense for 32 years and worked as a prosecutor for three prior to that.

"I do not believe, based upon what we know, that the felony charge will stick," Zelin, who's neither a Trump fan nor supporter of his policies, tells *Rolling Stone*.

"What you need to do to elevate the misdemeanor falsification of business records to a felony simply is this — [show] that the act of falsifying the business records was done in furtherance of another felony, another crime, that's it," Zelin explains.

But, "it would have to be a New York state crime." The fact that whatever alleged campaign-finance misconduct took place involved a federal election means that it's very iffy that prosecutors could actually operate on this legal theory: "You have all of these potential potholes that are going to sideline the district attorney's vehicle here with a blowout on these little technical violations," Zelin says.

"I think that the district attorney's office in New York County is running a great risk of diluting the strength of other potential cases brought by other prosecutors, because this is a weak case — legally, it is a weak case."

"Practically, it is really more or less a victimless crime, unless you believe that the election was truly influenced by the fact that people didn't know about the hush-money payments," Zelin says. "And with all of the stuff that he has said, does anyone really believe that if it got out that he paid Stormy Daniels and Karen McDougal, that it would have changed the election? Probably not."

Peter Brill, a longtime New York defense attorney who has no love for Trump, voices similar sentiments. "I think that the basis for the felony, linking it to campaign-finance declarations … it's a strange way to get to an indictment, especially in a falsifying-business-records situation that's often charged as a misdemeanor," Brill says. "On the one hand, the facts seem fairly damning, but the foundation that they're built on is weaker than I would hope for in the first criminal indictment or criminal charge [against] Trump."

There's also the issue of Cohen: If the case does go in the direction it appears to be going, he'd almost certainly be the key witness at trial. But Cohen copped to a host of federal crimes in late 2018 related to this payment — including lying to Congress.

"Michael Cohen has significant credibility issues, not only because of his underlying criminal conviction but because of his outright contempt for his former boss that he parades out to the press whenever he has the opportunity," Brill says. "And I think there's a tremendous amount of bias that can be explored there."

There's also the question of whether Trump could be shown to have had knowledge about these financial shenanigans.

That said, Bragg does have a resumé that includes high-profile prosecutors' offices, suggesting that he thinks it's a winnable case, which could say something. "Given that Alvin Bragg is a former federal prosecutor in one of the most prestigious, if not the most prestigious, U.S. attorney's offices in the country," Brill says, "and given what we know — that he had backed off of this prosecution for a couple of years before reapproaching it — that he has to have a fairly high level of confidence that they can make their case if they're going to return an indictment."

"I loathe Trump for a variety of reasons," Lichtman says, but "it's still America, and we still have to be concerned about cases brought against people that we don't like, because the next day it's going to be cases against people we do like.

"Sometimes unpopular people get screwed unfairly by the system just because people don't like them."

Lichtman also pointed to the case's apparent reliance on Cohen, "who might be the only person in New York who's a bigger liar than Trump."