# EXHIBIT
# 6

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

JAMES H. BRADY,

        *Plaintiff,*

v.

MERRICK B. GARLAND, UNITED STATES
ATTORNEY GENERAL,

        *Defendant.*

_____

Case: 1:23-cv-00212
Assigned To : Mehta, Amit P.
Assign. Date : 1/24/2023
Description: Pro Se Gen. Civ. (F-DECK)

**COMPLAINT FOR
WRIT OF MANDAMUS**

Civil Case No._____

## COMPLAINT FOR WRIT OF MANDAMUS

1.    Petitioner is seeking a writ of mandamus from this Court pertaining to separate criminal matters that wiped out his livelihood and life savings of over $2.3 million dollars on September 5, 2018 because there is no other way Mr. Garland will permit Petitioner to file either complaint because in both cases the perpetrators are rich and powerful politically connected people.

2.    As will be shown below, Mr. Garland's conduct proves he is engaging in an egregious unlawful and unconstitutional two-tier justice system where the Department of Justice will not accept the filing of criminal complaints made by poor and powerless people against rich and powerful politically connected people.

3.    This conduct by Mr. Garland is best proven as being egregious and dangerous to our democracy using Mr. Garland's own words as shown below

1



RECEIVED

JAN 24 2023

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

4.    In a May 29, 2021 commencement address at Harvard to the Class of 2020-2021, Mr. Garland said "Finally, the preservation of democracy requires our willingness to tell the truth."

5.    In a May 25, 2022 speech, Mr. Garland said "The rule of law requires that there not be one rule of law for the powerful and another for the powerless; one rule for the rich and another for the poor."

6.    Petitioner's evidence proves it is extraordinary that Mr. Garland made the statements found in paragraphs four and five when his actual conduct is the opposite of what Mr. Garland said in these two paragraphs.

7.    Petitioner's evidence proves Mr. Garland is far more interested in protecting the stepson of the rich and powerful Judge Judy Sheindlin than he is in telling the truth about Gregory Sheindlin's admitted unlawful conduct.

8.    Petitioner has been left poor and powerless because of the criminal act that Sheindlin admitted by stipulation on May 4, 2021 took place through his fraudulent misrepresentation's "through implication" of the findings on a three question June 26, 2015 State Court Jury Interrogatory Sheet.

9.    Mr. Garland is also far more interested in protecting a rich and powerful New York City Developer named Jeffery Katz from Sherwood Equities than he is in protecting the rights of Petitioner who is now left poor and powerless.

10.    For the benefit of Jeffery Katz, without a writ of mandamus Mr. Merrick Garland will continue to sit silent and not tell the truth that ,as a matter of law, Plaintiff's Offering Plan contract (Exhibit 1), and final February 11, 2010 Appellate Division First Decision (Exhibit 2) govern over the unlawful and unconstitutional final lower New York State Supreme Court July 15, 2014 Decision (Exhibit 3)

11.    For Mr. Katz benefit, the final lower Court July 15, 2014 Decision unlawfully and unconstitutionally voided the $70-90 million in development rights that were affirmed to be contractually appurtenant to petitioner's 12th Floor and Roof Apartment  pursuant to certain words in the higher, final February 11, 2010 Appellate Division, First Department Decision.

12.    The fact that this unlawful and unconstitutional crime took place is proven very simply  below.

13.    The Seventh Paragraph Footnote to the Schedule of Units to Petitioner's commercial co-op apartment reads as follows:

 "Seventh Paragraph - NEW- The 12th Floor and Roof Unit Shall have, in addition to the utilization of the roof, the  right to construct or extend structures on the roof or above the same, to the extent that may from time to time be permitted under applicable law."

14.    The Appellate Division, First Department, February 11, 2010 Decision ended with the following words:

Pursuant to paragraph 7, that plaintiffs have the right to construct or extend structures upon the roof or above the same to the extent that may from time to time be permitted under applicable law, unanimously affirmed, without costs.

3

15.     In her July 15, 2014 Decision Justice Kornreich unlawfully rewrites the

Offering Plan Contract and the higher Appellate Court decision to  say the following:

> It has already been adjudged that while the owners of the unit *may* have the right
> to erect additional structures on the roof, that right does not entitle them to use
> any floor area in doing so (Prior Action, decision and order, Mar 13, 2009 at *2 &
> *4-*5 ["Nothing herein shall be construed as holding that plaintiffs have the right
> to use all or any part of the TDRs in connection with such construction or
> extension"] *Brady v 450 W. 31st St. Owner's Corp.*, 70 AD3d 469, 470 [1st Dept
> 2010] [holding that the offering plan "reserves for plaintiffs the right.... to
> construct or extend structures on the roof that may be built without the use of the
> building's development rights."]

16.     Mr. Garland knows the rewriting of Petitioner's Offering Plan contract and

higher Appellate Court decision by the lower court judge was an unlawful and

unconstitutional act and was done with the deliberate criminal state of mind to help

politically connected people, including Judge Kornreich's husband's law firm Greenberg

Traurig (who was one of the defendants in the case) get away with their part with

stealing the $70-90 million in air rights that were affirmed to be contractually

appurtenant to Petitioner's then 12th Floor and Roof Unit Apartment after Petitioner and

his wife Jane refused to sign a waiver of their Unit's affirmed rights in 2012. (Exhibit 4).

17.     For the benefit of Jeffery Katz and the powerful law firms involved in this

plain and clear criminal act , Mr. Garland and his current and former United States

Attorneys for the Southern District of New York have also completely ignored the oral

argument transcript from March 18, 2014 (Exhibit 5) proving Judge Kornreich and each

of the seven attorneys present on March 18, 2014 admitted "one after the other" that day that they each fully understood that, pursuant to Petitioner's Offering Plan Contract and certain words in the Appellant Division, February 11, 2010 Decision, the Air Rights were affirmed to be contractually "appurtenant" to Petitioner's then 12th Floor and Roof Unit Apartment "to the extent that may from time to time be given under applicable law."

18.     The March 18, 2014 Oral Argument transcript proves it was a criminal act when all these same lawyers then lined up to collect a total of over $500,000.00 in legal fees on September 5, 2018 from Petitioner pursuant to the sanctions found only in the unlawful and unconstitutional final, lower New York Supreme Court July 15, 2014 Decision.

19.     Mr. Garland and his current and former United States Attorneys for the Southern District of New York have all been told about the YouTube video of Jeffery Katz shortly after the crime took place to Cain's New York that he flipped the development lot for a $120 million-dollar profit but never mentioned the fact that the sale to Developer Frank McCourt also included the 170,000 square feet of air rights that Mr. Katz purchased from 450 West 31st Street Owners Corp because he knew the transaction was unlawful because Mr. Katz never obtained the signed waiver (Exhibit 4) that he needed from Petitioner and his wife Jane that was sent to them to sign, for free, in 2012:

https://www.youtube.com/watch?v=3kC2m2jSRZ8

20.     The case law below proves it is axiomatic that Petitioner has the First Amendment right to file a criminal complaint, and that Mr. Garland violated that First Amendment right by his refuel to accept a criminal complaint from Petitioner to remedy his grievance.

21.     "Undoubtedly, Plaintiffs are correct when they state that they have a First Amendment right to file complaints with the government. *Hogan v. County of Lewis*, 929 F.Supp 2d 130 (District Court ND NY 2013). "It is axiomatic that filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right to petition government for the redress of grievances." *Lott v. Andrews Ctr.,* 259 F.Supp.2d 564, 568 (E.D.Tex.2003). The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." *Jackson v. N.Y. State,* 381 F.Supp.2d 80, 89 (N.D.N.Y.2005).

22.     For the financial benefit of Jeffery Katz, 450 West 31st Street Owners Corp, and the law firms involved in this clearly unlawful act by Judge Kornreich the current and former Manhattan District Attorney, the former and current New York State Attorney General and the current and former United States Attorney for the Southern District of New York have all gone to great lengths to refuse to permit Plaintiff from filing a criminal complaint to seek redress for the plan and obvious unconstitutional and criminal conduct proven above.

23.     There is no other way that Plaintiff will be able to file a criminal complaint without the Court granting a writ of mandamus.

24.     On May 4, 2021 Gregory Sheindlin and his attorney Robert Sussman confessed through stipulation that the three question June 26, 2015 State Court Jury interrogatory sheet that Mr. Sheindlin used to force Petitioner lose his livelihood by forcing the sale of Petitioners 12th Floor and Roof Unit apartment to pay over $1.7 million dollars to his client IGS Realty on a personal guarantee on September 5, 2018 never even had any questions, let alone any finding that even pertained to personal guarantees.  The deposition was audio filmed and can be listened to on YouTube by Typing "Gregory Sheindlin May 4, 2021 deposition."

25.     The fact that this fraudulent criminal act took place by Mr. Sheindlin is very simply proven by comparing what Mr. Sheindlin wrote to obtain the over $1.7 million dollar Judgement against Petitioner against   what Mr. Sheindlin and his attorney Robert Sussman admitted by stipulation at Mr. Sheindlin's May 4, 2021 deposition.

26.     In his Article  52 Petition  Mr. Sheindlin made the following false claims, and nothing more, to obtain what grew to be more than a $1.7 million-dollar personal guarantee judgment from the New York State Courts against Petitioner:

AND Plaintiff (IGS Realty) having presented all its evidence and rested, and  the Defendant (Brady) having presented all its evidence in support of his defenses and having rested, the jury rendered a verdict on June 26, 2015 in favor of Plaintiff against the Defendant, in the sum of $541,758.62, with the statutory  rate of interest accruing  from May 1, 2009 and the cost of disbursements to Plaintiff.

27.     Gregory Sheindlin and his attorney Michael Sussman admitted under oath and by stipulation at Mr. Sheindlin's May 4, 2021 deposition in the case *Gregory Sheindlin v. James H. Brady*, 21-cv-1124 (LJL)(Docket No. 73), that the personal guarantees were not ever even part of the jury verdict questions (Exhibit 9):

> **(p. 41-42)** MR. SUSSMAN: Hold on.  We both can't speak at the same time.  The gentleman has explained to you exactly what he did.  It's also in the document.  <u>The document speaks for itself.  It says nothing about a personal guarantee.  That's admitted.  We can stipulate to that so we don't have to worry about that</u>.

28.     26 USC App Rule 91 holds that "A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation."

29.     The First Circuit holds that "a party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding." *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc*., 976 F.2d 58, 61 (1st Cir.1992).

30.     "Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal." *Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir.1995).

31.     Stipulated admissions are not actually evidence but rather "formal concessions in the pleadings in the case or stipulations by a party or its counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for

8

proof of the fact." JOHN H. WIGMORE, WIGMORE ON EVIDENCE § 2597, at 852 (1981 & Supp. 1991).

32.     In other words, a fact that is judicially admitted is no longer a fact at issue in the case; the party making the judicial admission has conceded to it.

33.     The case law above proves the May 4, 2021 stipulation made by attorney Gregory Sheindlin and his attorney Robert Sussman was  a full and clear ,under oath confession from Mr. Sheindlin and his attorney Robert Sussman , that Mr. Sheindlin and his client Philippe Ifrah committed a criminal act when they fraudulently misrepresented through "implication" that the Jury ruled on its June 26,2015 jury interrogatory sheets that the personal guarantees that Petitioner signed with IGS Realty were enforceable .

34.     The case law below proves Petitioner has the absolute First Amendment right to file a criminal complaint with Mr. Garland's Office and the case law below also proves Mr. Garland has the absolute duty to permit Petitioner to file a criminal complaint to seek redress for the crime admitted to by Sheindlin and his attorney Robert Sussman by stipulation on May 4, 2021. (Exhibit 9).

35.     "Undoubtedly, Plaintiffs are correct when they state that they have a First Amendment right to file complaints with the government.  *Hogan v. County of Lewis*, 929 F.Supp 2d 130 (District Court ND NY 2013).  "It is axiomatic that filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right to petition government for the redress of grievances." *Lott v. Andrews Ctr.,*259

F.Supp.2d 564, 568 (E.D.Tex.2003). The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." *Jackson v. N.Y. State,* 381 F.Supp.2d 80, 89 (N.D.N.Y.2005).

36.     For at least 6 years Petitioner has been trying to file a criminal complaint with the current and past Manhattan District Attorney pertaining to the fraud scheme that Mr. Sheindlin admitted through stipulation at his May 4, 2021 Deposition took place and not once did anyone even respond to Petitioner's multiple letters.

37.     For at least 6 years before Sheindlin's May 4, 2021stipulated confession, Petitioner has been trying to file a criminal complaint with the current and past New York State Attorney General pertaining to the fraud scheme that Mr. Sheindlin himself admitted through stipulation took place at his May 4, 2021 Deposition and not once did anyone in law enforcement even respond to Petitioner's multiple letters.

38.     Mr. Garland is the United States top law enforcement official and he is duty bound to permit Petitioner to file a complaint against Gregory Sheindlin and his client Philippe Ifrah for the admitted ,though stipulation, crime where these two men stole over $1.7 million dollars from Petitioner on September 5, 2018 by having Mr. Sheindlin write a collection action based on the fraudulent "implied" representation that the Jury ruled on their June 26, 2015 State Court Jury Interrogatory sheets that the personal guarantees signed by Petitioner were enforceable  and that the jury rejected Petitioner's defenses

10

and counterclaims when these two men knew these claims were a fraudulent
misrepresentation of the Jury findings

39.     It is clear and obvious that Petitioners First Amendment right to file a
criminal complaint is being violated by Mr. Garland for the benefit of the stepson of the
rich and powerful Judge Judy Sheindlin and for the benefit of the rich and powerful New
York City developer Jeffery Katz

40.     There is no other way that Mr. Garland (or any other law enforcement
official) will permit Petitioner to file his two criminal complaints without a writ of
mandamus.

## JURISDICTION AND VENUE

41.     This Court may appropriate in the aid of their respective jurisdictions and
agreeable to the "issue all writs necessary or usages and principles of law." 28 U.S.C. §
1651(a).

42.     This Court has the authority to issue a writ of mandamus pursuant to the All
Writs Act. 28 U.S.C. § 1651(a), which confers the power of mandamus on federal
appellate courts. _LaBuy v. Howes Leather Co_.  Mandamus may be appropriately issued
to confine an inferior court to a lawful exercise of prescribed jurisdiction, or when there
is an usurpation of judicial power.  See _Schlagenhauf v. Holder_, 379 U.S. 104 (1964).

43.     The Administrative Procedure Act, 5 U.S.C. § 701, et seq. provides a partial
waiver of the sovereign immunity defense as to judicial review.  5 U.S.C. §702 was

amended to provide that an "action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party." In addition, 5 U.S.C. § 703 has been amended to allow suit to be brought against the United States or any of its agencies or officers.

44.     The sovereign immunity defense has been withdrawn only with respect to actions seeking specific relief other than money damages, such as an injunction, a declaratory judgment, or a writ of mandamus. _Bowen v. Massachusetts_, 487 U.S. 879 (1988).

## **STATEMENT OF THE CASE**

45.     New York State law is very clear that an unambiguous contract cannot be rewritten by the courts:

> "When parties set down their agreement in a clear, complete document, their writing should be enforced according to its terms." _W.W.W. Assoc. v Giancontieri_, 77 NY2d 157, 162 10 [1990]. And "Courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." "In the absence of any ambiguity, we look solely to the language used by the parties to discern the contract's meaning." _Vermont Teddy Bear v. 538 Madison Realty Co._, 308 AD2d 33 (2004).

46.     Mr. Garland sits silent refuses to permit Brady from filing a criminal complaint although he plainly sees in "black and white" that Petitioner's one sentence

long contract provision was unlawfully and unconstitutionally rewritten by a lower court judge to void the $70-90 million in air rights that the contract and higher court decision said were contractually appurtenant to Petitioner's then 12th Floor and Roof unit Apartment.

47.    The Seventh Paragraph Footnote to the Schedule of Units to Petitioner's commercial co-op apartment reads as follows:

> "Seventh Paragraph - NEW- The 12th Floor and Roof Unit Shall have, in addition to the utilization of the roof, the  right to construct or extend structures on the roof or above the same, to the extent that may from time to time be permitted under applicable law."

48.    The Appellate Division, First Department, February 11, 2010 Decision ended with the following words:

> Pursuant to paragraph 7, that plaintiffs have the right to construct or extend structures upon the roof or above the same to the extent that may from time to time be permitted under applicable law, unanimously affirmed, without costs.

49.    Justice Kornreich's lower New York Supreme Court July 15, 2014 Decision plainly shows Judge  Kornreich unlawfully and unconstitutionally rewriting the Offering Plan contract and higher Appellate Court Decision to read as follows:

> It has already been adjudged that while the owners of the unit *may* have the right to erect additional structures on the roof, that right does not entitle them to use any floor area in doing so (Prior Action, decision and order, Mar 13, 2009 at *2 & *4-*5 ["Nothing herein shall be construed as holding that plaintiffs have the right to use all or any part of the TDRs in connection with such construction or extension"] *Brady v 450 W. 31st St. Owner's Corp.*, 70 AD3d 469, 470 [1st Dept 2010] [holding that the offering plan "reserves for plaintiffs the right.... to construct or extend structures on the roof that may be built without the use of the building's development rights."]

50.     Mr. Garland sits silent and won't even tell the truth that it was unlawful and unconstitutional for the lower court judge to rewrite a contract and higher court decision to void what these legally binding governing Offering Plan Contract and February 11,2010 decision said on their face..

51.     In the August 9, 2018 Decision in the case of *Massey v. Byrne*, the Justices of the First Department made clear the law a lower court was unlawful:

> "An appellate court's resolution of an issue on a prior appeal constitutes the law of the case and is binding on the Supreme Court as well as on the appellate court ... [and] operates to foreclose re-examination of the question absent a showing of subsequent evidence or change of law" 107 AD3d 544 [1st Dept 2013].

52.     Similarly, the "resolution of an issue" by the Appellate Division "is binding on all lower courts and cannot be challenged or modified absent a showing of subsequent evidence." *Bd. of Managers of the 25 Charles St. Condo. v. Seligson*, 961 N.Y.S.2d 152, (N.Y. App. Div. 2013).

53.     The case law above proves Mr. Garland sees that it was completely unlawful and unconstitutional for the lower court to rewrite the contract and the higher court decision to void the $70-90 million in development rights that were affirmed appurtenant to Petitioner's then 12th Floor and Roof Unit Apartment pursuant to certain words in the higher final February 11, 2010 Appellate Division, First Department decision yet Mr. Garland (and all other law enforcement officials) completely ignore

14

Petitioner's pleas for help and refuse to permit Petitioner to even file a criminal complaint to seek redress of this grievance.

54.     Mr. Garland, like all lawyers, knows that the $70-90 million in air rights that were affirmed to be contractually appurtenant to Plaintiff's then 12th Floor and Roof Unit Apartment pursuant to certain words in the final, higher Appellate Court, February 11, 2010 decision never actually went away or became null and void just because of the fact that these documents were ignored and instead the final lower Supreme Court July 15, 2014 court decision was being unlawfully and unconstitutionally treated as the valid decision that adjudicated the meaning of Brady's contract and Brady's behavior in the eyes of the law.

55.     Mr. Garland (and all the other law enforcement agencies mentioned above) were shown the March 18, 2014 (Exhibit 5) oral argument hearing where Judge Kornreich made the following admissions:

THE COURT:  The decision says that pursuant to paragraph 7, Plaintiff has "the right to construct or extend structures on the roof or above the same, to the extent that may from time to time be permitted under applicable law."

THE COURT:  How would you deal with the decision of the Court and say he has no development rights, he has no air rights, yet he has the right to build? What does that mean? (Transcript p. 9:17-20).

THE COURT: The courts said that he has no air rights, but he has the right. But I think, perhaps, the courts didn't understand that air rights, FAR, all of that is probably the same things, development rights, so – (Transcript p.12:9-13).

THE COURT: I don't know what you said. Nor do I know what the Court said. (Transcript p. 14:12-13)

THE COURT: The decisions don't – don't address this, because, at least in this Court's mind, I don't see how you can build and build up without going into air rights or – you know, so I don't understand the decisions. I'm asking you for guidance. (Transcript p. 17:18-22).

THE COURT: And the Appellate Division and lower court doesn't say, "You can only build to a certain height," they said "Yeah, he has the right to build up and out but he can't use the air rights," which is really an enigma. (Transcript, p. 27:3-29:3).

**THE COURT: I don't understand how you can build a structure on a roof if you have no air rights**. (Transcript p. 28:4-5).

Mr. BRADY: So the correct reading it's an inconsistent decision. Please square the two, Your Honor. Square –

THE COURT: I don't know how. (Transcript p. 53:17-19).

THE COURT:  – it was the sponsor who put this in, it was the sponsor who owned the penthouse and roof.  Perhaps that was his intent.  However, I can't rule that way because the Supreme Court already ruled and the Appellate Division already ruled that you do not own those air rights. (Tr. p. 54:11-20).

MR. BRADY: You keep saying that, Your Honor.  I don't know why.  It's not the issue. I'm wondering why you keep saying ownership is the issue.  I have utilization to the extent permitted under our law.  Please stop saying ownership is the issue. It's not and it never was. Okay? Here's -- all of this, all of this that you're seeing before you, Your Honor, is Plan B. If I can --

THE COURT: Well, the Appellate Division says that you have no ownership of or veto power over the building's development rights or air rights.

MR. BRADY: You're right. Your Honor. It said -- the paragraph gives no express veto power or whatever. And you know it wouldn't have to. It must be implied. Otherwise every single sentence in an offering plan would be, "And that right cannot be taken away without a waiver." You know that. It must be implied. (Index 1-G, Tr. p. 55:22 – 56:13).

THE COURT:  It was reached.  What wasn't reached is what are your rights.

16

THE COURT:  - is an acknowledgment by all the courts that you have certain rights under paragraph 7.  The question left open is what are those rights.  (Index 1-G, p. 69:19).

BRADY:  Okay.  What are my rights?  Please define them.  What are my rights? they said I have a right to build structures as long as zoning said so.  All of these attorneys said it.  You can ignore that, pretend they didn't make those acknowledgments?

THE COURT:  They did make those acknowledgments.  (Index 1-G, Tr. p. 70:20-25).

56.     Similarly, in the July 15, 2014 decision itself, Justice Kornreich made the

following acknowledgments regarding Petitioner that proved she knew that the

$500,00.00 in sanctions imposed on Petitioner were unlawful and unconstitutional:

"Strictly speaking, Brady is correct that the question of whether such an easement interferes with his right to build structures on the roof or otherwise permitted by applicable law has never been determined and so is not barred." (July 15, 2014 decision, p.15).

"Brady correctly notes that the issue of whether the sale to Extell violated his rights was never reached, and that the issue of whether the sale of the air rights by 450 Owners Corp. to Sherwood violated Brady's rights could not have been reached in the prior actions." (July 15, 2014 decision, p.19).

57.     Mr. Garland knows that notwithstanding the admissions above, Justice

Kornreich completely departed from these two admissions in the body of the decision

and instead made the false personal attacks below so that she could impose what grew to

be over $500,000 of sanctions that Brady was forced to pay on September 5, 2018:

"It is clear from the papers and the transaction's history that Brady acted in bad faith in bringing the instant cases."

17

"His misinterpretation of prior judgment, his feigned ignorance or the origin or the meaning of the phrase "transferable development rights," and his argument that a decision, which he appealed to no avail, is not binding are but a few examples of the frivolous arguments made in the instant actions."

"In short, Brady has dragged more than twenty parties into court to litigate matters that have already been determined and claims that lack any substance."

"The trial court and the appellate court courts in the Prior Action have denied him such control. Undeterred, he has ignored these courts' rulings and brought these meritless actions, abusing the judicial process."

"This is a near perfect example of frivolous conduct that warrants defendants request for the imposition of sanctions."

58.     Mr. Garland knew it is clear and obvious given the courts' numerous admissions regarding the merits of Plaintiff's claims both at Oral Arguments on March 18, 2014 and in the July 15, 2014 decision that sanctions were not remotely warranted in this case yet Mr. Garland, like his predecessors and all other law enforcement officials mentioned above, have sat silent and refused to permit Petitioner to file a criminal complaint because the content of the complaints prove criminal wrongdoing by rich and powerful people.

59.     All current and past local, state and federal law enforcement refused to permit Plaintiff from filing a criminal complaint although their refusals to accept a complaint from Petitioner are a clear violation of their duties and oath of office.

60.     At this point only Mr. Garland has the power to remedy the unlawful and unconstitutional fraud scheme where Petitioner's contract and higher court decision are

ignored and buried and replaced with a lower court decision which voided the $70-90 million in air rights affirmed appurtenant to Petitioner's then 12th Floor and Roof Unit apartment and that caused so much destruction to Petitioner and his family.

61.     The unlawful and unconstitutional conduct described above is certainly an "extraordinary situation" that warrant the drastic remedy of a writ of mandamus.

62.     Without a writ of mandamus, the scheme where Plaintiff's Offering Plan contract and final higher court decision were buried and unlawfully replaced with a final lower court decision will never be remedied.

63.     Without a writ of mandamus all of the false and cruel personal attacks that were only found in the lower court decision will forever continue to be viewed as true.

64.     The cruel and false claims found only in the lower court decision are as painful and humiliating to Plaintiff as the fact that the $70-90 million in air rights that were affirmed contractually appurtenant to his then 12th Floor and Roof Unit Apartment were stolen in a blatantly obvious criminal scheme.

65.     Mr. Garland knows of the filing injunctions that have been implemented in the state and federal courts in New York unconstitutionally and unlawfully to prevent Plaintiff from seeking regress of the above described grievance in the New York Courts.

66.     On their face, the following two filing injunctions below prove that the New York State and New York District Court Judges have implemented filing injunctions on false grounds and for the benefit of the rich and powerful politically connected

19

perpetrators of the two crimes proven above.

67.     On February 3, 2017 District Court Judge Daniels in the case _Brady v. Goldman_ (16-cv-2287) issued a filing injunction that reads as follows:

> Plaintiff is hereby enjoined against filing new actions in the Southern District of New York that relate in any way to the cooperative's air rights appurtenant to his cooperative unit at 450 West 31st Street, New York, New York, or the conduct of any attorney, judicial officer, government official, or other third party in relation to such rights. This injunction should be broadly construed to bar the filing without leave of this Court of any case, against any defendant that has as a factual predicate the cooperative's air rights appurtenant to Plaintiff's penthouse unit, or any of the collateral actions that have arisen from it.

68.     The filing injunction was implemented at the request of the Goldman Defendants  and,  on its face, the filing injunction was implemented unlawfully and unconstitutionally so that politically connected people could get away with stealing the $70-90 million in development rights that everyone admitted on March 8,2014 Oral Arguments were affirmed to be contractually appurtenant to Petitioner's then 12th Floor and Roof Unit commercial apartment " to the extent that may from time to time be permitted under applicable law".

69.     A review of the above filing injunction shows Judge Daniels carelessly admitting twice his full understanding that the air rights were contractually" appurtenant "to Petitioner's then 12th Floor and Roof Unit apartment while at the same time implementing a filing injunction to block Plaintiff from any remedy for the fact that the

$70-90 million in air rights were stolen through the criminal and unconstitutional actions of lower Supreme Court Judge Shirley Kornreich.

70.     The filing injection above proves that there is no other way that Petitioner will get a remedy for the scheme where his $70-90 million in development rights were stolen unless Mr. Garland is forced to permit plaintiff to file a criminal complaint to remedy the blatantly obvious unlawful rewriting of Petitioner's Offering Plan contract and February 11,2010 Appellate Court Decision   .

71.     In 2018, the United States Attorney for the Southern District of New York successfully used the February 3, 2017 filing injunction as an excuse to simply refuse to permit Plaintiff from filing a criminal complaint.

72.     In 2018, Petitioner sought the protection of Geoffrey Berman, the then US Attorney for the United States Attorney less than 12 days after the crime committed by Gregory Sheindlin on September 5, 2018.  *Brady v. Berman*, 18-cv-08459 (2018).

73.     The complaint was filed because Mr. Berman refused to accept a criminal complaint from Brady regarding the two crimes detailed in this Petition.

74.      Rather than accept a complaint from Brady, Mr. Berman's Office litigated and fought tooth and nail to find excuses for their refusal to permit Petitioner to file a criminal complaint.

75.     In that case, the filing injunction was successfully used as an excuss to bar Petitioner from seeking a remedy in that Court against the crimes of the politically

connected New York City developer Jeffery Katz and the powerful law firms involved

with the fraud scheme where Petitioner's Offering Plan contract and Appellate Court

decision are unlawfully and unconstitutionally ignored and unlawfully unconstitutionally

replaced with the lower Supreme Court July 15,2014 Decision .

76. Petitioner's *Complaint for Injunctive Relief* in 2018 did not ask for any

monetary compensation but rather:

> Petitioner needs the protection of the United States Attorney for the Southern
> District of New York, Hon. Geoffrey S. Berman, for two admitted crimes that took
> place under color of law. Without a Mandatory Injunction, Petitioner's guaranteed
> constitutional rights for equal protection under the law will continue to be
> deprived.

77. On June 4, 2019, Petitioner sent the following letter to Magistrate Judge

Moses proposing to settle the case if Petitioner were simply allowed to file a criminal

complaint:

> I am writing requesting that the Court issue a Settlement Conference in the above-
> named case pursuant to Rule 16 of the Federal Rules of Civil Procedure.
>
> All I am requesting for settlement is that the United States Attorney for the
> Southern District of New York agree to grant me my First Amendment right to file
> a complaint with his office that is followed by a written Determination that is
> based on the facts and evidence.
>
> Federal case law is clear that a private citizen who is the victim of a crime has a
> First Amendment right to file a criminal complaint with the appropriate
> government agency. That right is distinct from the discretion the agency has in
> making a determination whether to prosecute or not. But the law enforcement or
> government agency must make an actual "Determination" that can be reviewed
> and if necessary appealed or challenged in court.

"Undoubtedly, Plaintiffs are correct when they state that they have a First Amendment right to file complaints with the government. *Hogan v. County of Lewis*, 929 F.Supp 2d 130 (District Court ND NY 2013).

"It is axiomatic that filing a criminal complaint with law enforcement officials constitutes an exercise of the First Amendment right to petition government for the redress of grievances." *Lott v. Andrews Ctr.*, 259 F.Supp.2d 564, 568 (E.D.Tex.2003).

"The rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment." *Jackson v. N.Y. State,* 381 F.Supp.2d 80, 89 (N.D.N.Y.2005).

Rule 1 of the Federal Rules of Civil Procedure requires that disputes be resolved in a manner that is just, speedy and inexpensive. "Courts have an obligation to vigorously explore efforts to reduce litigation costs through settlement." *In re Tobacco Litig.*, 192 F.R.D. 90, 95 (E.D.N.Y. 2000) (describing court's duty to take affirmative action assisting the parties in all possible settlement options).

"The purpose of the settlement conference is to try to settle a case before the hearing or trial." *American Bar Association*.

A Settlement Conference now will accomplish precisely what the law is intended to do, to facilitate a settlement that does not require the time and expense of a trial. I urge the Court to schedule a Settlement Conference as soon as possible so this case, which has sat dormant for months, may be resolved.

Sincerely,
James H. Brady

78.     This June 4, 2019 settlement offer was quickly endorsed by the court (Exhibit 7) but rejected by the United States Attorney (Exhibit 8), proving that for years the United States Department of Justice has refused to permit Petitioner to exercise his First Amendment right to file a criminal complaint to seek redress of grievance by law enforcement officials.

79.     The June 4, 2019 settlement offer letter shows all Petitioner was seeking was the following right:

> "All I am requesting for settlement is that the United States Attorney for the Southern District of New York agree to grant me my First Amendment right to file a complaint with his office that is followed by a written Determination that is based on the facts and evidence.
>
> Federal case law is clear that a private citizen who is the victim of a crime has a First Amendment right to file a criminal complaint with the appropriate government agency.  That right is distinct from the discretion the agency has in making a determination whether to prosecute or not.  But the law enforcement or government agency must make an actual "Determination" that can be reviewed and if necessary appealed or challenged in court".

80.     On February 25, 2021, the United States Court of Appeals for the Second Circuit affirmed the lower court's dismissal of Brady's complaint based on nothing more than the filing injunction but added that it did so "without prejudice" while also affirming 9Petitioner's First Amendment right to seek redress for the crimes:

> " Mr. Brady is correct that the First Amendment protects his right to petition the government for redress, see _BE & K Const. Co. v. NLRB_, 536 U.S. 516, 524–25 (2002).

81.     It is only through the granting of this writ of mandamus that Brady will ever have his "right to petition the government for redress"  for the two crimes proven in this writ of mandamus petition.

82.     It is an extraordinary situation when local, state and federal law enforcement official have fought in the New York State and New York District  Courts against permitting Petitioner to file a criminal complaint.

83.     Petitioner has a guaranteed First Amendment right  to file a criminal complaint with Mr. Garland's Office against Gregory Sheindlin and his client Philippe Ifrah for forcing the sale of Petitioner's 12ᵗʰ Floor and Roof Unit apartment on September 5, 2018 to pay over $1.7 million dollars to Philippe Ifrah on a personal guarantee because of a fraud scheme where "through implication" Sheindlin wrote a collection action falsely implying that the Jury ruled on a July 26, 2015 Jury interrogatory sheet that the personal guarantees were enforceable when no such finding was on the Jury Sheet.

84.     The crime described was confessed to by stipulation by Sheindlin himself and his attorney Robert Sussman at Sheindlin's May 4,2021 Deposition as is proven below. (Exhibit 9).

**(p. 41-42)** MR. SUSSMAN: Hold on.  We both can't speak at the same time.  The gentleman has explained to you exactly what he did.  It's also in the document.  The document speaks for itself.  It says nothing about a personal guarantee.  That's admitted.  We can stipulate to that so we don't have to worry about that.

85.     The above admission proves what Sheindlin wrote to collect the $1.7 million dollars on a personal guarantee was a criminal misrepresentation of the Jury findings as is prove below.

86. In the Article 52 Petition, Sheindlin made the following false claims to obtain what grew to be over a 1.7-million-dollar personal guarantee judgment from the New York State Courts:

> AND Plaintiff (IGS Realty) having presented all its evidence and rested, and the Defendant (Brady) having presented all its evidence in support of his defenses and having rested, the jury rendered a verdict on June 26, 2015 in favor of Plaintiff against the Defendant, in the sum of $541,758.62, with the statutory rate of interest accruing from May 1, 2009 and the cost of disbursements to Plaintiff.

87. Gregory Sheindlin and his attorney Michael Sussman confessed under oath and by stipulation at Mr. Sheindlin's May 4, 2021 deposition in the case _Gregory Sheindlin v. James H. Brady_, 21-cv-1124 (LJL)(Docket No. 73), that the Jury sheet that Sheindlin used to collect over $1.7 million dollars on personal guarantees from Petitioner did not even have any questions that pertained to the issue of personal guarantee:

> **(p. 41-42)** MR. SUSSMAN: Hold on. We both can't speak at the same time. The gentleman has explained to you exactly what he did. It's also in the document. The document speaks for itself. It says nothing about a personal guarantee. That's admitted. We can stipulate to that so we don't have to worry about that.

88. 26 USC App Rule 91 holds that "A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation."

89. The First Circuit holds that "a party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the

proceeding." *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc*., 976 F.2d 58, 61 (1st Cir.1992).

90.    "Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal." *Keller v. United States*, 58 F.3d 1194, 1198 n. 8 (7th Cir.1995).

91.    Stipulated admissions are not actually evidence but rather "formal concessions in the pleadings in the case or stipulations by a party or its counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact."  JOHN H. WIGMORE, WIGMORE ON EVIDENCE § 2597, at 852 (1981 & Supp. 1991).

92.    In other words, a fact that is judicially admitted is no longer a fact at issue in the case; the party making the judicial admission has conceded to it.

93.    The case law above proves the May 4, 2021 Stipulation made by Attorney Sheindlin and his attorney Robert Sussman was is a full confession from Sheindlin and his attorney that Sheindlin and his client Philippe Ifrah committed a criminal act when they fraudulently misrepresented through "implication" that the Jury ruled the personal guarantees were enforceable on their June 26, 2015 Jury interrogatory sheet.

94.    Mr. Garland is unlawfully and unconstitutionally sitting silent and refusing to permit Petitioner from filing a criminal complaint to seek redress from this admitted

crime because Mr. Garland is protecting the stepson of the rich and powerful Judge Judy Sheindlin and discarding the rights of Petitioner who is now left poor and powerless because of the fact that his life savings was stolen though the fraud scheme created by Gregory Sheindlin and his client Philippe Ifrah.

95. It is an extraordinary situation where, as here, it is proven that Mr. Garland is a total hypocrite doing exactly what he said is not permitted under the rules of law that he has the mandated duty to uphold.

96. Furthermore Mr. Garland also knows Petitioner provided  him with proof that at the same exact time Philippe Ifrah colluded with Gregory Sheindlin to lie and fraudulently represent "through implication" that the jury ruled the personal guarantees were enforceable, the actual trial lawyer Robert Fass was admitting that the jury findings pertained to something completely different than the issue of the personal guarantees.

97. In his January 5, 2018 OPPOSITION TO DEFENDANT-APPELLANT'S MOTION FOR LEAVE TO APPEAL, Robert Fass admitted that Question No. 1 of the Interrogatories pertained to a finding of whether Plaintiff's corporate tenants were operating as meeting halls or banquet halls, which had absolutely nothing to do with whether or not the Personal Guarantees were enforceable.  This fact is proven by a reading of the headings from Robert Fass as shown below:

> "THE COURT'S JURY CHARGE REGARDING THE DIFFERENCE BETWEEN 'MEETING FACILITIES' AND 'BANQUET FACILITIES' WAS CORRECT UNDER THE APPLICABLE PROVISIONS OF THE NEW YORK CITY ZONING RESOLUTION AND BUILDING CODE"

98.     On page 7, Mr. Fass wrote the following heading:

"DEFENDANT- APPELLANT WAS NOT SURPRISED BY THE FACT THAT THE LEGALITY OF HIS USE WOULD BE LITIGATED"

99.     And on page 9 Mr. Fass had the following heading:

"THE APPELLATE DIVISION DID NOT REVERSE THE JURY FINDING THAT THE DEFENDANT- APPELLANT WAS OPERATING AS AN ILLEGAL BANQUET FACILITY"

100.    Robert Fass's admissions further prove that Sheindlin's October 26, 2017 Article 52 *Petition* was a fraudulent misrepresentation of the June 26, 2015 Jury interrogatory sheet verdict findings. (Exhibit 6).

101.    Mr. Garland also knows that Sheindlin knew by reading the June 26, 2015 Jury instructions that there could not have ever been a jury finding that the personal guarantees were enforceable since the mandated question pertaining to Plaintiffs constructive eviction defense, that the court said needed to be decided against Brady was not even on the three question jury interrogatory sheet:

102.    In the June 26, 2015 Jury instructions, Judge Barry Ostrager stated the following. (Exhibit 10):

[IGS Realty] claims that the contracts it had with the lessees that were guaranteed by Mr. Brady required that Mr. Brady pay the unpaid rents due through October 1, 2009, and that Mr. Brady breached the contracts by not paying the rent in full. Mr. Brady claims that he was relieved of any obligation to pay rent because he was constructively evicted from the premises.

[IGS Realty] has the burden of proving by a preponderance of the evidence that [IGS Realty] had a contract with Mr. Brady for the payment of rent, that [IGS

Realty] did what it was required to do under the contract [,] [t]hat Mr. Brady breached the contract by not doing what he was required to do under the contract, and that [IGS Realty] sustained damages because of Mr. Brady's breach.

<u>In determining whether Mr. Brady breached his guarantee for the lease by not paying the full rent, you must consider whether Mr. Brady was constructively evicted from the premises pursuant to the instructions that I will give you.</u> *IGS Realty I*, Trial Tr. at 407–08.

103.    Despite none of these multiple step questions being asked of the Jury in its three question Jury interrogatory sheets, Sheindlin filed the *Article 52 Petition* falsely asserting that the jury had ruled the personal guarantees were enforceable and falsely claimed Brady's defenses and counterclaims were rejected by the Jury.

104.    At Sheindlin's May 4, 2021 Deposition he admitted the following:

**(p.78)** Q.  Do you see the jury making a finding pertaining to the <u>constructive eviction defense</u> on that sheet?

A.  As I look at the verified answer with counterclaims, on page 24 where it states within parenthesis -- well, under the third affirmative defense within parenthesis it states constructive eviction.  **I do not see** <u>the phrase constructive eviction on the jury's interrogatory</u>.

105.    Sheindlin's confession above that "I do not see the phrase constructive eviction on the jury's interrogatory" proves he was a fraud in his collection action since the instructions expressly said the following. (Exhibit 10):

In determining whether Mr. Brady breached his guarantee for the lease by not paying the full rent, you must consider whether Mr. Brady was constructively evicted from the premises pursuant to the instructions that I will give you.  *IGS Realty I*, Trial Tr. at 407–08.

THE COURT: I neglected to mention one more thing, with respect to the charge, I neglected to mention that I am also going to charge the constructive eviction is a complete defense to the claim for rent.

106.    Sheindlin's confession that he knew there was not even a constructive eviction question of the three-question jury sheet further prove Sheindlin and the landlord Philippe Ifrah lied and committed a criminal act in Sheindlin's collection petition when he stated that the jury rejected Plaintiff's defenses.

107.    There is a huge difference between a defense being rejected by a jury and a mandated defense question not being on the Jury Sheet.  Without the constructive eviction defense being adjudicated against Brady's corporate tenant, there was never any basis for Sheindlin or Philippe Ifrah to believe they had the lawful right to collect on the personal guarantees.

108.    This Court should also know if there were questions that actually pertained to the personal guarantees on the Jury Sheet, Petitioner would have won as a matter of law based on the admissions make by Robert Fass in his closing arguments on June 26, 2015, and based on his other admissions in his other court filings.  This fact is proven below.

109.    It was undisputed that Brady performed due diligence prior to entering into the leases, and Ifrah admits that at the time the leases and personal guarantees were signed, the building's fire alarm complied with relevant law and there were no illegal office spaces in the building.  Ifrah admits repeatedly that they changed the "as is" legal

condition of the building by converting the building to illegal offices, and the objection

sheets prove conclusively that the Department of Buildings would not issue any more

Certificates of Occupancy because the building would not stay compliant with fire safety

laws.

110.   Ifrah further admits that Brady was not able to get any further  valid

Certificate of Occupancies after 2007 because of the landlords illegal actions and

unwillingness to stay compliant with fire safety laws in his illegal now illegal  office

building that he turned the garment preservation building into  after the leases and

personal guarantees were signed.

111.   Ifrah's only argument at trial was  that Brady could have continued to

operate without a valid Certificate of Occupancy, which are totally false statements and

does nothing to mitigate the fact that the "as is" legal condition of the building was

unlawfully changed, which voided the personal guarantees as a matter of law and public

policy.

112.   Ifrah's attorney admitted to all of this in his closing arguments and

throughout the June 2015 trial:

> "So let's begin at the beginning. In 2001" Mr. Ifrah placed an ad in the New
> York Times. He (Brady) goes to the space, checks it out, and puts a deposit
> down a check on one of the spaces. Then speaks with his father who has
> great experience in real estate who tells him this is in the special garment
> district for zoning, so he better check out whether his use is permitted.
>
> So he puts a stop on the check and tells Mr. Ifrah he wants to do his due
> diligence, which he does.  And he checks the whole building from top to

bottom, legal and physical conditions, and concludes that everything is fine. The building's legal, the physical conditions are legal, and everything else is in good and satisfactory condition. So then he writes another check and rents the space. After that in the same year and the following year he rents two other spaces" (R. 882).

He also gets permits to construct meeting halls representing to the Building Department it's on the section that covers meeting halls, section of the regulation. And he gets public assembly permits also for meeting hall use. The last certificate of occupancy that he got expired in 2007."

"There is no doubt at the time after the leases were signed Mr. Ifrah started renting space and he had to pay a lot of fines to do it." (R. 888-889)

"Mr. Ifrah had to pay hundreds and later thousands of dollars in fines as the fines accumulated over time for the office space." (R. 885)

"So after 2007 he didn't have a certificate of occupancy of any sort and not once did they throw him out." (R. 884)

"You know, the fact that somebody does something wrong does not mean that you're hurt." (R. 892)

"He operated fine without the C of O and nothing was ever said." (R. 893)

"Having a Certificate of Occupancy makes no difference" (R. 885)

"So after 2007 he didn't have a certificate of occupancy of any sort and not once did they throw him out." (R. 884)

"The law is not being enforced" (R. 886)

"Nobody cared" (R. 887)

"He said he had a Bible that he had to pull out with the certificate of occupancy, and he said that was necessary to show to the inspector. Guess what, in 2008, 2009, he had nothing in his Bible, so having a C of O makes no difference. Inspections are very cursory, unless they see something

33

dangerous, or somebody makes a complaint then they will go and issue a violation." (R. 885)

"Mr. Ifrah has to pay the fines. No big deal. He's having inspections left and right, nobody's throwing him out. Nobody's throwing out the office tenants. They are just fining Mr. Ifrah." (R. 886)

"Up until a certain time all of them told him what are you worried about this case, the law is not being enforced." (R. 886)

113.    In IGS Realty *Verified Answer*, filed September 29, 2014, <u>IGS Realty admits that Brady conducted due diligence and that the building was compliant with fire safety laws when leases and guarantees were signed</u> (R.62):

4.    Denies the allegations of paragraph 41, 42 and 43, except admits that Brady conducted due diligence.

5.    Denies the allegations of paragraph 45, except admits that the building complied with fire safety laws and that there were no violations relating to office use in the building.

114.    New York law is clear that the personal guarantees were voided by the landlord's actions.  The Appellate Division has held that a personal guarantee of a lease is unenforceable when "the occupancy is illegal and in violation of the certificate of occupancy." *Kaplan v. Synergy, Inc.*, 23 Misc.3d 1123 (Civ. 2009).

115.    A guaranty must be construed "in the strictest manner." *White Rose Food v. Saleh*, 99 NY2d 589, 591 (2003). Guarantor cannot be held responsible for the failure of the principal to perform.  An alteration of the contract to which the guaranty applies will serve to discharge the guarantor's obligation unless the guarantor has consented to the

alteration. See *White Rose Food v Saleh*, 99 NY2d 589 [2003]; *Davimos v Halle*, 35

AD3d 270 [2006.]). "A guarantee will not be enforced where the modification"…

impermissibly increased [guarantor's" risk] without his consent.... *White Rose Food*, 99

NY2d at 591; *Arlona Ltd. Partnership v 8th of Jan. Corp*., 50 AD3d 933, 934 9 (First

Dept 2008) (refusing to enforce guarantee of commercial lease where underlying lease

was modified).

116.    The First Department has held "whether, in circumstances presented, an

obligation to refrain from conduct which results in the loss of a building's certificate of

occupancy should be implied involves factual questions for resolution at trial." *Roli-*

*Blue, Inc. v. 69/70th Street Associates*, 119 A.D.2d 173 (1st Dept. 1986).

117.    Mr. Garland knows Judge Judy Sheindlin's stepson Gregory Sheindlin

clearly and completely admitted through stipulation on May 4,2014 that it was a

fraudulent criminal act when he used the June 26, 2015 Jury interrogatory sheet as the

basis to collect over  $1.7million dollars from Petitioner on a personal guarantee since

he almitted the form never even had any personal guarantee questions on it .

118.    Only through a writ of mandamus will Mr. Garland permit Petitioner to file

a criminal complaint against Gregory Sheindlin and Philippe Ifrah.


**The Filing Injunction Imposed Against Petitioner by District Court Judge Paul**
**Engelmayer Proves "there is no other adequate remedy available to the plaintiff."**

119.     District Court Judge Paul Engelmayer imposed a filing injunction on Brady on September 3, 2020 in _Brady v. IGS_, (19-cv-10142), and _Brady v. Friedlander_, (19-cv-10622) hoping that it would help Sheindlin get away with his crime and prevent Plaintiff from seeking any redress:

> Accordingly, Brady is hereby enjoined against filing new actions in the Southern District of New York that relate in any way to the IGS Lease Agreements, the Personal Guarantees associated therewith, and Brady's businesses' occupation of space in IGS-owned buildings, including any actions concerning the conduct of any attorney, judicial officer, government official, or other third party in relation to the IGS Lease Agreements, or any collateral actions arising from those agreements.

120.     To Justify implementing the filing injunction  Judge Engelmayer blasted Brady with a number of the most egregious false statements created by Judge Kornreich in her unlawful lower Supreme Court July 15, 2014 Decision.

121.     For Mr.Sheindlin's benefit before implementing the September 3, 2020 filing injunction Judge Engelmayer made the false and untenable claim that the jury ruled the personal guarantees were enforceable  and rejected Plaintiff's  Petitioners cont eviction defense even though, as stipulated by Sheindlin on May 4,2021 , question was on the June 26,2015 jury interrogatory sheet.
.

122.     It is certainly an "extraordinary situation" when United States employees hired to be Federal Judges refuse to admit that the June 26, 2015 State Court Jury Sheet said nothing about personal guarantees even after seeing the May 4, 2021 Stipulation where Mr. Sheindlin and his Attorney Robert Sussman stipulated that the document said nothing about personal guarantees. (Exhibit 9):

**(p. 41-42)** MR. SUSSMAN: Hold on.  We both can't speak at the same time.  The gentleman has explained to you exactly what he did.  It's also in the document.  The document speaks for itself.  It says nothing about a personal guarantee.  That's admitted.  We can stipulate to that so we don't have to worry about that.

123.    Only through a writ of mandamus will the stipulation above be

acknowledged by Mr. Garland as the full and clear confession that it was.


**PETITIONER REPEATEDLY SOUGHT RELIEF FROM RESPONDENT MERRICK GARLAND PRIOR TO FILING THIS PETITION**

124.    Below is a sample of one of the multiple letters Petitioner sent Mr. Garland

prior to filing this Petition:

October 25, 2022

Merrick B. Garland, Attorney General
950 Pennsylvania Avenue,
NW Washington, D.C. 20530-0001

Dear. Mr. Garland:

You have never replied to a single one of the multiple letters that I have sent you since July 2022 where I am shown to be repeatedly pleading for justice for two proven crimes committed against me by politically connected billionaires or the step child of a politically connected multi billionaire.

The first crime that you have continued to ignore completely is the proven and admitted fact that Judge Judy Sheindlin's stepson Gregory Sheindlin stole over $1.7 million dollars from me and forced the sale of my family business Studio 450 and livelihood by fraudulently representing through "implication only" that there was a jury finding on a June 26, 2015 Jury interrogatory sheet the personal guarantees I signed with IGS Realty were enforceable when he knew, and admitted at his May 4, 2021 deposition, that the claim was a total lie.

37

As you know by listening to his May 4, 2021 Deposition (found on YouTube), Mr. Sheindlin admitted this fact at his May 4, 2021 deposition and also that my defenses and counterclaims were not even on the three question jury interrogatory sheet, although in the financial judgment, Sheindlin wrote he also said those items were rejected by the jury on the court filings he wrote to steal over $1.7 million dollars from me and my wife on September 5, 2018.

As you know, Sheindlin's deposition testimony also shows Sheindlin being caught in a fraud scheme where at the same exact time he was fraudulently representing in 2018 that there was a Jury finding that the personal guarantees were enforceable the landlords other attorney Robert Fass, who ran the 2015 trial admitted through court filings in 2018 that the three questions on the June 26, 2015 jury sheet, said nothing about personal guarantees. All these facts were already proven too you when you heard these facts admitted from Sheindlin's own mouth at his May 4, 2021 deposition.

You have already listened to these depositions and yet you remain silent. Why is that? I know why it is. It's because you are in collusion to help the step son of multi billionaire Judge Judy Sheindlin get away with his crime. Also, it is because you have no problem rationalizing being totally corrupt, cruel and prejudice against a white Christian who you know is telling the truth about the criminal destruction caused by Judge Judy's stepson Gregory Sheindlin.

The second crime that you are still completely ignoring is the fact that you know that politically connected billionaire developers and their politically connected lawyers used their control over the New York State courts to steal the $70-90 million in development rights that everyone knows were contractually appurtenant to my former 12th Floor and Roof Unit Apartment in a commercial co-op named 450 West 31st Street Owners Corp pursuant to my offering plan contract and certain words used in a higher Appellate Division First Department February 11, 2010 decision.

You have already seen that it is a proven fact that a lower court unlawfully rewrote a contract and higher court decision in an attempt to void what these documents said on their face. The fact that this unlawful act took place is shown again below:

38

The Seventh Paragraph Footnote to the Schedule of Units in the Amended 1980 Offering Plan from 450 West 31st Street Owners Corp reads as follows:

> "Seventh Paragraph - NEW- The 12th Floor and Roof Unit Shall have, in addition to the utilization of the roof, the right to construct or extend structures on the roof or above the same, to the extent that may from time to time be permitted under applicable law."

The Appellate Division, First Department, February 11, 2010 Decision ended with the following words:

> "Pursuant to paragraph 7, that plaintiffs have the right to construct or extend structures upon the roof or above the same to the extent that may from time to time be permitted under applicable law, unanimously affirmed, without costs."

Justice Kornreich's Supreme Court July 15, 2014 Decision rewrites the above to read:

> "It has already been adjudged that while the owners of the unit may have the right to erect additional structures on the roof, that right does not entitle them to use any floor area in doing so (Prior Action, decision and order, Mar 13, 2009 at *2 &amp; *4-*5 ["Nothing herein shall be construed as holding that plaintiffs have the right to use all or any part of the TDRs in connection with such construction or extension"] Brady v 450 W. 31st St. Owner's Corp., 70 AD3d 469, 470 [1st Dept 2010] [holding that the offering plan "reserves for plaintiffs the right.... to construct or extend structures on the roof that may be built without the use of the building&#39;s development rights."]"

You also know that the same Judge that unlawfully rewrote a contract and higher court decision forced me to pay over $500,000.00 in legal fees to the lawyers that used their influence over the courts to have Judge Kornreich conduct this criminal act.

Now at this point you need to stop monkeying around and admit the truth that my contract and higher Appellate Division, First Department decision does govern over the lower court decision and that it is unlawful and unconstitutional to ignore

these documents to help politically connected billionaires and their law firms get away with the crime.

Again, please stop your prejudice and corruption and address these two crimes that are not going away, no matter how much you would like to collude in helping politically connected billionaires get away with their crimes.

Please call me at 201-923-5511 or email me at bradyny@gmail.com to dress these matters.

Sincerely,
James H. Brady

125.    Neither Mr. Garland nor anyone in the Department of Justice responded to this letter nor any of the other letters Petitioner has sent to the Department of Justice over the past 12 years.

## ADDITIONAL REASONS WHY THE EXTRAORDINARY REMEDY OF A WRIT OF MANDAMUS MUST BE GRANTED

126.    A writ of mandamus "compels an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus is 'drastic'; it is available only in 'extraordinary situations.'" *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005).  Only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff," *Thomas v. Holder*, 750 F.3d 899, 903 (D.C. Cir. 2014), is mandamus relief granted.

127.    If there were ever circumstances  where a Court must issue a writ of mandamus it is certainly here , based on the two horrific unlawful fraud schemes  that

Petitioner has proven took place that wiped-out his life savings of over $2.3 million

dollars on September 5, 2018.

128.    Petitioner will be 60 years old this March and over fifteen years of his life

has been wasted because of the dishonesty of certain judges creating conflict where none

existed.  The evidence below shows that over 15 years ago, all the parties' Attorneys

admitted the air rights were appurtenant to Petitioner's then 12th Floor and Roof Unit

apartment.

129.    Back on March 18, 2008 Franklin Snitow, Extell's litigation counsel, stated

in his "Affirmation for Defendants Extell Dev. Corp.", et al., March 18, 2008, p. 2 ¶ 3:

> The intent is evidenced in the decision of the original owner of the 12th floor unit
> to build an 1,800 square foot penthouse on the roof."  **Thus, the intent of the
> Amendment is clear on its face.**" (R: 310).

130.    Similarly, Stanley Kaufman, litigation attorney for the Co-op, stated in

"Defendant's Reply Memorandum of Law," April 14, 2008, p.5:

> **The clear intent** was to grant the 12th floor unit owner some latitude in adding
> **additional space, or structures**, so long as in doing so, the owner did not violate
> the local building code, **zoning regulations, or other ordinances**.

131.    And further:

> The clear and logical meaning of the added footnote number 7 of the Second
> Amendment was to grant 12th floor owner some latitude *in adding additional
> structures*, so long as in doing so, the owner did not endanger anyone else's health
> or safety or violate the building Code, *zoning laws or any other laws or
> ordinances*." (*Ibid*. p. 28).

132.     Stanley Kaufman, wrote in his "Affirmation in Opposition to Plaintiff's

Motion for Reargument":

> In the early 1980s, the sponsor's principal, Arthur Green, who at the time
> occupied the 12th floor, constructed a penthouse addition (an addition what was
> completely illegal at the time, but legalized years later by the co-op [R 759]). In
> fact, the Bradys alleged in their Amended Complaint that at a time when the
> Building had no available development rights, Arthur Green "exercised the rights
> of the 12th floor to build by constructing a 1,800 square foot penthouse on the
> roof…" (R67 at par. 23, 24).  As evidenced by the sponsor's own conduct,
> paragraph 7 of the Second Amendment was probably designed to give the then
> owner of the 12th floor (which happened to be the sponsor's principal) the right
> to build additional space for himself, which he did  not to give the owner of the
> 12th floor unit the benefit of receiving enormously valuable development rights
> resulting many years later from some then completely unforeseeable future
> rezoning.

## Joseph Augustine, Attorney for the Co-op, Also Agreed the Contract Gave Petitioner the Right to Utilize the Premise's Development Rights at the March 18, 2014 Oral Arguments

> THE COURT: -- which means you're going to have to commit the coop board to
> tell me:  What does Paragraph 7 mean?

> MR. AUGUSTINE:  It means he has the right to build structures once he submits
> a plan. And if those structures are permissible by law, such as Department of
> Buildings, and those plans do not pose a structural risk or any other risk to the
> building in order to -- for him to service the space that he has there, then the board
> would be inclined to approve it.

> THE COURT: But what I'm saying is he does have that right, though, under
> paragraph 7.

> MR. AUGUSTINE:  He has - - our understanding he has a right to build
> structures. That's what it says.  No one disagrees.  The courts all said the same
> thing, he has a right to build structures.

133.    These admissions prove there was never any real dispute that the air rights belonged to Petitioner's former co-op unit until Judge Kornreich rewrote the contract and higher court decision.

134.    Through a writ of mandamus, Mr. Garland must be forced to admit what was admitted 15 years ago by Mr. Snitow and Mr. Kaufman.

135.    Through a writ of mandamus, Mr. Garland must be forced to admit what was admitted by Mr. Augustine 9 years ago.

136.    Through a writ of mandamus, Mr. Garland must admit what was admitted through Gregory Sheindlin and his attorney almost two years ago.

137.    Gregory Sheindlin and his attorney Michael Sussman admitted under oath and by stipulation at Mr. Sheindlin's May 4, 2021 deposition in the case _Gregory Sheindlin v. James H. Brady_, 21-cv-1124 (LJL)(Docket No. 73), that the personal guarantees were not ever even part of the jury verdict questions:

> **(p. 41-42)** MR. SUSSMAN: Hold on.  We both can't speak at the same time.  The gentleman has explained to you exactly what he did.  It's also in the document.  The document speaks for itself.  It says nothing about a personal guarantee.  That's admitted.  We can stipulate to that so we don't have to worry about that.

138.    It is an extraordinary situation when the nation's top law enforcement official sits silent and won't even tell the truth when the Attorneys for the litigants in the air rights cases admitted as long as 15 years ago that Petitioner was correct that the air rights were contractually appurtenant to his then 12th Floor and Roof Unit apartment.

43

139.    One quarter of Petitioner's life was wasted completely unnecessarily because Mr. Garland, like all his predecessors, have always been more interested in helping rich and powerful politically connected people to get away with their crimes than performing their oath of office.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Petitioner respectfully asks this Court to grant the following relief:

(A) Issuance of a writ of mandamus directing Respondent Merrick D. Garland, United State Attorney General, to state that under United States and New York Law the Offering plan contract and higher final Appellate Court February 11, 2010 decision govern over the lower final lower Supreme Court July 15, 2014 decision.

(B) through a writ of mandamus Mr. Garland must permit Petitioner to file a criminal complaint and  declare that pursuant to Gregory Sheindlin's May 4, 2021 stipulation it is true that Gregory Sheindlin confessed that he and Philippe Ifrah stole over $1.7 million by fraudulently misrepresenting through "implication" that the three questions on a state Court June 26, 2015 jury interrogatory sheet were findings the

personal guarantees that Brady signed with IGS Realty were enforceable and that the jury findings were a rejection of Brady's defenses and counterclaims;

   (i)   Order Mr. Garland to order the return of the over $500,000 Petitioner was forced to pay on September 5, 2018 to the attorneys who helped steal his co-op's development rights;

   (ii)   Order that Mr. Garland order the return of the over $1.7 million Petitioner was forced to pay IGS Realty on September 5, 2018 as a result of Gregory Sheindlin's and Mr Ifrah's fraud scheme;

(C) And any other relief that this Court deems just and proper.


January 24, 2023                                    Respectfully submitted,

                                                   James H. Brady
                                                   2422 Apple Ridge Circle
                                                   Manasquan, NJ  08736
                                                   201-923-5511
                                                   bradyny@gmail.com