# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALVIN L. BRAGG, JR., in his official capacity as District Attorney for New York County,<br><br>*Plaintiff*,<br><br>v.<br><br>JIM JORDAN, in his official capacity as Chairman of the Committee on the Judiciary, et al.,<br><br>*Defendants*. | Case No. 23-cv-3032 |

**REPLY IN SUPPORT OF THE DISTRICT ATTORNEY'S MOTION
FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## CONTENTS

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    The Speech or Debate Clause Does Not Shield the Committee's Unlawful Subpoena From Scrutiny. ................................................................................................. 2

    II.    This Action Can and Should Proceed Whether or Not the Congressional Defendants Are Required Parties Under Rule 19. ........................................................... 6

    III.    *Mazars* Supplies the Proper Framework For Deciding This Case. ................................. 8

    IV.    Plaintiff Has Established a Likelihood of Irreparable Harm. ........................................... 9

**Cases**

*Bare v. Cruz*,
  2012 WL 1138591 (E.D. Pa. Apr. 2, 2012) .............................................................................10

*Bean LLC v. John Doe Bank*,
  291 F. Supp. 3d 34 (D.D.C. 2018) ..........................................................................................8

*Bond v. United States*,
  564 U.S. 211 (2011) ................................................................................................................8

*CP Solutions PTE, Ltd. v. Gen. Elec. Co.*,
  553 F.3d 156 (2d Cir. 2009) .................................................................................................7, 8

*Eastland v. U.S. Servicemen's Fund*,
  421 U.S. 491 (1975) .......................................................................................................2, 3, 7

*Flagler v. Trainor*,
  663 F.3d 543 (2d Cir. 2011) ....................................................................................................9

*Harrison v. New York*,
  2021 WL 1176146 (E.D.N.Y. Mar. 29, 2021) .........................................................................9

*Imbler v. Pachtman*,
  424 U.S. 409 (1976) ................................................................................................................9

*Kilbourn v. Thompson*,
  103 U.S. 168 (1881) ................................................................................................................3

*McPhaul v. United States*,
  364 U.S. 372 (1960) .............................................................................................................3, 5

*People v. Boss*,
  261 A.D.2d 1 (1st Dep't 1999) ................................................................................................9

*People v. Cahill*,
  2 N.Y.3d 14 (2003) .................................................................................................................9

*Pillsbury Co. v. Fed. Trade Comm'n*,
  354 F.2d 952 (5th Cir. 1966) ...................................................................................................9

*Plaut v. Spendthrift Farm, Inc.*,
  514 U.S. 211 (1995) ................................................................................................................4

*Tobin v. United States*,
  306 F.2d 270 (D.C. Cir. 1962) ................................................................................................3

*Trump v. Deutsche Bank AG*,
  943 F.3d 627 (2d Cir. 2019) ....................................................................................................8

*Trump v. Mazars USA LLP*,
  140 S. Ct. 2019 (2020) .................................................................................... 2, 6, 8, 9

*Trump v. Mazars USA, LLP*,
  39 F.4th 774 (D.C. Cir. 2022) ................................................................................ 6, 9

*United States v. Sutton*,
  2022 WL 3340046 (D.D.C. Aug. 12, 2022) ............................................................. 10

*United States v. U.S. House of Reps.*,
  556 F. Supp. 150 (D.D.C. 1983) ................................................................................ 3

*Watkins v. United States*,
  354 U.S. 178 (1957) ............................................................................................. 5, 7

*Younger v. Harris*,
  401 U.S. 37 (1971) .................................................................................................. 10

**Statutes**

2 U.S.C. § 194 .................................................................................................................. 7

**Other Authorities**

H.R. 2553 ......................................................................................................................... 5

H.R. 2581 ......................................................................................................................... 1

H.R. 2582 ......................................................................................................................... 5

**Rules**

Fed. R. Civ. P. 19 ..................................................................................................... 2, 6, 7

**Constitutional Provisions**

U.S. Const., Art. I, sec. 6, cl. 1 ................................................................................ 1, 2, 5

U.S. Const., Art. III ....................................................................................................... 2, 5

## INTRODUCTION

The subpoena to Mark Pomerantz is an unfounded and unconstitutional attempt to disrupt an ongoing state criminal prosecution that violates basic principles of federalism and exceeds Congress's powers under Article I. The subpoena is one front in a campaign of harassment and intimidation that Chairman Jordan and the Judiciary Committee ("Congressional Defendants") have directed at the District Attorney—continuing this week with a "field hearing" in New York City staged ostensibly to discuss local crime statistics, Exs. B-62, B-62A, B-63, B-66, and the filing of the "ALVIN Act" to prohibit federal funding of the Manhattan District Attorney's office, retroactive to the start of Alvin L. Bragg Jr.'s tenure. *See* Ex. B-70 (H.R. 2581 (Apr. 13, 2023)); B-65.[1] Further confirming that their purpose is punitive and judicial, not legislative, the Congressional Defendants refused the District Attorney's request to adjourn the subpoena's April 20, 2023, return date to allow the Court reasonable time to address the significant constitutional questions at stake—and the parties to litigate an appeal if necessary. *See* Ex. B-64. They offered no explanation for why Mr. Pomerantz's testimony is so urgently needed—particularly where it is the start of a Congress and authority for this subpoena continues through 2024.

The Congressional Defendants respond that this Court has no power to address their unlawful subpoena because the Speech or Debate Clause provides "absolute" immunity even if they "acted unlawfully or with an unworthy purpose." Opp. 7. If credited, this argument would mean there is no limit on Congress's subpoena power: the Chairman could subpoena the presiding judge in the pending state prosecution of Mr. Trump, or even this Court, to explain and account for judicial rulings. And the Congressional Defendants argue that their immunity effectively

---

[1] Citations to "Ex." are to exhibits attached to the First Declaration of Theodore J. Boutrous, Jr. (Dkt. 12). Citations to "Ex. B-" are to exhibit attached to the Second Declaration of Theodore J. Boutrous, Jr.

extends to Mr. Pomerantz because the District Attorney cannot maintain suit in their absence under Federal Rule 19.  Neither argument is correct.  The heightened standard of review the Supreme Court imposed in *Trump v. Mazars USA LLP*, 140 S. Ct. 2019 (2020), for subpoenas implicating separation of powers principles would be little more than a dead letter if Congress, at its own whim, could invoke Speech or Debate immunity to evade all judicial review.

## ARGUMENT

**I.   The Speech or Debate Clause Does Not Shield the Committee's Unlawful Subpoena From Scrutiny.**

The Congressional Defendants assert that the "absolute immunity" afforded by the Speech or Debate Clause permits them to tread on New York's sovereign authority while evading judicial review.  Opp. 5.  But Speech or Debate immunity presupposes that Congress's "actions . . . fall within the sphere of legitimate legislative activity."  *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 (1975).  Subpoenas that invade the prerogatives of other branches of government not only fail to trigger this immunity; they require the Court to evaluate the subpoena under the heightened standard set forth in *Mazars*, 140 S. Ct. 2019.  But even assuming the Congressional Defendants may cloak themselves in the protections of the Speech or Debate Clause, that defense does not disable the Court from granting relief.  That is because an injunction and TRO would operate directly on Mr. Pomerantz, who unquestionably enjoys no such immunity.  The Congressional Defendants thus have a choice:  they can participate and be heard—as Congress has done in many previous subpoena actions—or they can stand on their immunity defense and watch from the sidelines as this proceeding unfolds without them.  But they cannot invoke the Speech or Debate Clause as a complete barrier to Article III judicial review of this congressional incursion into New York sovereignty.

The Supreme Court has repeatedly recognized that Speech or Debate immunity does not completely insulate congressional subpoenas from judicial review. Start with *Eastland*, a case that arose in the same procedural posture as this one. A Senate committee served a subpoena on a bank for respondent's bank records. Arguing that the demand would violate its First Amendment right to free association by revealing the names of its financial supporters, respondent sued the bank and ten senators to enjoin enforcement of the subpoena. 421 U.S. at 495. The Supreme Court concluded that the district court "properly entertained" the action to enjoin the subpoena because respondent—like the District Attorney here—lacked any other mechanism for enforcing its rights. *Id.* at 501 n.14. Respondent could not "resist and thereby test the subpoena" in a contempt proceeding because the Senate had directed its document demand to a third party—the bank. *Id.* The Court therefore permitted respondent to maintain its claim for injunctive relief to allow for a "judicial inquiry" into whether "a legitimate legislative purpose is present." *Id.*[2]

At a minimum, the District Attorney is entitled to the same inquiry the Supreme Court conducted in *Eastland*: whether the subpoena fits within "the sphere of legitimate legislative activity." 421 U.S. at 501. Even the Congressional Defendants acknowledge that Speech or Debate immunity does not shield a subpoena that is "plainly incompetent or irrelevant to any lawful purpose." Opp. 15 (quoting *McPhaul v. United States*, 364 U.S. 372, 381 (1960)). The Pomerantz subpoena fails to clear that low hurdle because the Committee's subpoena serves a "clearly judicial" rather than a legislative function. *Kilbourn v. Thompson*, 103 U.S. 168, 192 (1881). The Committee purports to be "conducting oversight" of the District Attorney's criminal

---

[2] *Eastland* also fully disposes of the Congressional Defendants' argument that the Court should avoid deciding any unnecessary constitutional issues on this motion because the subpoena can be challenged in a possible future contempt prosecution. *See* Opp. 14 (citing *United States v. U.S. House of Reps.*, 556 F. Supp. 150 (D.D.C. 1983)). But it is inappropriate to relegate constitutional questions reflecting a "contest . . . between different governmental units" to a criminal contempt proceeding. *Tobin v. United States*, 306 F.2d 270, 276 (D.C. Cir. 1962). Moreover, like the respondent in *Eastland*, the D.A. will have no such opportunity because the subpoena was not directed to him.

case against Mr. Trump, Ex. 1 (Dkt. No. 12-1), and intends to question Mr. Pomerantz "all about his work investigating the former President," Opp. 2. But ensuring that this ongoing prosecution is not "politically motivated" is the bailiwick of the New York courts, Ex. 1, not the U.S. Congress.

The Congressional Defendants argue that they have a valid legislative purpose because they are considering two bills designed to protect former presidents from state prosecutions—both conveniently thought up within days of the District Attorney's complaint. But the mere fact that this legislation is pending does not necessitate the conclusion that the subpoena serves a legislative rather than a judicial purpose. In *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995), the Supreme Court invalidated a federal statute that reinstated certain securities claims dismissed on statute of limitations grounds, holding that Congress had invaded the "judicial" power by "retroactively commanding the federal courts to reopen final judgments," *id.* at 215, 219. Just as a federal *statute* may qualify as "judicial" if it usurps the power of the federal courts, so too may a congressional *subpoena* if it usurps judicial oversight of an ongoing criminal case.

The Congressional Defendants disclaim that their purpose is to "interfere with" the District Attorney's criminal case. Opp. 16. But their many public proclamations, *see, e.g.*, Compl. (Dkt. No. 1) ¶¶ 2, 7-8, 89-91, 114-16, and their *own brief* concede that their purpose is to corroborate "widespread speculation" that the indictment of Mr. Trump was "politically motivated" by questioning Mr. Pomerantz about his investigation. Opp. 9.[3] And the bill that supposedly substantiates their legislative purpose—allowing removal of state criminal cases against former presidents to federal court—would apply to any cases pending at the time of enactment. Dkt. No.

---

[3] Indeed, the Committee's investigation appears to have been kickstarted as early as March 18, 2023, when Speaker Kevin McCarthy responded within hours to (incorrect) rumors of Mr. Trump's arrest by calling the still-pending investigation "an outrageous abuse of power by a radical DA" and "directing relevant committees to immediately investigate." Ex. B-72.

4

32-33 (H.R. 2553). This Court therefore need look no further than the Congressional Record to conclude the Committee's purpose is to disrupt the case against Mr. Trump.

The Congressional Defendants argue that Congress is also considering legislation to restrict state prosecutors from using federal funds to investigate a former president. Dkt. No. 32-22 (H.R. 2582). But even assuming that such regulation embodies a valid legislative purpose, the subpoena to Mr. Pomerantz is "plainly incompetent or irrelevant" to that purpose. *McPhaul*, 364 U.S. at 381. Mr. Pomerantz attested in a sworn declaration that he lacks "any personal knowledge of the District Attorney's Office's use of federal forfeiture funds, including the use of any such funds during my tenure at the Office." Dkt. No. 31 ¶ 4. The Speech or Debate Clause provides no cover for investigations with a "mere semblance of legislative purpose," nor does it shield investigations conducted for "the personal aggrandizement of the investigators," *Watkins v. United States*, 354 U.S. 178, 187, 198 (1957)—including the Congressional Defendants, who have turned this inquisition into the District Attorney's prosecution into a potent fundraising tool, Ex. B-67.

Nor does Speech or Debate immunity extend to congressional subpoenas that encroach on other branches of government—here, New York's executive and judicial departments. The Congressional Defendants argue that the Speech or Debate Clause "preserves the independence and integrity of the legislative process and reinforces the separation of powers." Opp. 5 (cleaned up). But here the Congressional Defendants are using the clause on offense rather than defense, claiming that they may insert themselves into a New York criminal case while evading Article III judicial review. Speech or Debate immunity is not license for Congress to disregard the very separation of powers the clause aims to secure.

The Supreme Court's decision in *Mazars* confirms precisely this point. In that case, President Trump sued both his accounting firm and U.S. Rep. Elijah Cummings, the chairman of

the House Oversight Committee, to enjoin a congressional subpoena for his personal financial information. Ex. B-69. The parties stipulated that the Committee would intervene for the purpose of substituting Mr. Cummings as a defendant. Ex. B-68. Notwithstanding that the Committee was sued as a defendant, the Supreme Court saw no Speech or Debate obstacle to imposing a new, heightened standard of review for congressional subpoenas that implicate substantial separation of powers concerns. *See Mazars*, 140 S. Ct. at 2034-36. The *Mazars* standard, indeed, would amount to nothing more than an empty vessel if it applied only when Congress consented to judicial review. Opp. 5. Neither the Supreme Court nor the D.C. Circuit on remand countenanced any such result. *See Trump v. Mazars USA, LLP* ("*Mazars II*"), 39 F.4th 774, 787 (D.C. Cir. 2022) (applying rigorous scrutiny to House subpoenas for former president's records).

**II.    This Action Can and Should Proceed Whether or Not the Congressional Defendants Are Required Parties Under Rule 19.**

Contrary to the Congressional Defendants' novel contention, they are not "required" parties under Rule 19, and even if they were and could not be joined, this action should still "proceed among the existing parties" "in equity and good conscience." Fed. R. Civ. P. 19.

**1.  *Not Required Parties Under Rule 19(a)*.** The Congressional Defendants claim they are required parties under the first prong of Rule 19(a)(1)(B) only—*i.e.*, that their absence "may as a practical matter impair or impede" their "ability to protect" "an interest" they have "relating to the subject of the action." *Id.* This argument has two problems. First, the Congressional Defendants lack any legitimate interest in enforcing an unconstitutional subpoena. See D.A. Br. 6-13.

Second, and more importantly, allowing this action to proceed will not "impair or impede" their "ability to protect" that putative interest. Fed. R. Civ. P. 19(a)(1)(B)(i). Courts have long evaluated the scope of Congress's subpoena power in criminal contempt proceedings, in which Congress does not participate as a party. If a witness fails to comply with a congressional

6

subpoena, the Speaker of the House "shall . . . certify" the case to "the appropriate United States Attorney," who may then bring a criminal case without any appearance by Congress. 2 U.S.C. § 194. Congress likewise was not a party to *Watkins v. United States*, 354 U.S. 178 (1957)—one of the Court's seminal subpoena decisions. Needless to say, Congress suffered no impairment to its interests in those cases. In any event, the Congressional Defendants have already fully briefed this motion—and reiterated the same positions aired in nearly a half dozen letters already in the record.

      **2. *This Action Should Proceed In Equity And Good Conscience***. Regardless of whether the Congressional Defendants are required parties, this action should proceed "in equity and good conscience" between the remaining parties under Rule 19(b) for three reasons.

      *First*, a "judgment rendered" in the Congressional Defendants' "absence would be adequate." Fed. R. Civ. P. 19(b)(3). Plaintiff seeks injunctive relief to prevent Mr. Pomerantz from testifying before Congress pursuant to an unconstitutional subpoena. Even if an injunction runs against Mr. Pomerantz and no one else, the injunction will be adequate.

      *Second*, Plaintiff will lack an "adequate remedy if the action [is] dismissed for nonjoinder." Fed. R. Civ. P. 19(b)(4). If the validity of the subpoena is not adjudicated here and Mr. Pomerantz testifies, the District Attorney will suffer irreparable harm without any opportunity for judicial review. *See Eastland*, 421 U.S. at 501 n.14. And Mr. Pomerantz will lack any vehicle to avoid the "impossible position" in which the subpoena places him—facing potential federal contempt charges if he defies the subpoena and potential New York state charges if he complies. Pomerantz Decl. ¶ 6 (Dkt. No. 31). As the Congressional Defendants' own case recognizes, Rule 19(b)'s "adequacy" factor "refers to the public stake in settling disputes by wholes, wherever possible." *CP Solutions PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 160 (2d Cir. 2009). Given the "procedural

posture in which this case comes to" the Court, "[i]t would make little sense" to require the parties to "start over" in a separate proceeding among the same parties over the very same subpoena. *Id.*

*Third*, the Congressional Defendants will not be prejudiced if this Court were to render judgment without them. They have thoroughly participated in this case. And any prejudice they claim to face if dismissed on immunity grounds would be obviated if they either intervened back into the case, *see Trump v. Deutsche Bank AG*, 943 F.3d 627, 633 (2d Cir. 2019); *Bean LLC v. John Doe Bank*, 291 F. Supp. 3d 34 (D.D.C. 2018), or sought leave to file as amici, *see United States v. Bannon*, 21-cr-670 (D.D.C.), Dkt. Nos. 53, 65, 77—as Congress has done before.

**III.     *Mazars* Supplies the Proper Framework For Deciding This Case.**

The Congressional Defendants are wrong that the *Mazars* framework applies only to "congressional subpoenas for the President's information." Opp. 15. In fact, it applies when the subpoena initiates a "clash between rival branches of government." *Mazars*, 140 S. Ct. at 2034. In *Mazars*, the inter-branch dispute raised "significant separation of powers issues." *Id.* The federalism concerns raised by the subpoena here are at least as weighty, and thus require the same "careful analysis" into the Congressional Defendants' asserted interest and appropriate respect for the District Attorney's sovereign law enforcement powers. *Id.* at 2035; *see also, e.g.*, *Bond v. United States*, 564 U.S. 211, 223-24 (2011) (recognizing importance of both separation of powers and federalism in protecting individual liberty).

Even if *Mazars* governed only subpoenas seeking a current or former president's information, that condition is satisfied. The Congressional Defendants have called Mr. Pomerantz to testify about his investigation into *Mr. Trump's financial records*. Ex. 1 at 2; *see* Exs. 36, 36-A, 58. It makes no difference that the Committee is led by Mr. Trump's allies rather than his rivals. *Mazars* applies any time Congress seeks a former president's information and sets up a

8

clash between "rival branches of government." *Mazars*, 140 S. Ct. at 2034-35; *see also Mazars II*, 39 F.4th at 787 (applying framework on remand to subpoenas for a *former* president's records).

### IV. Plaintiff Has Established a Likelihood of Irreparable Harm.

The Congressional Defendants mistake the nature of the irreparable harm caused by their subpoena. Opp. 23. Interrogating a former prosecutor about the "decision-making process" pertaining to an ongoing criminal prosecution and investigation necessarily creates irreparable harm. Opp. 9. It risks creating extra-judicial evidence and prejudging legal issues—including objections based on political motivation or the sufficiency of the evidence—that will be raised and should be decided by a New York judge.[4] It potentially creates prejudicial pretrial publicity that would, at minimum, burden the jury-selection process. *See People v. Cahill*, 2 N.Y.3d 14, 40 (2003); *People v. Boss*, 261 A.D.2d 1 (1st Dep't 1999).

And it risks chilling prosecutorial decisions about that case and future proceedings. That is why prosecutors are absolutely immune from civil suit: to ensure the "efficient, and just, performance of the prosecutorial function" is not "chilled." *Harrison v. New York*, 2021 WL 1176146, at *4 (E.D.N.Y. Mar. 29, 2021). The law thus strives to protect the prosecutor's ability to exercise "the independence of judgment required by his public trust." *Flagler v. Trainor*, 663 F.3d 543, 546 (2d Cir. 2011); *see also Imbler v. Pachtman*, 424 U.S. 409, 423 n.20 (1976); *Pillsbury Co. v. Fed. Trade Comm'n*, 354 F.2d 952, 964-65 (5th Cir. 1966). Whether or not Mr. Pomerantz's testimony is disclosed publicly, then, the interrogation causes irreparable harm.

In any event, the Committee offers no assurances that Mr. Pomerantz's testimony will remain confidential. In fact, the Committee's rules leave disclosure to the Committee's discretion,

---

[4] The judge presiding over the pending criminal matter has entered a pretrial briefing schedule that will conclude in September and intends to issue a decision by December 2023. Ex. B-71, at 22-23, 29.

all but ensuring anything Mr. Pomerantz says will become public. *See* Dkt. No. 32-21 at 3. Indeed, the very point of the deposition is to make information public so that the Committee can "expose this so that in two years, the American people . . . can get this right." Dkt. Nos. 12-21, 12-22.

The Committee Rules also belie the argument that secret, privileged materials will be safe from disclosure because Mr. Pomerantz "would retain the ability to decline to answer or assert an applicable privilege." Opp. 19, 23. House regulations prevent the District Attorney's Office (the actual privilege holder here) from participating in the deposition and preserving privileges. Dkt. No. 32-21, at 2-3. Similarly, the House regulations allow Chairman Jordan himself to overrule privilege objections and compel Mr. Pomerantz to answer. But Chairman Jordan has already decided: He has ruled that "all" privileges District Attorney Bragg could invoke are "waived" by virtue of Mr. Pomerantz's book. Opp. 22. And that ruling is unappealable. Pomerantz Decl. ¶ 6.[5]

The Congressional Defendants also ignore the record in summarily dismissing the harm to New York's dignitary interests. The record confirms the purpose of the subpoena is to advance a plan to intimidate, harass, retaliate, and hold "accountable" District Attorney Bragg for enforcing New York's criminal law against a then-New Yorker, Mr. Trump. *See* D.A. Br. 6-13. The Congressional Defendants want the District Attorney—an official endowed with the sovereign authority of the State of New York by its laws and its people—to bend the knee and to "explain to us exactly what he is doing," Ex. 52 at 6:26-8:18. That violates the Constitution's strict policy of "no interference" with state officers "charged with the duty of prosecuting offenders against the laws of the State," *Younger v. Harris*, 401 U.S. 37, 45 (1971). And that violation is irreparable.

---

[5] The Congressional Defendants argue that the District Attorney will suffer no irreparable harm if Mr. Pomerantz reveals privileged discussions because prosecutors have no client and are not protected by the attorney-client privilege. Opp. 19-20. Courts have uniformly rejected that staggering assertion. *See Bare v. Cruz*, 2012 WL 1138591, at *4 (E.D. Pa. Apr. 2, 2012); *United States v. Sutton*, 2022 WL 3340046, at *3 (D.D.C. Aug. 12, 2022).

Dated: April 18, 2023

Respectfully submitted,

GIBSON DUNN & CRUTCHER LLP

*/s/ Theodore J. Boutrous, Jr.*
Theodore J. Boutrous, Jr.
333 South Grand Ave.,
Los Angeles, California 90071
Tel: (213) 229-7804
tboutrous@gibsondunn.com

Mylan L. Denerstein
Lee R. Crain
200 Park Avenue
New York, New York 10166
Tel: (212) 351-3850
mdenerstein@gibsondunn.com
lcrain@gibsondunn.com

Katherine Moran Meeks (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 955-8258
kmeeks@gibsondunn.com

NEW YORK COUNTY DISTRICT ATTORNEY'S OFFICE

Leslie Dubeck
General Counsel to the New York County District Attorney
One Hogan Place
New York, New York 10013
(212) 335-9000
Dubeckl@dany.nyc.gov

*Counsel for Plaintiff Alvin L. Bragg, Jr.*