White House calls logs show Mr. Trump reached out on the morning of Jan. 6 to Mr. Jordan, who had been organizing objections to Mr. Biden's election on the House floor, and spoke with him for 10 minutes.

Later that day, with the Capitol under siege, Representative Liz Cheney, Republican of Wyoming, angrily singled out Mr. Jordan for blame amid the mayhem.

In an interview, Mr. Jordan defended his actions.

"The terrible things that happened that day didn't change the fact that several states — the best example being Pennsylvania — changed their laws in an unconstitutional fashion," Mr. Jordan says. "I actually felt like we weren't doing our duty if we didn't object."

The House Jan. 6 committee issued a subpoena to Mr. Jordan, which he resisted, creating a precedent that has complicated his efforts to compel Mr. Bragg and other would-be witnesses to cooperate with his panel now.



In Congress, Mr. Jordan quickly made a name for himself as a conservative firebrand, but not a legislative powerhouse. Erin Schaff/The New York Times

Five days after the attack on the Capitol, Mr. Jordan and his family attended a private ceremony at the White House. The National Guard was still posted at the Capitol, a seven-foot fence had been installed around its perimeter, and lawmakers were working on a second impeachment of Mr. Trump.

But as Mr. Jordan's mother and mother-in-law posed for a photo with Ivanka Trump, Mr. Jordan made an emotional speech extolling Mr. Trump.

"No president in my lifetime has done more of what they said they would do," he said.

Then Mr. Trump put the Presidential Medal of Freedom — the highest civilian honor an American can receive — around Mr. Jordan's neck.

Karoun Demirjian contributed reporting.

# EXHIBIT 68

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DONALD J. TRUMP; THE TRUMP ORGANIZATION, INC.; TRUMP ORGANIZATION LLC; THE TRUMP CORPORATION; DJT HOLDINGS LLC; THE DONALD J. TRUMP REVOCABLE TRUST; and TRUMP OLD POST OFFICE LLC,<br><br>Plaintiffs,<br><br>v.<br><br>ELIJAH E. CUMMINGS, in his official capacity as Chairman of the House Committee on Oversight and Reform; PETER KENNY, in his official capacity as Chief Investigative Counsel of the House Committee on Oversight and Reform; and MAZARS USA LLP,<br><br>Defendants. | Civil Action No. 1:19-cv-01136-APM |

## JOINT STIPULATION

All parties stipulate that Defendants Elijah E. Cummings and Peter Kenny are dismissed from this case without prejudice. These Defendants can be dismissed because Intervenor-Defendant Committee on Oversight and Reform of the U.S. House of Representatives is a proper party and, in the event that the Court issues a judgment in favor of Plaintiffs, Intervenor-Defendant has represented that any appropriate relief could be obtained from it.

Dated: April 29, 2019

 _s/ Douglas N. Letter_

Douglas N. Letter
Todd B. Tatelman
Megan Barbero
Brooks M. Hanner
OFFICE OF GENERAL COUNSEL
U.S. HOUSE OF REPRESENTATIVES
219 Cannon House Building
Washington, D.C. 20515
(202) 225-9700
douglas.letter@mail.house.gov

_Counsel for Elijah E. Cummings, Peter Kenny, and the Committee on Oversight and Reform of the U.S. House of Representatives_

 _s/ Jerry D. Bernstein_

Lawrence H. Wechsler (D.C. Bar #102418)
Henry F. Schuelke III (D.C. Bar #91579)
BLANK ROME LLP
1825 Eye Street NW
Washington, D.C. 20006
(202) 420-2200
lwechsler@blankrome.com
hschuelke@blankrome.com

Jerry D. Bernstein*
Inbal P. Garrity*
Nicholas R. Tambone*
BLANK ROME LLP
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000
jbernstein@blankrome.com
igarrity@blankrome.com
ntambone@blankrome.com

*_Pro hac vice_ application forthcoming

_Counsel for Mazars USA LLP_

Respectfully submitted,

 _s/ William S. Consovoy_

William S. Consovoy (D.C. Bar #493423)
Cameron T. Norris
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Blvd., Ste. 700
Arlington, VA 22201
(703) 243-9423
will@consovoymccarthy.com
cam@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com

_Counsel for President Donald J. Trump_

Stefan C. Passantino (D.C. Bar #480037)
MICHAEL BEST & FRIEDRICH LLP
1000 Maine Ave. SW, Ste. 400
Washington, D.C. 20024
(202) 747-9582
spassantino@michaelbest.com

_Counsel for The Trump Organization, Inc., Trump Organization LLC, The Trump Corporation, DJT Holdings LLC, Trump Old Post Office LLC, and The Donald J. Trump Revocable Trust_

# EXHIBIT 69

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DONALD J. TRUMP,
1600 Pennsylvania Avenue NW
Washington, D.C. 20500,

THE TRUMP ORGANIZATION, INC.,
TRUMP ORGANIZATION LLC,
THE TRUMP CORPORATION,
DJT HOLDINGS LLC,
THE DONALD J. TRUMP REVOCABLE
TRUST,
725 Fifth Avenue
New York, NY 10022,

TRUMP OLD POST OFFICE LLC,
1100 Pennsylvania Avenue NW
Washington, D.C. 20004,

                    Plaintiffs,

v.

ELIJAH E. CUMMINGS, in his official capacity
as Chairman of the House Committee on
Oversight and Reform,
PETER KENNY, in his official capacity as
Chief Investigative Counsel of the House
Committee on Oversight and Reform,
2157 Rayburn House Office Building
Washington, D.C. 20515,

MAZARS USA LLP,
135 West 50th Street
New York, NY 10020,

                    Defendants.

Civil Action No. _____

## COMPLAINT

      Plaintiffs bring this action against Defendants for declaratory and injunctive relief and allege

as follows:

## INTRODUCTION

1.  The Democrat Party, with its newfound control of the U.S. House of Representatives, has declared all-out political war against President Donald J. Trump. Subpoenas are their weapon of choice.

2.  Democrats are using their new control of congressional committees to investigate every aspect of President Trump's personal finances, businesses, and even his family. Instead of working with the President to pass bipartisan legislation that would actually benefit Americans, House Democrats are singularly obsessed with finding something they can use to damage the President politically. They have issued more than 100 subpoenas and requests to anyone with even the most tangential connection to the President.

3.  This case involves one of those subpoenas. Last week, Defendant Elijah E. Cummings invoked his authority as Chairman of the House Oversight Committee to subpoena Mazars USA LLP—the longtime accountant for President Trump and several Trump entities (all Plaintiffs here). Chairman Cummings asked Mazars for financial statements, supporting documents, and communications about Plaintiffs over an eight-year period—mostly predating the President's time in office.

4.  Chairman Cummings requested this information because Michael Cohen—a felon who has pleaded guilty to lying to Congress—told the House Oversight Committee that the President had misrepresented his net worth while he was a private citizen. The Committee, according to Chairman Cummings, now needs to "investigate whether the President may have engaged in illegal conduct." The Chairman claims he can do so because the Oversight Committee can supposedly investigate "any matter at any time."

5.  Chairman Cummings has ignored the constitutional limits on Congress' power to investigate. Article I of the Constitution does not contain an "Investigations Clause" or an "Oversight

Clause." It gives Congress the power to enact certain *legislation*. Accordingly, investigations are legitimate only insofar as they further some legitimate legislative purpose. No investigation can be an end in itself. And Congress cannot use investigations to exercise powers that the Constitution assigns to the executive or judicial branch.

6.      Chairman Cummings' subpoena of Mazars lacks a legitimate legislative purpose. There is no possible legislation at the end of this tunnel; indeed, the Chairman does not claim otherwise. With this subpoena, the Oversight Committee is instead assuming the powers of the Department of Justice, investigating (dubious and partisan) allegations of illegal conduct by private individuals outside of government. Its goal is to expose Plaintiffs' private financial information for the sake of exposure, with the hope that it will turn up something that Democrats can use as a political tool against the President now and in the 2020 election.

7.      Because Chairman Cummings' subpoena to Mazars threatens to expose Plaintiffs' confidential information and lacks "a legitimate legislative purpose," this Court has the power to declare it invalid and to enjoin its enforcement. *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 n.14 (1975) (endorsing *U.S. Servicemen's Fund v. Eastland*, 488 F.2d 1252, 1259-60 (D.C. Cir. 1973)). Plaintiffs are entitled to that relief.

## PARTIES

8.      Plaintiff Donald J. Trump is the 45th President of the United States. President Trump brings this suit solely in his capacity as a private citizen.

9.      Plaintiff The Trump Organization, Inc. is a New York corporation with its principal place of business at 725 Fifth Avenue, New York, NY 10022.

10.      Plaintiff Trump Organization LLC is a New York limited liability company with its principal place of business at 725 Fifth Avenue, New York, NY 10022.

11.     Plaintiff The Trump Corporation is a New York corporation with its principal place of business at 725 Fifth Avenue, New York, NY 10022.

12.     Plaintiff DJT Holdings LLC is a Delaware limited liability company with its principal place of business at 725 Fifth Avenue, New York, NY 10022.

13.     Plaintiff The Donald J. Trump Revocable Trust is a trust created and operating under the laws of New York.

14.     Plaintiff Trump Old Post Office LLC is a Delaware limited liability company with its principal place of business at 1100 Pennsylvania Avenue NW, Washington, D.C. 20004.

15.     Defendant Elijah E. Cummings is the U.S. Representative for Maryland's 7th District and the Chairman of the House Committee on Oversight and Reform. He is a member of the Democrat party. Chairman Cummings issued the subpoena in question and is sued in his official capacity.

16.     Defendant Peter Kenny is the Chief Investigative Counsel for the House Committee on Oversight and Reform. He signed and served the subpoena in question and is sued in his official capacity.

17.     Defendant Mazars USA LLP is a New York limited liability partnership with its principal executive office at 135 West 50th Street, New York, NY 10020. Mazars is an accounting firm and the recipient of Chairman Cummings' subpoena. Mazars is a defendant to ensure that Plaintiffs can obtain effective relief.

## JURISDICTION & VENUE

18.     This Court has subject-matter jurisdiction because this case arises under the Constitution and laws of the United States. 28 U.S.C. §§1331, 2201.

19.     Venue is proper because Chairman Cummings officially resides in the District. 28 U.S.C. §1391.

**BACKGROUND**

**I.    Challenges to Congressional Subpoenas**

20.    Not infrequently, federal courts adjudicate the legality of congressional subpoenas. Most such cases follow a familiar fact pattern: Congress issues a subpoena, the target does not comply, Congress tries to force compliance in federal court, and the target raises the illegality of the subpoena as a defense.

21.    But this defensive posture is not the only way to challenge a congressional subpoena. When Congress "seeks information directly from a party," that party "can resist and thereby test the subpoena." *Eastland*, 421 U.S. at 501 n.14. But when Congress "seeks that same information from a third person," this option is not available; the third party might not have an interest in protecting the information or resisting the subpoena, and its "compliance" with the subpoena "could frustrate any judicial inquiry." *Id.* For that reason, the law allows the person whose information will be exposed to sue in federal court for an "injunction or declaratory judgment" to block the subpoena's "issuance, service on, or enforcement against" the "third party." *Eastland*, 488 F.2d at 1259. The key question in such a case is "whether a legitimate legislative purpose is present." *Eastland*, 421 U.S. at 501.

22.    The "legitimate legislative purpose" requirement stems directly from the Constitution. "The powers of Congress … are dependent solely on the Constitution," and "no express power in that instrument" allows Congress to investigate individuals or to issue compulsory process. *Kilbourn v. Thompson*, 103 U.S. 168, 182-89 (1880). The Constitution instead permits Congress to enact certain kinds of *legislation. See, e.g.*, Art. I, §8. Thus, Congress' power to investigate "is justified solely as an adjunct to the legislative process." *Watkins*, 354 U.S. at 197. "Congress is not invested with a general power to inquire into private affairs. The subject of any inquiry always must be one on which legislation could be had." *Eastland*, 421 U.S. at 504 n.15 (cleaned up); *see also Quinn v. United States*, 349 U.S. 155, 161 (1955) ("[T]he power to investigate" does not "extend to an area in which Congress is forbidden to legislate.").

23.     "Oversight" and "transparency," in a vacuum, are not legitimate legislative purposes that can justify subpoenaing a private citizen. For more than a century, in fact, the Supreme Court has been quite "sure" that neither the House nor Senate "possesses the general power of making inquiry into the private affairs of the citizen." *Kilbourn*, 103 U.S. at 190. "[T]here is no congressional power to expose for the sake of exposure." *Watkins*, 354 U.S. at 200. "No inquiry is an end in itself; it must be related to, and in furtherance of, a legitimate task of the Congress." *Id.* at 187.

24.     Additionally, because Congress must have a legitimate *legislative* purpose, it cannot use subpoenas to exercise "any of the powers of law enforcement." *Quinn*, 349 U.S. at 161. Those powers "are assigned under our Constitution to the Executive and the Judiciary." *Id.* Put simply, Congress is not "a law enforcement or trial agency," and congressional investigations conducted "for the personal aggrandizement of the investigators" or "to 'punish' those investigated" are "indefensible." *Watkins*, 354 U.S. at 187. Our tripartite system of separated powers requires that "any one of the[] branches shall not be permitted to encroach upon the powers confided to the others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other." *Kilbourn*, 103 U.S. at 190-91.

25.     Finally, when a subpoena is issued by a single committee, any legislative purpose is not legitimate unless it falls within that committee's jurisdiction. "The theory of a committee inquiry is that the committee members are serving as the representatives of the parent assembly in collecting information for a legislative purpose." *Watkins*, 354 U.S. at 200. Congress therefore must "spell out that group's jurisdiction and purpose with sufficient particularity … in the authorizing resolution," which "is the committee's charter." *Id.* at 201. The committee "must conform strictly to the resolution." *Exxon Corp. v. FTC*, 589 F.2d 582, 592 (D.C. Cir. 1978). And when an investigation is "novel" or "expansive," courts will construe the committee's jurisdiction "narrowly." *Tobin v. United States*, 306 F.2d 270, 275 (D.C. Cir. 1962).

## II. House Democrats' Campaign of Abusive Investigations

26. After the 2018 midterm elections, the Democrat party won a majority of seats in the House. Every House committee in the current Congress is thus chaired by a Democrat.

27. On the night of the election, soon-to-be Speaker Nancy Pelosi announced that "tomorrow will be a new day in America" because House Democrats will use their new majority to enact "checks and balances to the Trump administration." And "subpoena power," she explained a few days later, is "a great arrow to have in your quiver." Chairman Cummings echoed the Speaker's sentiments, stating that "it's a new day" and that "[President Trump] has to be accountable." He added that "we've got to address this issue of exposing President Trump." "Congress is going to force transparency on this president," another Democrat congressional aide repeated. "Once there is transparency, I am sure there are going to be a lot of questions that flow from that."

28. The Democrats' statements about "checks and balances" and "transparency" were not referring to legislation. Instead, according to news outlets that interviewed party leaders and aides shortly after the election, House Democrats meant that they were going to spend the next two years launching a "fusillade" of subpoenas in order to "drown Trump with investigations," "turn Trump's life upside down," and "make Trump's life a living hell."

29. Prominent Democrats were quite candid about their party's mission. Representative John Yarmuth, now chair of the House Budget Committee, stated that the new House majority would be "brutal" for President Trump: "We're going to have to build an air traffic control tower to keep track of all the subpoenas flying from here to the White House." Another senior Democrat official revealed that, from November 2018 to January 2019, House Democrats were busy preparing a "subpoena cannon" to fire at President Trump based on a "wish-list" of nearly 100 investigatory topics. Representative Nita Lowey, now chair of the House Appropriations Committee, confirmed a

long list of topics that House Democrats planned to investigate and stated, "We have our boxing gloves on. I'm ready. And so is Nancy."

30.     The Democrats' "focus," according to then–Minority Whip Steny Hoyer, would be examining "the President in terms of what [business] interests he has" from his time as a private citizen. That focus would include the President's family. Future Oversight Committee member Alexandria Ocasio-Cortez, for instance, responded to a joke by the President's son Donald Trump Jr. with an explicit threat: "Please keep it coming Jr – it's definitely a 'very, very large brain' idea to troll a member of a body that will have subpoena power in a month." The Democrats want this personal information in the hopes they will find something they can use to score political points against the President leading up to the 2020 election.

31.     House Democrats are executing their plan in earnest. Recently, several House committees issued a flurry of subpoenas and requests for information about the President's family, personal finances, and businesses. Just one request by Chairman Nadler of the House Judiciary Committee, for example, asked 81 different individuals for information about President Trump.

32.     A few days ago, House Republicans discovered that Chairman Cummings had executed secret memoranda of understanding with Chairman Adam Schiff of the House Permanent Select Committee on Intelligence and Chairwoman Maxine Waters of the House Financial Services Committee. In the memoranda, the Chairs agreed to coordinate their subpoenas in order to inflict maximum political damage on President Trump. According to one congressional official with knowledge of the memoranda, they are "an agreement to conspire and coordinate their efforts to attack and investigate POTUS" by targeting his business and financial records.

33.     Last Monday, Chairman Cummings sent one such subpoena to Mazars—Plaintiffs' longtime accountant. That subpoena is the subject of this lawsuit.

### III.   Chairman Cummings' Subpoena to Mazars

34.   The Mazars subpoena is based on one of the worst examples of the House Democrats'
zeal to attack President Trump under the guise of investigations: Michael Cohen's testimony to the
House Oversight Committee on February 27, 2019.

35.   The Cohen hearing was a partisan stunt, not a good-faith effort to obtain accurate
testimony from a reliable witness. Cohen is a convicted liar; before his February hearing, he had
pleaded guilty to several federal crimes including making false statements to Congress. Cohen's
testimony was orchestrated by his lawyer Lanny Davis, a political operative for the Democrat party,
and Cohen met extensively with House Democrats about the contents of his testimony before he gave
it. The reason that Cohen testified, moreover, is so Chairman Cummings and other Democrats would
support his request for leniency during his federal sentencing. And according to Ranking Member Jim
Jordan, Cohen told several additional lies to Congress in his February testimony.

36.   Nevertheless, Chairman Cummings seized on Cohen's allegation that certain financial
statements—which Mazars had prepared for President Trump while he was a private citizen—
contained inaccuracies. Citing Cohen's testimony, Chairman Cummings wrote to Mazars on March
20, 2019, asking it to produce the following information about President Trump:

> With respect to Donald J. Trump, Donald J. Trump Revocable Trust, the Trump
> Organization Inc., the Trump Organization LLC, the Trump Corporation, DJT Holdings
> LLC, the Trump Old Post Office LLC, the Trump Foundation, and any parent, subsidiary,
> affiliate, joint venture, predecessor, or successor of the foregoing:
>
> 1.   All statements of financial condition, annual statements, periodic financial reports
>      and independent auditors' reports prepared, compiled, reviewed, or audited by
>      Mazars USA LLP or its predecessor, WeiserMazars LLP;
>
> 2.   Without regard to time, all engagement agreements or contracts related to the
>      preparation, compilation, review, or auditing of the items described in Request
>      Number 1;
>
> 3.   All underlying, supporting, or source documents and records used in the
>      preparation, compilation, review, or auditing of items described in Request

Number 1, or any summaries of such documents and records relied upon, or any requests for such documents and records; and

4.     All memoranda, notes, and communications related to the preparation, compilation, review, or auditing of the items described in Request Number 1, including, but not limited to:

   a.     all communications between Donald Bender and Donald J. Trump or any employee or representative of the Trump Organization; and

   b.     all communications related to potential concerns that records, documents, explanations, or other information, including significant judgments, provided by Donald J. Trump or other individuals from the Trump Organization, were incomplete, inaccurate, or otherwise unsatisfactory.

Unless otherwise noted, the time period covered by this request is from January 1, 2009, to the present.

37.     Chairman Cummings did not consult with Committee Republicans before sending his request to Mazars. When they discovered the request, Representatives Jordan and Mark Meadows— the Ranking Member of the Oversight Committee and the Subcommittee on Government Operations, respectively—objected. They wrote Mazars informing it that, because Chairman Cummings' request seeks "information and material about President Trump's personal finances … well before [he] was even a candidate for federal office," it "does not appear to have a valid legislative purpose and instead seems to seek information to embarrass a private individual." The Ranking Members repeated their concerns in a letter to Chairman Cummings, explaining that the Chairman's request "seems to examine facts relating to a transaction that never materialized" and other "information [from] … well before the President was even a candidate." This is not an attempt at "legitimate oversight," they added; its only purpose is "to embarrass President Trump" and to maintain House Democrats' "repeated partisan attacks on the President."

38.     Mazars, through its outside counsel, wrote back to Chairman Cummings on March 27. Mazars informed Chairman Cummings that it "cannot voluntarily turn over the documents."

39.     Mazars was correct. Under its contract with Plaintiffs, Mazars must abide by the American Institute of CPAs' ethical rules, which prohibit accountants from "disclos[ing] any confidential client information without the specific consent of the client." AICPA Code of Prof'l Conduct §1.700.001.01. New York law imposes the same duty. *See* 8 N.Y.C.R.R. §29.10(c) ("[U]nprofessional conduct" by accountants includes the "revealing of personally identifiable facts, data or information obtained in a professional capacity without the prior consent of the client."). A congressional subpoena does not relieve Mazars from these duties, unless the subpoena is "validly issued and enforceable." AICPA Code §1.700.001.02.

40.     Chairman Cummings thus tried to craft a subpoena that would hold up in court. Sensing this would be a tall order, the Chairman waited until the House left for its Easter break to circulate a memorandum about the subpoena and then to issue it. This maneuver allowed him to subpoena Mazars without first conferring with Committee Republicans and having to defend his reasoning at an open meeting of the Oversight Committee.

41.     Chairman Cummings' memorandum, dated April 12, 2019, again cited Cohen's testimony as the basis for subpoenaing Mazars. The Chairman also suggested that "news reports have raised additional concerns regarding the President's financial statements and representations." But the first "news report"—a blog post from MSNBC's Rachel Maddow Show—merely repeated Cohen's testimony. And the second "news report"—a March 2019 article from the Washington Post—quoted legal experts who explained why the financial statements did not break any laws. The Chairman's memorandum nonetheless stated that the Committee needed to investigate "whether the President has been accurate in his financial reporting."

42.     Ranking Member Jordan again objected to Chairman Cummings' planned subpoena. In an April 15 letter and memorandum, the Ranking Member explained that the subpoena "is an unprecedented abuse of the Committee's subpoena authority to target and expose the private financial

information of the President of the United States" for "political gain." The subpoena is an impermissible attempt to "expose the private affairs of individuals," the Ranking Member explained, because "Chairman Cummings has cited no specific law or legislative proposal for which he requires eight years of sensitive, personal financial information about President Trump." Ranking Member Jordan also noted his deep concern that Chairman Cummings would selectively leak whatever information he obtained from Mazars, citing examples where the Chairman had strategically leaked similar sensitive information in the past.

43.    Despite the Ranking Members' objections, Chairman Cummings issued the subpoena to Mazars that same day. The subpoena was identical to the Chairman's initial request for information, except that it asked for information from "2011 through 2018" instead of "2009 to the present." The subpoena currently orders Mazars to comply by noon on April 29, 2019.

44.    Ranking Member Jordan responded to the subpoena in a letter dated April 17. The subpoena, he explained, "is an act of raw partisan politics meant only to further your obsession with attacking the President of the United States." Chairman Cummings "did not dispute the fact that [his] subpoena to Mazars is part of a coordinated and carefully managed campaign to use congressional oversight for political gain," the Ranking Member observed, and never "articulated how the sensitive, personal financial information [he] seek[s] will advance a legitimate legislative purpose."

45.    Plaintiffs bring this suit to challenge the validity and enforceability of Chairman Cummings' subpoena. Now that the subpoena has issued, Mazars faces an unfair choice: ignore the subpoena and risk contempt of Congress, or comply with the subpoena and risk liability to Plaintiffs if the subpoena is invalid or unenforceable. To resolve these conflicting commands, the D.C. Circuit has instructed third-party accountants like Mazars to hold onto the subpoenaed materials until the dispute over the subpoena's validity is finally resolved in court: "[AICPA] Rule 301 … explains that it 'shall not be construed ... to affect in any way the member's obligation to comply with a validly issued

and enforceable subpoena or summons.' But [the client] challenges the enforceability of a subpoena …. Thus [the accountant] c[an] refuse to produce the documents, thereby allowing [the client to litigate the subpoena], without violating its obligation to comply with enforceable subpoenas." *United States v. Deloitte LLP*, 610 F.3d 129, 142 (D.C. Cir. 2010). Congress thus cannot take any action against Mazars until this litigation is finally resolved.

## CLAIM FOR RELIEF

46.     Plaintiffs incorporate all their prior allegations.

47.     Chairman Cummings' subpoena is invalid and unenforceable because it has no legitimate legislative purpose.

48.     The subpoena seeks to investigate events that occurred while President Trump was a private citizen, years before he was even a candidate for public office.

49.     The subpoena seeks to investigate events that could not possibly lead to legislation within the Oversight Committee's statutory jurisdiction and constitutional authority.

50.     The subpoena is an attempt to investigate and adjudicate possible violations of federal law by private individuals—law-enforcement powers that only the executive and judicial branches can exercise.

**WHEREFORE**, Plaintiffs ask this Court to enter judgment in their favor and to provide the following relief:

a.  A declaratory judgment that Chairman Cummings' subpoena is invalid and unenforceable;

b.  A permanent injunction quashing Chairman Cummings' subpoena;

c.  A permanent injunction prohibiting Chairman Cummings and Mr. Kenny from taking any actions to enforce the subpoena, from imposing sanctions for noncompliance with the subpoena, and from inspecting, using, maintaining, or disclosing any information obtained as a result of the subpoena;

d.  A temporary restraining order and preliminary injunction prohibiting Mazars from producing the requested information, and prohibiting Chairman Cummings and Mr. Kenny from taking any actions to enforce the subpoena, until the subpoena's validity has been finally adjudicated on the merits;

e.  Plaintiffs' reasonable costs and expenses, including attorneys' fees; and

f.  All other preliminary and permanent relief to which Plaintiffs are entitled.

Respectfully submitted,

Dated: April 22, 2019

Stefan C. Passantino (D.C. Bar #480037)
MICHAEL BEST & FRIEDRICH LLP
1000 Maine Ave. SW, Ste. 400
Washington, D.C. 20024
(202) 747-9582
spassantino@michaelbest.com

*Counsel for The Trump Organization, Inc., Trump Organization LLC, The Trump Corporation, DJT Holdings LLC, The Donald J. Trump Revocable Trust, and Trump Old Post Office LLC*

 *s/ William S. Consovoy*

William S. Consovoy (D.C. Bar #493423)
Cameron T. Norris
CONSOVOY MCCARTHY PARK PLLC
3033 Wilson Blvd., Ste. 700
Arlington, VA 22201
(703) 243-9423
will@consovoymccarthy.com
cam@consovoymccarthy.com

Patrick Strawbridge
CONSOVOY MCCARTHY PARK PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
patrick@consovoymccarthy.com

*Counsel for President Donald J. Trump*

## CIVIL COVER SHEET

JS-44 (Rev. 6/17 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Donald J. Trump; The Trump Organization, Inc.; Trump Organization LLC; The Trump Corporation; DJT Holdings LLC; The Donald J. Trump Revocable Trust;Trump Old Post Office LLC | Elijah E. Cummings, Peter Kenny, Mazars USA LLP |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **11001**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

William S. Consovoy
Consovoy McCarthy Park PLLC
3033 Wilson Blvd., Ste. 700, Arlington, VA 22201
(703) 243-9423

ATTORNEYS (IF KNOWN)

Stefan C. Passantino
Michael Best & Friedrich LLP
1000 Maine Ave. SW, Ste. 400
Washington, D.C. 20024

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

O 1 U.S. Government Plaintiff

◉ 3 Federal Question (U.S. Government Not a Party)

O 2 U.S. Government Defendant

O 4 Diversity (Indicate Citizenship of Parties in item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | O 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | O 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
**(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)**

O **A.** *Antitrust*

☐ 410 Antitrust

O **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Product Liability

O **C.** *Administrative Agency Review*

☐ 151 Medicare Act

**Social Security**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**Other Statutes**
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

O **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

◉ **E.** *General Civil (Other)*    OR    O **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 27 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Conditions
☐ 560 Civil Detainee – Conditions of Confinement

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent – Abbreviated New Drug Application
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**Other Statutes**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 462 Naturalization Application
☐ 465 Other Immigration Actions
☐ 470 Racketeer Influenced & Corrupt Organization
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 850 Securities/Commodities/ Exchange
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/Privacy Act* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ **530 Habeas Corpus – General**<br>☐ **510 Motion/Vacate Sentence**<br>☐ **463 Habeas Corpus – Alien Detainee** | ☐ **442 Civil Rights – Employment** (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ **895 Freedom of Information Act**<br>☐ **890 Other Statutory Actions (if Privacy Act)**<br><br>*(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loan (excluding veterans)** |
| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
| ☐ **710 Fair Labor Standards Act**<br>☐ **720 Labor/Mgmt. Relations**<br>☐ **740 Labor Railway Act**<br>☐ **751 Family and Medical Leave Act**<br>☐ **790 Other Labor Litigation**<br>☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)**<br>☐ **443 Housing/Accommodations**<br>☐ **440 Other Civil Rights**<br>☐ **445 Americans w/Disabilities – Employment**<br>☐ **446 Americans w/Disabilities – Other**<br>☐ **448 Education** | ☐ **110 Insurance**<br>☐ **120 Marine**<br>☐ **130 Miller Act**<br>☐ **140 Negotiable Instrument**<br>☐ **150 Recovery of Overpayment & Enforcement of Judgment**<br>☐ **153 Recovery of Overpayment of Veteran's Benefits**<br>☐ **160 Stockholder's Suits**<br>☐ **190 Other Contracts**<br>☐ **195 Contract Product Liability**<br>☐ **196 Franchise** | ☐ **441 Civil Rights – Voting (if Voting Rights Act)** |

**V. ORIGIN**

◉ **1 Original Proceeding**  ○ **2 Removed from State Court**  ○ **3 Remanded from Appellate Court**  ○ **4 Reinstated or Reopened**  ○ **5 Transferred from another district (specify)**  ○ **6 Multi-district Litigation**  ○ **7 Appeal to District Judge from Mag. Judge**  ○ **8 Multi-district Litigation – Direct File**

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
28 USC §§1331, 2201. Suit for declaratory and injunctive relief challenging a congressional subpoena.

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐ | **DEMAND $** _____ **JURY DEMAND:** | Check YES only if demanded in complaint YES ☐  NO ☒ |
|---|---|---|---|
| **VIII. RELATED CASE(S) IF ANY** | *(See instruction)* | YES ☐   NO ☒ | If yes, please complete related case form |

**DATE:** ___4/22/2019___   **SIGNATURE OF ATTORNEY OF RECORD** _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.     CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of the case.

VI.     CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| DONALD J. TRUMP, et al. <br><br>——————————————— <br> *Plaintiff(s)* <br> v. <br> ELIJAH E. CUMMINGS, PETER KENNY, MAZARS USA LLP <br><br>——————————————— <br> *Defendant(s)* | ) <br> ) <br> ) <br> ) <br> ) <br> )     Civil Action No. <br> ) <br> ) <br> ) <br> ) <br> ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  The Honorable Elijah E. Cummings
Chairman, House Committee on Oversight and Reform
United States House of Representatives
2157 Rayburn House Office Building
Washington, D.C. 20515

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   William S. Consovoy
Consovoy McCarthy Park PLLC
3033 Wilson Blvd., Ste. 700
Arlington, VA 22201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____            _____
                                              *Server's signature*

                                              _____
                                              *Printed name and title*


                                              _____
                                              *Server's address*

Additional information regarding attempted service, etc:




| Print | Save As... | | Reset |

AO 440 (Rev. 06/12; DC 3/15)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| DONALD J. TRUMP, et al. | ) )  ) ) |
| *Plaintiff(s)* | ) |
| v. | )  Civil Action No. |
| ELIJAH E. CUMMINGS, PETER KENNY, MAZARS USA LLP | ) ) ) |
| *Defendant(s)* | ) ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Peter Kenny
Chief Investigative Counsel, House Committee on Oversight and Reform
United States House of Representatives
2157 Rayburn House Office Building
Washington, D.C. 20515

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  William S. Consovoy
Consovoy McCarthy Park PLLC
3033 Wilson Blvd., Ste. 700
Arlington, VA 22201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*ANGELA D. CAESAR, CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

### PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:


| Print | Save As... | | Reset |

# EXHIBIT 70

G:\M\18\BIGGS\BIGGS_018.XML

(Original Signature of Member)

118TH CONGRESS
1ST SESSION

# H. R. ___

To prohibit Federal funds from being awarded or otherwise made available
to the Manhattan District Attorney's Office.

___

## IN THE HOUSE OF REPRESENTATIVES

Mr. BIGGS introduced the following bill; which was referred to the Committee
on ___

___

# A BILL

To prohibit Federal funds from being awarded or otherwise
made available to the Manhattan District Attorney's Office.

1    *Be it enacted by the Senate and House of Representa-*
2  *tives of the United States of America in Congress assembled,*

3  **SECTION 1. SHORT TITLE.**

4    This Act may be cited as the "Accountability for
5  Lawless Violence In our Neighborhoods Act" or the
6  "ALVIN Act".

G:\M\18\BIGGS\BIGGS_018.XML

2

1 **SEC. 2. PROHIBITION ON FEDERAL FUNDING WITH RE-**
2 **SPECT TO MANHATTAN DISTRICT ATTORNEY.**

3    (a) PROHIBITION ON FEDERAL FUNDING.—Notwith-
4 standing any other provision of law, no Federal funds may
5 be awarded or otherwise made available to the Manhattan
6 District Attorney's Office.

7    (b) RECISION AND REPAYMENT OF FEDERAL FUND-
8 ING.—The unobligated balances of all amounts allocated
9 for or otherwise made available to the Manhattan District
10 Attorney's Office is hereby rescinded, and the Attorney
11 General shall take such steps as may be necessary and
12 practicable to require the Manhattan District Attorney's
13 Office to reimburse the Federal Government for all
14 amounts expended for such Office after the date of Janu-
15 ary 1, 2022.

# EXHIBIT 71

```
SUPREME COURT         NEW YORK COUNTY
TRIAL TERM            PART 59
------------------------------------x
THE PEOPLE OF THE STATE OF NEW YORK : INDICTMENT #
                                    : 71543-2023
                                    :
          AGAINST                   : CHARGE
                                    : FALSIFYING BUSINESS
                                    :   RECORDS 1st Deg.
                                    :
          DONALD J. TRUMP           :
                                    :
                                    :
------------------------------------x Proceedings


                    100 Centre Street
                    New York, New York 10013
                    April 4, 2023



B E F O R E:

          HONORABLE:  JUAN MERCHAN,
               JUSTICE OF THE SUPREME COURT

             RANDY BERKOWITZ, SENIOR COURT REPORTER


APPEARANCES FOR THE PEOPLE:
          ALVIN BRAGG, JR.  DISTRICT ATTORNEY BY:
          SUSAN HOFFINGER, ESQ.
          CHRISTOPHER CONROY, ESQ.
          MATTHEW COLANGELO, ESQ.
          CATHERINE MCCAW, ESQ.
          BECKY MANGOLD, ESQ.


          FOR THE DEFENDANT, DONALD J. TRUMP:
          SUSAN NECHELES, ESQ.
          JOSEPH TACOPINA, ESQ.
          TODD BLANCHE, ESQ.
```

Page 2

```
 1    -----------------------------------------------------------------------

 2                    THE CLERK:   Calendar number one, indictment 71543

 3    of 2023, People of the State of New York versus Donald J.

 4    Trump.  Appearances.

 5                    MR. CONROY:   Christopher Conroy for the People.

 6    And Judge, with me are Catherine McCaw, Matthew Colangelo,

 7    Susan Hoffinger and Becky Mangold.

 8                    THE COURT:   Good afternoon.

 9                    MR. BLANCHE:   Good afternoon, your Honor.   Todd

10    Blanche for President Trump.

11                    MS. NECHELES:   Susan Necheles for President Trump

12    as well.

13                    MR. TACOPINA:   Once again, Joseph Tacopina for

14    President Donald J. Trump.

15                    THE COURT:   Good afternoon.

16                    This matter is on for arraignment.  Anything that

17    we need to address before we conduct the arraignment?

18                    MR. CONROY:   Not from the People.

19                    THE COURT:   Defense?

20                    MR. BLANCHE:   No, your Honor.

21                    THE COURT:   Lets arraign Mr. Trump.

22                    THE CLERK:   Donald J. Trump, the grand jury of New

23    York County has filed indictment 71543 of 2023 charging you

24    with the crimes of 34 counts of falsifying business records

25    in the first degree.
```

1             How do you plead to this indictment, guilty or not

2        guilty?

3             DEFENDANT MR. TRUMP:  Not guilty.

4             THE COURT:  People.

5             MR. CONROY:  Thank you, Judge.  First, we are

6        filing with the Court and handing to counsel, copies of the

7        indictment and a statement of facts.

8             Judge, I'm also handing over to counsel a copy of

9        the fingerprint report, and I would note for the record

10       that the indictment was actually unsealed at 1:30 today and

11       given to counsel for the defendant so they could review

12       that in advance of this appearance.

13            Your Honor, a grand jury sitting here in Manhattan

14       made up of diligent, thoughtful New Yorkers who did their

15       civic duty, listened to the evidence and carefully

16       considered the charges has voted an indictment against the

17       defendant, Donald J. Trump, charging him with 34 separate

18       felony counts of falsifying business records in the first

19       degree in violation of New York State Penal Law section 175

20       10.

21            ADA McCaw is prepared to address discovery,

22       scheduling of motions, and a trial date in a moment, but

23       with the Court's permission, I would first like to address

24       briefly what this case is about, the defendant's recent

25       public statements, conditions of release, and the conflict

1    matter the People believe the Court should be aware of.

2           THE COURT:    Please.

3           MR. CONROY:    Thank you.  The defendant, Donald J.

4    Trump, falsified New York business records in order to

5    conceal an illegal conspiracy to undermine the integrity of

6    the 2016 presidential election and other violations of

7    Election Laws.

8           Beginning in about August of 2015, the defendant

9    agreed with others to carry out an unlawful plan to

10   identify and suppress negative information that could have

11   undermined his candidacy for President.

12          As part of that plan, a lawyer employed by the

13   Trump Organization made a covert and illegal 130 thousand

14   dollar payment at the defendant's direction.

15          The purpose of the payment was to avoid negative

16   attention to the defendant's campaign by suppressing

17   information about an allegedly sexual encounter between

18   defendant and an adult film actress.

19          After the election, defendant reimbursed the

20   lawyer through a series of disguised monthly payments that

21   hid the true nature of the payoff by causing a series of

22   false business records in the records of the Trump

23   Organization here in Manhattan, and even mischaracterized

24   for tax purposes the true nature of the payment.

25          Defendant falsified these New York business

1    records with the intent to defraud, including the intent to

2    commit another crime, and to aid and conceal the commission

3    of another crime.

4           This office has long prioritized protecting the

5    integrity of business records maintained here in New York

6    County.

7           When those records are falsified in service of

8    another crime, it is a felony.

9           That is what this defendant did when he falsified

10   business records in order to conceal unlawful efforts to

11   promote his candidacy and that is why we are here.

12          Next, I would like to briefly address this

13   defendant's recent public statements threatening our city,

14   our justice system, our courts, and our office.

15          Over the past several weeks and longer, this

16   defendant has made a series of threatening and escalating

17   communications on social media and on other public remarks.

18   This includes irresponsible social media posts that target

19   various individuals involved in this matter, and even their

20   families.

21          His public statements have, among other things,

22   threatened potential death and destruction, and that is a

23   quote, and world war three, another quote, if these charges

24   were brought and he was indicted.

25          They have directly addressed the grand jury and

1    disparaged witnesses who have purportedly participated in

2    our investigation.

3         Defendant has also directed a series of

4    threatening public statements to the District Attorney's

5    Office, including posting a picture that depicts Mr. Trump

6    wielding a baseball bat at the head of the District

7    Attorney.

8         These comments and posts have led to extensive

9    public safety measures being put into place by a number of

10   law enforcement agencies around the city, including here at

11   the courthouse starting several weeks ago.

12        At this point, I'm going to hand the Court copies

13   of several of the defendant's recent online posts as an

14   example.  Sorry, one moment.

15        ( Handed to Court and counsel).

16        MR. CONROY:  I'm also handing copies to counsel.

17   These posts are examples of this kind of threatening

18   rhetoric.

19        We have significant concern about the potential

20   danger this kind of rhetoric poses to our city, to

21   potential jurors and witnesses, and to the judicial

22   process.

23        What these kinds of posts will not do, is deter

24   the New York County District Attorney's Office from

25   carrying out its critical public safety mission

1  professionally, and evenhandedly in connection with every

2  single investigation and prosecution we have handled,

3  including this one.

4          At this point, one way to address the defendant's

5  behavior and rhetoric is an appropriately restricted

6  protective order concerning discovery materials, so that

7  his lawyers can access the information they need to prepare

8  a defense, while at the same time, making sure the

9  defendant does not disseminate any information provided as

10  discovery through threatening online posts.

11          ADA McCaw will further address the protective

12  order shortly, and the terms of any protective order the

13  Court enters can of course be carefully policed through

14  contempt proceedings and other sanctions as necessary.

15          Today we are only seeking a protective order

16  regarding discovery materials, but we note that the

17  defendant's escalating public comments summing directly at

18  participants at these proceedings and their family members,

19  may also raise concerns about the fair and orderly

20  administration of justice, the risks that pretrial

21  publicity will paint the jury pool and prejudice a fair

22  trial, and individual and public safety concerns.

23          We are considering whether further relief or

24  conditions would be warranted here based on continuing

25  developments, and we would be prepared to submit briefing

1       if the Court requests.

2               I'm going to move now to conditions of release.

3       In addressing the terms or the conditions of defendant's

4       release, we first note under New York law, these charges

5       are not bail eligible.

6               We further note defendant surrendered voluntarily

7       for his processing and arraignment today.

8               We are asking the Court to give the defendant

9       Parker warnings before he leaves the courtroom today.

10              Should the defendant decide got to return to court

11      from out of state, these warnings would help mitigate

12      potential issues around any extradition proceeding.

13              Finally, if circumstances change and we believe

14      modifications to these conditions are required, we will

15      advise the Court.

16              Last on my list, we would like to bring to your

17      attention a potential conflict Mr. Tacopina may have, given

18      our understanding that he previously had privileged

19      communications with Stormy Daniels, who we expect to be a

20      witness in this case.

21              We believe it appropriate for you to conduct an

22      inquiry at an appropriate time of both Mr. Tacopina and the

23      defendant about potential conflict issues related to his

24      prior dealings with Ms. Daniels.

25              We received a copy of a letter from Ms. Daniels's

1    current lawyer which was sent to Mr. Tacopina on this issue

2    yesterday; Monday, April 3rd.

3           We can file a copy with the Court and serve it on

4    counsel within the next day or so if that would assist the

5    Court in considering this issue.

6           At this point, if it is okay, I was going to turn

7    to Ms. McCaw to talk about discovery and other issues.

8           THE COURT:  Of course.  Counsel?

9           MR. BLANCHE:  Your Honor, thank you.  I didn't

10    realize we were going to give opening statements today.

11           I would appreciate the opportunity to respond.

12           Your Honor, the People just talked for 10 minutes

13    or so about, it sounds like the strength of their case.

14           They did this -- there is no trial, we have not

15    seen discovery.  It is actually consistent with what the

16    witnesses have been doing they have been calling over the

17    past several months.

18           Indeed, their main witness, Michael Cohen, walks

19    out of this office and stands on the courthouse steps

20    everytime he meets with the prosecutors, everytime he

21    testifies in the grand jury, and announces exactly what

22    he's doing and why he's doing it.

23           It is true that President Trump has responded, and

24    responded forcefully.  It is true that as part of that

25    response, he's absolutely frustrated, upset, and believes

1    that there is a grave injustice happening with him being in

2    this courtroom today.

3            That being said, your Honor, for the People to

4    stand before you today and give their version of this

5    indictment, is actually exasperating the problem.

6            So, the complaint from the People is that

7    President Trump is talking too much about the case, talking

8    too much about the investigation --

9            THE COURT:   I'm not sure that is what they were

10   saying.  They are complaining about the rhetoric and the

11   charged nature of the language that is being used.

12           MR. CONROY:   That is correct, your Honor.

13           MR. BLANCHE:   If that is the case, the President

14   has not only free speech rights to talk about his view of

15   what is happening by the District Attorney in this case,

16   and also, it is important to step back, your Honor; to

17   realize this case has been investigated for three and a

18   half years.

19           Your Honor, one of the main investigators with

20   this office, left the office, wrote a book about this

21   investigation, published a book, and has talked about the

22   book publicly.

23           Thereafter, as I said, the People's main witness

24   has talked repeatedly, not only on the courthouse steps,

25   but on every news, every news show and print media.  He has

1    written two books, he has a podcast all talking about the

2    case.

3           The President is running for reelection to be the

4    President of the United States.

5           I mean, imagine anybody in this courtroom that was

6    in that position, an investigation that lasted over three

7    years, over three years with leaks galore.

8           The People were right, we received a copy of the

9    indictment about 40 minutes ago.  The media received a lot

10    of these hints about the indictment last Thursday night,

11    and a copy of the indictment last night apparently.

12           That is a grave injustice.  The People didn't

13    address that.  The People have not addressed the fact that

14    there is literally a violation of law that happened at some

15    point in the past five days with the illegal leaking of

16    charges against President Trump.

17           What they did address, is their frustration when

18    President Trump sees that, when he sees an illegal leak

19    describing charges that he knows nothing about, when we

20    speak with the assigned ADA's, they correctly tell us they

21    can't share anything with us because it is sealed.

22           And then he's frustrated and comments publicly

23    about that; you can, I think, discuss words that are used,

24    but everyone of these posts are not threats, they are not

25    harassment, and rhetoric that maybe the People don't like,

Page 12

1    sure.  But, I think it is patently unfair, patently unfair

2    for somebody who is running for President of the United

3    States, for somebody who has sat by and watched for three

4    and a half years an investigation go on about a 130

5    thousand dollar payment before the last election, by the

6    way, to be frustrated and to speak publicly.  He has

7    rights, he's allowed to speak publicly.

8            THE COURT:  Okay.  Certainly, of course Mr. Trump

9    does have rights, and I don't believe the People are asking

10   the Court to impose any kind of gag order.  I didn't hear

11   that certainly.

12           MR. BLANCHE:  Agreed.

13           THE COURT:  Certainly, the Court would not impose

14   a gag order at this time even if it were requested.

15           Such restraints are the most serious and least

16   intolerable on First Amendment rights.  That does apply

17   doubly to Mr. Trump, because he is a candidate for the

18   presidency of the United States.  So, those First Amendment

19   rights are critically important, obviously.

20           I don't share your view that certain language and

21   certain rhetoric is just by frustration.

22           So, although I'm not going to issue a gag order

23   and not something close to a gag order, I would encourage

24   counsel on both sides, the People to please speak to your

25   witnesses.  Defense counsel, speak to your client and

Page 13

1    anybody else you need to, and remind them to please

2    refrain, please refrain from making statements that are

3    likely to incite violence or civil unrest.

4         Please refrain from making comments or engaging in

5    conduct that has the potential to incite violence, create

6    civil unrest, or jeopardize the safety or well-being of any

7    individuals.

8         Also, please do not engage in words or conduct

9    which jeopardizes the rule of law, particularly as it

10   applies to these proceedings in this courtroom.

11        This is a request I'm making.  I'm not making it

12   an order.  But now that I have made the request, if I were

13   to be handed something like this again in the future, I

14   have to take a closer look at it.

15        So, I ask you to please discuss that with your

16   client and the People also discuss it with your witnesses.

17        MR. CONROY:  Judge, I just note for the record

18   that we have done so and will continue to do so, and do

19   everything we can to clamp down on any witness comments in

20   public, but there is only so much we can do.

21        THE COURT:   Thank you.

22        MS. MCCAW:  Thank you, your Honor.  I would like

23   to address three matters before the Court today.

24        The first is the protective order the People are

25   in the process of working out with defense counsel.

Page 14

1          The second issue is discovery.  And the third

2     issue is scheduling.

3          So, to begin with, with respect to a protective

4     order, the People believe, especially in light of the

5     defendant's public comments, that a protective order is

6     vital to insure the sanctity of the proceedings as well as

7     the sanctity of the discovery materials.

8          We are in the process of working out a consent

9     protective order with defense counsel.  We have had a

10    number of very productive conversations, and I believe that

11    we are very close to agreement and finalizing the language.

12         I expect that when we do reach an agreement, we

13    should be able to submit that language to the Court within

14    the next few days, hopefully.

15         One thing I would like to highlight, however, is

16    that the proposed order, should the Court enter it, would

17    have terms that would be binding not solely on defense

18    counsel, but also on the defendant himself, and that should

19    the defendant fail to abide by these terms, it could have

20    the effect of being in contempt of court.

21         So, I just want to highlight the three terms.

22    These are terms which the defense and the People have

23    reached broad agreement.

24         The first is that the defendant may not use any of

25    the materials that the People produce for any purpose,

1    other than to prepare a defense in this case.

2         The second is the defendant will be permitted to

3    review certain sensitive materials, only in his attorney's

4    office, and he may not take copies of the documents,

5    portions of the documents, notes he took of the documents,

6    et cetera, with him after he leave his attorney's offices.

7         And third, and perhaps most importantly, defendant

8    may not provide the materials he receives through the

9    discovery process to any third party, including the press,

10   and he may not post them to social media.

11        And I would note again, for the record, that

12   should the defendant after the Court enters an order

13   violate any of the materials of this protective order, he

14   could be in contempt of Court.

15        THE COURT:  Before you move on to discovery, I'll

16   turn to defense counsel.  Are you working on a protective

17   order?

18        MS. NECHELES:  Yes, your Honor, thank you.

19        We are working on it together.  We hope to reach

20   an agreement.  We just received another copy of it.

21        I will note that the People in their statement of

22   facts here have laid out what they I assume contend the

23   grand jury evidence and the testimony showed.  So, I'm

24   concerned and we need to go back and discuss this.

25        It seemed fundamentally incorrect for the People

1       to be able to put out into the public a statement of what

2       they believe the facts are, and for the defense and someone

3       who is defending his career, his reputation, everything

4       that he's built in his entire life for him not to be able

5       to respond in the same manner.

6                So, we need to look at what is in here and have

7       further discussions.  We hope to do that promptly.

8                THE COURT:  I hope you are able to come to a

9       meeting of the minds in the protect order so I all I have

10      to do is sign it.

11               MR. TACOPINA:  One thing on the protective order.

12      I know the D.A said the review by the defendant would have

13      to be in the attorney's office.  That will not happen.  I

14      thought it was in the attorney's presence.  We would meet

15      most likely at the office of President Trump.

16               THE COURT:  All right, since you are still

17      negotiating, I will not weigh in at this time.

18               If you reach an impasse and you need my help in

19      resolving anything, let me know and I'll try to help out.

20      Now, the issue of discovery.

21               MS. MCCAW:  Yes, your Honor.  Once a protective

22      order is in place, the People expect they will be able to

23      begin making rolling productions of discovery.  We expect

24      the productions of discovery will take place, broadly

25      speaking, in three stages.

Page 17

1              The first stage of materials will be materials
2      that consist of grand jury minutes and exhibits, as well as
3      notes of witness statements for those witnesses who
4      testified in the grand jury.
5              We expect we will be able to provide those
6      materials to the defense within a week assuming an
7      appropriate protective order is in place.
8              The second stage of discovery will consist of
9      subpoena compliance, other witness materials, as well as
10     some police documents and other odds and ends.
11             We believe this group of discovery materials will
12     be the bulk of the People's additional discovery materials,
13     and we expect we will be able to produce those materials
14     within the 65 days allocated by the statute for voluminous
15     discovery materials.
16             There will probably be a third stage of discovery
17     that may consist of materials, such as internal District
18     Attorney's e-mail messages.  We don't yet have any sort of
19     visibility as to how long the production of those materials
20     would take.
21             I should note for the record, we believe the
22     materials that we produce in the first and second stages,
23     particularly the grand jury materials in the first stage,
24     will be the most important materials that the People will
25     provide.

Page 18

1          We also would like to note for the record, that we

2     understand there is an intense public interest in moving

3     this case along as expeditiously as possible.

4          The People intend to request a trial date in

5     January of 2024.  So, we would like to produce these

6     materials to the defense as quickly as possible to allow

7     the defense ample time to prepare for a trial in January of

8     2024.

9          THE COURT:  All right, would you like to be

10    heard?

11         MR. BLANCHE:  Your Honor, I'll not repeat what I

12    said before.  This has been a long investigation.  We don't

13    have any discovery yet.

14         The People, and certainly the President wants this

15    behind him.  But, to sit here and say January of 2024 is

16    good with us when we have not seen a piece of paper yet, is

17    I think patently unfair for us, given everything that I

18    think we know about the case from the media and from

19    witnesses talking, and what we know.  But certainly, we

20    think that is a little bit aggressive.

21         We think later in the spring next year might be a

22    more realistic, a more realistic plan at this point.  But

23    I'm speculating a bit because we have not seen anything

24    yet.

25         THE COURT:  All right, I understand what you are

Page  19

1     saying.  I think that is reasonable.  You have not received

2     discovery.  It is difficult to anticipate if you will be

3     ready for trial in January of 2024.

4              The message I would like to deliver is we would

5     like to move ahead as expeditiously as possible, without

6     undue delay.

7              Of course, you are entitled to the discovery, you

8     are entitled to review the discovery and make

9     determinations there.  Okay.

10             MS. MCCAW:  Thank you, your Honor.  The next topic

11    we would like to discuss is a schedule going forward.

12             I believe that the next step would be to set an

13    appropriate motion schedule.

14             The People have dates they would be willing to

15    propose, but I understand as well that you might want to

16    hear from the defense.

17             THE COURT:  I would.  So, you know, ordinarily

18    you get 45 days.  I know this is a much more complex case.

19    As you have seen in a couple of recent cases I presided

20    over, I did extend the motion schedule.  What did you have

21    in mind?

22             MR. BLANCHE:  Thank you, your Honor.  We

23    appreciate the consideration.

24             I would like to answer that in two parts, if I

25    could.  One, we strongly believe there will be substantive

1    motions addressing the substantive facts of the indictment

2    that could be dispositive.

3         Those motions certainly may, after we reviewed

4    discovery, because we rely in part on the materials

5    produced from the People.  That being said, we are -- we do

6    believe that to move the case along expeditiously, there

7    may be other motions that do not need to wait for the

8    substantive motions several months from now after the

9    conclusion of discovery.

10        And, so for example, the potential bill of

11   particulars.  We just got the statement of facts today.

12   That might also be something we need before we start going

13   through all the discovery.

14        So, what we would ask your Honor is we have an

15   opportunity to study the indictment beyond the half an hour

16   or so we had so far.  Continue to think about potential

17   motions and potentially file motions in two parts.

18        So, motions -- and we will communicate with the

19   People and with the Court as we land on the specifics of

20   which motions and the timing, but some of the motions

21   potentially dismissing the indictment after we had a chance

22   to review discovery.  So, I don't know if it is worth

23   setting a date now.  But if the Court would like to, we say

24   at least six weeks after discovery has been concluded, and

25   for other potential motions that we will reach out to the

1      Court about, we would ask to have a month to file those

2      motions or to at least inform the Court of what motions we

3      intend to file.

4              THE COURT:  So, People, when do you expect to

5      complete your discovery?

6              MS. MCCAW:  As I indicated, your Honor, we believe

7      that the vast majority of the materials will be turned over

8      to the defense within 65 days of the arraignment.

9              You know, there might be some additional straggler

10     materials; especially the e-mail review, internal e-mail

11     review from the District Attorney's Office.

12             That said, however, I don't believe the materials

13     that would be coming post 65 days would be particularly

14     meaningful.

15             Obviously, defense is entitled to see every single

16     e-mail discovery in this case, but those e-mail messages

17     tend not to be the most significant materials.

18             I would also like to say that to the extent that

19     the defense does intend to file a set of motions

20     immediately, and wants additional time after the discovery

21     is complete to file a second set, we ask a motion schedule

22     be set at this date for the first set of motions rather

23     than waiting for a later date to set that motion schedule.

24             THE COURT:  All right, so the 65 days would bring

25     us out to almost mid June, at this point.

1            I'm not in favor of splitting this up into two

2       sets of motions.  I'll set one motion schedule, which I

3       believe will be reasonable.  If you disagree, let me know.

4            I think four months would be more than sufficient

5       for you to be able to address your motions, so that would

6       bring us out to August eighth.  And so, by August eighth or

7       before, please file any and all motions.

8            MR. BLANCHE:  Thank you, your Honor.  Just one

9       caveat.  To the extent we do believe we need to file a

10      motion in advance of that, we will alert the People and

11      Court, and obviously your Honor can guide us.

12           But, those dates you just described, assuming the

13      schedule stays as the People have suggested works with us.

14           THE COURT:  All right, so that would bring the

15      People to, let me check my math here, I believe that brings

16      the People's response to around September fifth.

17           MS. MCCAW:  Your Honor, if they are having six

18      weeks, we appreciate six weeks as well.  That brings us to

19      September 19th, if that is possible.

20           THE COURT:  I'm not giving them six weeks.  I'm

21      giving them basically four months from today to complete

22      all of their motions.  That is what brings us out to about

23      August eighth.

24           MS. MCCAW:  So, if we could get six weeks from the

25      date of the filing of their motions, in light of the amount

Page 23

1    of time they will have had to prepare the motions, we

2    request a date of September 19th.

3            THE COURT:   Okay.  People's response off

4    calendar.  Defense motions to be filed off calendar.

5    People's response is to be filed off calendar also by

6    September 19th.  I believe that covers the three issues you

7    wished to address.

8            MS. MCCAW:  That is correct, your Honor.

9            THE COURT:  Mr. Tacopina, Mr. Trump.  The People

10   have asked me to discuss with you the possibility of Mr.

11   Tacopina might be conflicted out of this case.

12           MR. TACOPINA:  Can I address some things said?

13           THE COURT:   Sorry?

14           MR. TACOPINA:  Can I address some things that were

15   mentioned by the District Attorney regarding that?

16           THE COURT:  Sure, go ahead.

17           MR. TACOPINA:  Just to give you some actual

18   context, and whatever the Court deems necessary we can have

19   whatever the Court deems necessary.

20           To be clear, we received last night, for the first

21   time, a letter from a Clark Brewster, an attorney

22   apparently representing Stormy Daniels, that was lauded

23   with factual inaccuracies.

24           First and foremost, I never met Stormy Daniels.  I

25   never spoke to Stormy Daniels, and I never reviewed any

Page 24

1    documents of Stormy Daniels.

2         I know we are not doing a full-blown hearing here,

3    but I want to give the Court some context.

4         She called my office, like many people do, and

5    tried to hire me or asked about hiring me.

6         She spoke to an associate and paralegal.  Gave

7    some facts.  Sent over a document, and it went no further

8    than that.

9         We refused the case.  I did not offer her

10   representation.  Didn't speak to her.  Didn't meet with

11   her.  And it is as simple as that.

12        Of course, there is a rule governing that in New

13   York State, the rule of ethics.  Rule one point 18

14   regarding the duties to prospective clients.  And most

15   importantly, what has to happen here is I have to be in

16   possession of information that is significantly harmful to

17   the person in the matter.

18        I know we are not doing a full-blown hearing.  I

19   just want to put some things on the record.

20        Your Honor, that first of all does not exist.

21   Everything she sent us wound up in her book.  So, there is

22   not obviously any privilege, and any that existed was

23   waived.

24        But moreover, I learned I have documents

25   supporting this, that Ms. Daniels, or Ms. Clifford,

Page 25

1        whatever her name is, signed a waiver, an attorney client

2        waiver when she turned over all attorney client

3        communications to the federal prosecutors in the Southern

4        District, hereby waiving any attorney client privilege to

5        begin with.

6                She testified in open court about her attempt to

7        secure representation prior to retaining Mr. Avenatti.

8                She wrote a book regarding everything that had to

9        do with potential representation and the document at hand.

10               And unless there was ever a point where the Court

11       deemed there was a conflict, which I submit based on this

12       there is not, we can submit in writing our position from

13       Michael Ross, who is one of the most important ethical

14       lawyers in the city.

15               More importantly, if we got to that point, we are

16       not to that point, the remedy would be I do not participate

17       in her examination.

18               There are three different law firms here.  It is

19       as simple as that.  So obviously, I wanted to give the

20       Court our position on the factual assessment.

21               THE COURT:  People, what was your basis for

22       believing there might be a conflict?

23               MR. CONROY:  Judge, it is a combination of the

24       letter we received, which I can file with the Court in

25       short order.

Page 26

1            And also, I believe there had been comments made

2    on various TV networks, perhaps even by Mr. Tacopina, and

3    there were some privileged conversations between them.

4            If the Court -- obviously, if there will be

5    submissions, we are happy to engage in that process.

6            Again, we wanted to alert the Court to the

7    potential issue, and I think it is a real potential issue

8    that needs to be explored.

9            THE COURT:   Okay, so that is your position.  Mr.

10   Tacopina refutes that.  So, what I would ask is if there

11   comes a point you would like to submit a motion on this, I

12   will certainly welcome it.

13           In the meantime, I do believe I have an obligation

14   to address both Mr. Tacopina and Mr. Trump with regard to

15   this.

16           So, Mr. Tacopina, Mr. Trump, as you know, you have

17   an absolute right to conflict-free representation.

18           The People have alleged that there is a potential,

19   Mr. Tacopina has a conflict, and the basis for their belief

20   is that he may have represented a former client who is a

21   witness in this case.

22           At this point, I'm not making any findings of

23   fact.  I'm not deciding who is telling the truth or who is

24   not telling the truth.

25           I simply want to inform you that because it is an

1           important right.  I also want to -- first, do you

2           understand that right, Mr. Trump?

3                        DEFENDANT MR. TRUMP:  Yes.

4                        THE COURT:  And therefore, People are not filing a

5           motion at this time, but you are certainly welcome if you

6           wish between now and then to consult with other counsel,

7           run this issue by them and see how you feel about it when

8           it it's over, okay?

9                        DEFENDANT MR. TRUMP:  Okay, thank you.

10                       THE COURT:   All right, I believe the only other

11          issue is the Parker issue.

12                       MR. CONROY:  Correct, Judge.

13                       THE COURT:  So, Mr. Trump, the People asked me to

14          give you what are called Parker warnings.

15                       I want you to know I would have given you these

16          warnings whether they asked for them or not.

17                       This is something I do with every individual who

18          appears before me in the courtroom.  Please bear with me as

19          I do this.

20                       You have the right to be present at every stage of

21          the proceedings in your case.  At every proceeding involved

22          in the case, and that is obviously a very, very important

23          right because it allows you to assist your attorneys in

24          your defense of you.

25                       It allows them to consult with you in your defense

1 of you.  I think it is definitely advantageous to have the

2 jurors, if there is a jury, to see you present.

3   So, for all those reasons, I'm sure you can

4 appreciate the right to be present at your trial and your

5 proceedings is important.

6   I'm required by law to inform you that there are

7 ways that you can waive your right to be present at these

8 proceedings.

9   Specifically, I would like to refer to two

10 specific areas.  You can waive your right to be present if

11 you voluntarily absent yourself from the proceedings.

12   So, if it is determined that at some point down

13 the road you are not present at some stage because you

14 chose not to be present, I do have the authority, I do have

15 the right to find you voluntarily waived your right to be

16 present and continue the proceedings in your absence.  Do

17 you understand that?

18   DEFENDANT MR. TRUMP:  Yes.

19   THE COURT:  A second way you can lose your right

20 or waive your right is to become disruptive, and I do not

21 have any reason to believe that will happen.  But, if you

22 become disruptive to such a degree that it affects my

23 ability to preside over this case and my ability to insure

24 that the case is treated the way it needs to be treated for

25 both sides, I do have the authority to remove you from the

1    courtroom and continue in your absense, do you understand

2    that?

3            DEFENDANT MR. TRUMP:  I do.

4            THE COURT:  All right, if either one of those

5    situations were to happen, and the case were to go to

6    trial, we would go to trial without you.

7            If there were a verdict and that verdict were to

8    be guilty, we would be able to take that verdict without

9    you.  And if there were to be a time for sentencing, we

10    would be able to impose sentence without you.  Do you

11    understand?

12            DEFENDANT MR. TRUMP:  Yes.

13            THE COURT:  I think we need to set an adjourned

14    date.

15            Having read Mr. Trump his Parker warnings, Mr.

16    Trump will be released on his own recognizance.  So we

17    picked September 19th for People's response?

18            MS. MCCAW:  Yes, your Honor.

19            THE COURT:  All right, lets set this down for

20    December fourth, for the Court's decision on the motions.

21            That will be here in person.  So again, defense

22    motion filed off calendar.  People's response filed off

23    calendar, but we will meet back here in person on December

24    fourth for the Court's decision on the motions.

25            If for some reason I'm unable to have my decisions

1    ready or not all the decisions ready, I will certainly let

2    you know.

3            MR. BLANCHE:  Judge, very, very briefly on the

4    adjourned date.  I am just stating the obvious that having

5    President Trump in this courtroom today is extraordinarily

6    burdensome and expensive on the city, and with the security

7    issues that have taken place to allow us to be here today.

8            I do not know, your Honor, we have to decide this

9    today, but we may ask that President Trump, his presence be

10   waived just for that date.

11           We will speak with the President and with others

12   in advance if necessary to request that of the Court.

13           THE COURT:  You probably don't know now because

14   you are not making the application.  What would be the

15   reason asking to waive his appearance?

16           MR. BLANCHE:  Just simply the fact the incredible

17   expense and effort and security issues that present

18   themselves with the President traveling and being in

19   court.  All of lower Manhattan was shut down today.

20           To the extent it is a conference or a decision

21   that is announced, not anything that requires us to

22   simultaneously consult with President Trump, we may ask his

23   presence be waived.

24           THE COURT:  Would you like to be heard?

25           MR. CONROY:  Judge, I would just say, as I'm sure

1      you know, our general preference is defendants be in court

2      on the court date.

3              We also recognize, as counsel explained, the

4      immense burden that places on the court system and on lower

5      Manhattan.  So we would defer to your Honor's decision on

6      that.

7              THE COURT:  Well, there is no question this was a

8      huge undertaking today for everyone involved, from Mr.

9      Trump, the prosecution, the city, courts, there is no

10     question about that.

11             At the same time, today is April 4th and we are

12     looking at the first adjournment in December, that is quite

13     a ways out.

14             You know, if a reason were to come up that your

15     client was unable to appear on that date; something

16     unanticipated, you can certainly run that by me.

17             But in the same way I expect all other defendants

18     to appear in court, even high profile defendants, and I

19     agree, we wish we could avoid all these logistical

20     challenges.  I think in the interest of transparency and

21     assuring the rules of law evenhandedly, at this time I'm

22     going to deny your application.

23             If you have another one to make later, you can.

24             MR. BLANCHE:  Thank you.  To be clear, I was not

25     suggesting President Trump does not want to be here.

Page 32

1              I'm suggesting having lived the past several hours

2       as your Honor has as well and the expense this costs the

3       city just for an arraignment, that was a reason for

4       bringing this up today.

5              I appreciate the Court's guidance.  To the extent

6       we need to, we will revisit it.

7              THE COURT:   What you said is true, and I agree.

8       Thank you all very much.

9

10

11              I, Randy Berkowitz, a senior court reporter in and
        for the State of New York, do hereby certify that the
12      foregoing transcript is true and accurate to the best of my
        knowledge, skill and ability.

13

14                      Randy Berkowitz,
                     Senior Court Reporter

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 72